UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 24-CV-23953-DPG

JANE DOE (S.F.), on behalf of herself and all
others similarly situated, et al.,

      Plaintiffs,

v.

ROYAL CARIBBEAN CRUISES LTD., and
ARVIN JOSEPH MIRASOL,

      Defendants.

                                      /

**PLAINTIFFS' MOTION TO CERTIFY NATIONWIDE ISSUE CLASSES, PURSUANT TO FEDERAL RULES 23(a), 23(b)(3), AND 23(c)(4), AND INCORPORATED <u>MEMORANDUM OF LAW</u>**

Plaintiff[1] Jane Doe (S.F.) ("Putative Class Representative") respectfully requests the Court certify the specific questions and issues outlined below.

## BACKGROUND FACTS

Importantly, the relevant facts of this case are undisputed. Defendant Arvin Joseph Mirasol, over the course of 12 specific cruises that Defendant RCCL operated aboard the *Symphony of the Seas*, admittedly committed a series of sexual assault and/or harassment against a litany of passengers (over a hundred) assigned to cabins for which Mirasol served as stateroom attendant.[2] Mirasol admitted and pled guilty to hiding cameras in passengers' bathrooms *and* to using his RCCL Master Key surreptitiously *hide underneath their beds* to film them taking showers.[3] Horrifically, Mirasol's victims included children at ages ranging from ***only 2 to 17 years old***.[4]

The FBI confiscated multiple electronic devices from Mirasol that were full of videos of these children in various states of undress—focusing specifically on their genitals.[5] He even filmed himself installing a camera in a guest's bathroom.[6] Mirasol admitted to committing these sexual assaults because he would "pleasure himself and masturbate" to the videos.[7] Fortunately, his sexual assaults on board RCCL were stopped and he was arrested only after three Plaintiffs helped authorities locate his hidden camera in Plaintiffs' cabin bathroom on February 26, 2024. He has now been sentenced to **30 years in prison** for his crimes.[8]

---

[1] Because of the nature of these allegations, Putative Class Representative is referred to by pseudonym and initials. Her name was provided directly to Defendant, ROYAL CARIBBEAN CRUISES LTD. ("RCCL"), and is available, upon request, to counsel and/or parties.

[2] *See U.S. v. Mirasol*, Case No. 24-cr-60046-MD, ECF No. 23 (S.D. Fla. June 5, 2024).

[3] *Id.*

[4] *Id., see also* https://www.justice.gov/usao-sdfl/pr/cruise-ship-employee-sentenced-30-years-prison-placing-hidden-cameras-inside-passenger.

[5] *Id., see also id.*

[6] *Id., see also id.*

[7] *Id., see also id.*

[8] *See U.S. v. Mirasol*, ECF No. 35 (S.D. Fla. August 28, 2024); *see also*,

It is beyond peradventure that "child sex crimes are among the most egregious and despicable of societal and criminal offenses," and Mirasol's sentence is well-deserved. *United States v. Sarras*, 575 F.3d 1191, 1220 (11th Cir. 2009). Over the course of 12 cruises spanning a mere 3 months, his conduct may have victimized up to 960 passengers, and his sexual assault and/or harassment of them has left them suffering real damages for which RCCL should be held liable. *See, e.g.,* ECF No. 36 ("Compl."), ¶¶ 31, 52–60. Indeed, when MIRASOL accessed passenger cabins, including Plaintiffs' passenger cabins, it was in the course and scope of his duties as a stateroom attendant employed and subject to control by RCCL. Compl. ¶ 13.

Even after these atrocities were committed by an RCCL employee, to RCCL customers, *on RCCL's ship*, RCCL has not agreed to take any responsibility. Instead, they have shockingly: (1) refused to notify the clearly identifiable RCCL passengers that were all located in Mirasol's cabins, (2) sought to silence Mirasol's sexual victims by demanding they dismiss the cases they brought in their desired forum before this Court in favor of secret arbitration, and (3) deprived them of their day in court, the only avenue to obtain any real, personal justice for the harm they have suffered. In fact, RCCL has advocated for having all of its victims' claims litigated together because, according to RCCL, they are ***substantially the same claims***, which RCCL acknowledged in its December 11, 2024 "Notice of Similar Actions," requesting the Court to transfer and consolidate all seven (7) of these pending cases (comprising hundreds of individual sexual victim class members) to avoid "unnecessary duplication of judicial labor," ECF No. 26. In fact, RCCL has already expressed to Class Counsel that they will assert an identical defense to all of these related actions (and any that may be filed), namely to move to compel the claims to individual arbitration and prevent any class allegations. ECF No. 31.

---

https://www.justice.gov/usao-sdfl/pr/cruise-ship-employee-sentenced-30-years-prison-placing-hidden-cameras-inside-passenger.

But RCCL's uniform efforts violate the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act ("EFAA"), 9 U.S.C. §§ 401–402, which (as Plaintiff will fully brief in response to RCCL's impending motion to compel arbitration) renders RCCL's arbitration agreement invalid and unenforceable in this case as to *all* class members. That is because the EFAA provides, "at the election of the person alleging conduct constituting a sexual harassment dispute or sexual assault dispute, or the named representative of a class or in a collective action alleging such conduct, no predispute arbitration agreement or predispute joint-action waiver shall be valid or enforceable with respect to a case which is filed under Federal, Tribal, or State law and relates to the sexual assault dispute or the sexual harassment dispute." 9 U.S.C. § 402(a).

The EFAA was enacted to "restore access to justice for millions of victims of sexual assault or harassment who are currently locked out of the court system and are forced to settle their disputes against companies in a private system of arbitration that often favors the company over the individual." H.R. Rep. No. 117-234 at 4 (2022).[9] The EFAA's drafters were specifically concerned with how corporate entities like RCCL are abusing their adhesive "Terms of Service" in millions of consumer transactions, like purchasing a cruise, as a means to unfairly take away the basic right to a trial in open court, particularly in critical cases like these, which relate to sexual assault or sexual harassment.

---

[9] In particular, Congress recognized that in the EFAA's absence, mandatory arbitration clauses often entitle companies "to choose the arbitrator who decides the case, as well as the rules of procedure and evidence that apply, and the distribution of costs of the arbitration," "protect the company by keeping the records of an arbitration secret," permit employers to retaliate against their victims "without fear of their actions becoming public through the courts," and "prevent[ ] victims from sharing their stories." *Id.* "This allows for the growth of office cultures that ignore harassment and retaliate against those who report it, prevent future victims from being warned about dangerous companies and individuals, and create incentives for the corporate protection of rapists and other serial harassers." *Id.*

In order for the EFAA to apply, as recently explained by Judge Lewis A. Liman of the Southern District of New York, "a plaintiff need only plead nonfrivolous claims relating to sexual assault or to conduct alleged to constitute sexual harassment, with the sufficiency of those claims to be reserved for proper merits adjudication, be it a motion to dismiss, motion for judgment on the pleadings, motion for summary judgment, or trial." *Diaz-Roa v. Hermes Law, P.C.*, No. 24-CV-2105 (LJL), 2024 WL 4866450, at \*14 (S.D.N.Y. Nov. 21, 2024). Importantly—unlike most arbitration issues—whether the EFAA applies to a dispute is *expressly* a question **for this Court** rather than an arbitrator, regardless of any delegation clause. 9 U.S.C. § 402(b).

The beauty of F.R.C.P. 23 is that it provides this Court with a plethora of creative procedures to efficiently manage these types of class actions. Moreover, it is hard to imagine any undisputed facts that would benefit more from the certification of specific issues and questions.

One crucial reason that class certification is extremely helpful under these admitted facts — unlike possibly most other employment contexts — is because Eleventh Circuit law holds RCCL strictly liable for all of Mirasol's admitted sexual assaults. The standard federal jury instruction is that "a cruise ship operator is strictly liable for intentional wrongful acts, including sexual assaults committed by its crew members against passengers during the cruise." Moreover, the Eleventh Circuit holds that "the defendants owe a non-delegable duty to protect their passengers from crew member assaults and thereby safety transport their cruise passengers." *Doe v. Celebrity Cruises, Inc.*, 394 F.3d 891 (11th Cir. 2004). Simply put, this same analysis will be the exact same for every proposed sexual assault class member.

Undersigned Counsel has had great success in recent years in obtaining certification of issues under Rule 23(c)(4), which allows the Court to focus on resolving issues that will materially advance the litigation as a whole for all members of the affected class. *See In re FieldTurf Artificial*

4

*Turf Mktg. & Sales Pracs. Litig.*, 2023 WL 4551435, at \*2–3, 10 (D.N.J. July 13, 2023) (certifying issue classes although individualized inquiry necessary for causation and damages, reasoning that "resolution of the proposed issue classes will allow for one trial with a single, preclusive determination regarding [defendant's] conduct, rather than repeated trials regarding the same evidence of the alleged defect and deception").

Of course, there can be no dispute that these claims will ultimately require individual trials to determine damages. However, Putative Class Representative respectfully submits that, before conducting any of those damage trials, this Court should first make the threshold determination as to (1) the applicability of the EFAA and whether it invalidates and renders unenforceable RCCL's ticket contract that requires individual arbitration (the "Arbitration Issue"),[10] and (2) whether, when Mirasol accessed passenger cabins, including Plaintiffs' passenger cabins, it was in the course and scope of his duties as a stateroom attendant employed and subject to control by RCCL, rendering RCCL vicariously liable for his admitted wrongdoing (the "Vicarious Liability Issue").

Accordingly, Putative Class Representative requests the Court certify these issues, so we can at the onset of this case fully brief and litigate the Arbitration Issue, and if successful, proceed to litigating the case on the merits in order to resolve the Vicarious Liability Issue.

The proposed Issues Class is defined as follows:

---

[10] As an additional basis for concluding RCCL's individual arbitration provision is invalid and unenforceable here, 46 U.S. Code § 30527 provides that "[t]he owner, master, manager, or agent of a vessel transporting passengers between ports in the United States, or between a port in the United States and a port in a foreign country, may not include in a regulation or contract a provision limiting . . . the right of a claimant for personal injury or death to a trial by court of competent jurisdiction." While § 30527 delineates some exceptions to this, it prohibits RCCL from limiting liability for a crewmember or the owner, master, manager, agent, or operator of the vessel where "emotional distress, mental suffering, or psychological injury is . . . intentionally inflicted by a crewmember," or "in a case involving sexual harassment, sexual assault, or rape." *Id.*

> All passengers aboard Royal Caribbean's vessel, *Symphony of the Seas*, between December 1, 2023, and February 26, 2024, and who stayed in cabins aboard the vessel which were serviced by Defendant Mirasol as Stateroom Attendant.

> Excluded from the Class are Defendants and their officers, directors, affiliates, legal representatives, and employees, any customers who make a timely election to be excluded, any governmental entities, any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff.

Plaintiffs further seek appointment of The Moskowitz Law Firm, PLLC as Lead Class Counsel at this stage, pursuant to Fed. R. Civ. P. 23(g).

## LEGAL ARGUMENT

The main purpose of a class action is to facilitate judicial economy by avoiding multiple suits on the same subject matter, providing a feasible means for asserting the rights of those who would have no realistic day in court without a class action, and deterring inconsistent results, assuring a uniform, singular determination of rights and liabilities. *Am. Pipe & Constr., Co. v. Utah*, 414 U.S. 538 (1974). The Putative Class Representative seeks a narrow certification order that utilizes Rules 23(a), 23(b)(3), and 23(c)(4) to certify the Arbitration Issue and the Vicarious Liability Issue for class-wide resolution.[11]

A district court has broad discretion in determining whether to certify a class. *Washington v. Brown & Williamson Tobacco Corp.*, 959 F.2d 1566, 1569 (11th Cir. 1992); *Griffin v. Carlin*, 755 F.2d 1516, 1531 (11th Cir. 1985). Rule 23 "establishes the legal roadmap courts must follow when determining whether class certification is appropriate." *Valley Drug Co. v. Geneva Pharm., Inc.*, 350 F.3d 1181, 1187 (11th Cir. 2003). As a threshold matter, courts consider whether "the proposed class is adequately defined and clearly ascertainable." *Palm Beach Golf Ctr.-Boca, Inc.*

---

[11] *Jones v. Desantis*, No. 4:19cv300-RH/MJF, 2020 WL 5646124, at *2 (N.D. Fla. Apr. 7, 2020) (a plaintiff may move for class certification of selected counts only) (citing, *inter alia*, *Jenkins v. United Gas Corp.*, 400 F.2d 28, 35 (5th Cir. 1968)).

*v. Sarris*, 311 F.R.D. 688, 693 (S.D. Fla. 2015).[12] Additionally, "the named plaintiffs must have standing, and the putative class must meet each of the requirements specified in Federal Rule of Civil Procedure 23(a), as well as at least one of the requirements set forth in Rule 23(b)." *Klay v. Humana, Inc.*, 382 F.3d 1241, 1250 (11th Cir. 2004).

Further, Rule 23(c)(4) provides that "an action may be brought or maintained as a class action with respect to particular issues." *See In re Tri-State Crematory Litig.*, 215 F.R.D. 660, 697 (N.D. Ga. 2003) (certifying issues of "Defendants' duty to Plaintiffs and whether Defendants breached that duty"). "The theory of Rule [23(c)(4)] is that the advantages and economies of adjudicating issues that are common to the entire class on a representative basis should be secured even though other issues in the case may have to be litigated separately by each class member." *Nelson v. Walmart Stores, Inc.*, 245 F.R.D. 358, 380 (E.D. Ark. 2007). The Court has this tool and others at its disposal to facilitate commonsense treatment of the common claims and issues as part of its class certification. In doing so, Plaintiffs do not concede in any way that individual issues will predominate in the damages phase—rather, Plaintiffs believe it is in the best interests of the case, and the court, to advance the litigation until such a decision has been made and Putative Class Representative are ready to seek certification on additional bases. *Collins v. Quincy Bioscience, LLC*, No. 19-CV-22864, 2020 WL 3268340 (S.D. Fla. Mar. 19, 2020) (Goodman, M.J.) (recommending certifying a liability issue class and bifurcating proceedings into liability and damages phases where defendant's liability would be determined regarding uniform representations made to the class); *Las Olas Co. v. Fla. Power & Light Co.*, No. CACE19019911-18, 2020 WL 9874296 (Fla. 17th Cir. Ct. Dec. 14, 2020), *aff'd per curiam Infratech Corp. v. Las*

---

[12] In *Cherry v. Dometic Corp.*, 986 F.3d 1296 (11th Cir. 2021), the Eleventh Circuit disavowed the "administrative feasibility" requirement for establishing ascertainability of class members as a precondition to certification.

*Olas Co.*, 320 So. 3d 751 (Fla. 4th DCA 2021), *reh'g denied* (Fla. 4th DCA July 13, 2021) (affirming certification of a liability issue class and proceeding to a bifurcated jury trial regarding defendants' liability for causing a single-incident mass tort—which trial lasted one week and resulted in favorable liability verdict for the class). Courts throughout this Circuit have also demonstrated the utility of this approach. *See Andreas-Moses v. Hartford Fire Ins. Co.*, 326 F.R.D. 309 (M.D. Fla. June 18, 2018) ("The Court will exercise its discretion under Rule 23(c)(4) to certify a merits-only class and bifurcate damages from the merits."); *Navelski*, 244 F. Supp. 3d 1275 (same); *Fabricant v. Sears Roebuck*, 202 F.R.D. 310, 317 (S.D. Fla. 2001) (explaining that "the Court may either appoint a master to resolve actual damages or merely allow class members to bring individual actions with the benefit of a *res judicata* finding of liability").

Putative Class Representative submits the Court should certify the Arbitration Issue and the Vicarious Liability Issue classes under Rule 23(a), (b)(3), and (c)(4) so they can move forward expeditiously on deciding these two central issues—a method of organizing this litigation that Plaintiffs' counsel has used with very recent success in both state and federal class actions.

## I.      The Putative Class Representative has Standing.

"[A] class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Prado–Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1279 (11th Cir. 2000) (quoting *Gen. Tel. Co. of Sw.*, 457 U.S. at 156) (internal quotations and citation omitted).[13] "[S]tanding is gauged by the specific common-law, statutory or constitutional claims that a party presents." *Int'l Primate Prot. League v. Adm'rs of Tulane Educ. Fund*, 500 U.S. 72, 77 (1991). To establish Article III standing, a plaintiff "must have (1) suffered an injury in fact,

---

[13] At the class certification stage, courts "may review both the allegations in the complaint and evidence in the record so far to determine whether the named plaintiffs . . . have established Article III standing[.]" *Green-Cooper v. Brinker Int'l, Inc.*, 73 F.4th 883, 888 n.6 (11th Cir. 2023).

(2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citations omitted). "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 339 (quoting *Lujan*, 504 U.S. at 560). "An economic injury is the 'epitome' of a concrete injury." *Lewis v. Mercedes-Benz USA, LLC*, 530 F.Supp.3d 1183, 1202 (S.D. Fla. 2021) (citing *MSPA Claims 1, LLC v. Tenet Fla., Inc.*, 918 F.3d 1312, 1318 (11th Cir. 2019).

Here, Putative Class Representative clearly has standing as they were a passenger aboard the *Symphony of the Seas* during the subject period, assigned a passenger cabin to which Marisol was an attendant, and was victimized by Marisol's acts of sexual assault and/or sexual harassment, which he conducted in the course and scope of his employment with Defendant RCCL, and which resulted in Marisol capturing and/or publishing images of the Putative Class Representative while undressed and engaging in private activities, without Plaintiffs' prior knowledge or consent. Compl. ¶¶ 9–17. As a result, Putative Class Representative suffers from severe emotional distress, which manifests physically, causing physical sickness, sweating, nausea, insomnia, dizziness, crying, and physical pain, thereby causing physical impact. *Id.* In turn, Putative Class Representative suffered an injury in fact that is fairly traceable to Defendants' challenged conduct and that is likely to be redressed by a favorable judicial decision. *See Spokeo*, 578 U.S. at 338.

Therefore, for the foregoing reasons, Putative Class Representative has standing because they have adequately alleged injury in fact, traceability, and redressability in connection with these claims related to Defendant Marisol's sexual assault and/or harassment. Putative Class Representative thus possesses standing as to the Arbitration Issue and the Vicarious Liability Issue.

## II.      The Issue Classes Are Clearly Ascertainable.

To be ascertainable, the proposed class need only be "adequately defined such that its membership is capable of determination." *Cherry*, 986 F.3d at 1304 (rejecting any requirement to demonstrate administrative feasibility). In assessing a proposed class's ascertainability, this Circuit looks only to whether membership in each proposed class "turns on [] objective, verifiable criteri[a][.]" *Rensel v. Centra Tech, Inc.*, 2 F.4th 1359, 1370 (11th Cir. 2021). Plaintiffs need not show "precisely how" they will use these criteria to ascertain class members. *Id.*

Here, membership in the Proposed Class can be readily determined from RCCL's own corporate records. *See* Compl. ¶ 47 ("Further, upon information and belief, RCCL is in sole and exclusive custody of the passenger manifests to show the identity and contact information of the passengers who were assigned to cabins serviced by MIRASOL aboard the vessel between December 2023 and February 26, 2024."). *See, e.g., In re Health Insurance*, 2021 WL 1341881, at *7 (M.D. Fla. Mar. 23, 2021) (settlement class adequately defined and clearly ascertainable where membership was objectively determinable from corporate records). These corporate records are exactly the sort of objective, verifiable criteria necessary to establish ascertainability. *Rensel*, 2 F.4th at 1370 (class was ascertainable because membership could be readily determined using the offeror's internal records or "submissions of claims forms verified by transaction records").

## III.      Plaintiffs and These Issue Classes Satisfy the Requirements of Rule 23(a).

Rule 23(a) requires "numerosity, commonality, typicality, and adequacy." *Valley Drug Co.*, 350 F.3d at 1188.

### A. The Classes are so numerous that joinder of all members is impracticable.

"To establish numerosity, [a plaintiff] must show that the class is so numerous that joinder of all members is impracticable." *Manno v. Healthcare Revenue Recovery Grp., LLC*, 289 F.R.D.

674, 684 (S.D. Fla. 2013) (internal quotes and citation omitted). "While mere allegations of numerosity are insufficient, Rule 23(a)(1) imposes a generally low hurdle, and a plaintiff need not show the precise number of members in the class." *Id.*; *accord*, *Palm Beach Golf Ctr.*, 311 F.R.D. at 695. The "general rule of thumb in the Eleventh Circuit is that 'less than twenty-one is inadequate, more than forty adequate, with numbers between varying according to other factors.'" *Manno*, 289 F.R.D. at 684 (quoting *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986)); *see, e.g., Kilgo v. Bowman Transp., Inc.*, 789 F.2d 859, 878 (11th Cir. 1986).

Numerosity is easily satisfied for the Proposed Class, given that this action alone identifies 52 putative class members as plaintiffs, with a reasonable basis to assert that class members may reach 960. *See* Compl. ¶ 31 ("Thus, MIRASOL'S victims may include up to 960 passengers (up to 12 cruises; times up to 20 passenger cabins; times up to 4 passengers per cabin; equals up to 960 passengers)."). Accordingly, numerosity exists.

**B. There are questions of law and fact common to all Class members.**

Commonality requires the identification of at least one issue that by its nature "is capable of class-wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 350. Proof of commonality is a "relatively light burden*." County of Monroe, Fla. v. Priceline.com, Inc.*, 265 F.R.D. 659, 667 (S.D. Fla. 2010) (internal quotation marks and citation omitted). Commonality "does not require that all the questions or law and fact raised by the dispute be common." *Id.* "What matters to class certification . . . [is] the capacity of a class-wide proceeding to generate common ***answers*** apt to drive the resolution of the litigation." *Dukes*, 564 U.S. at 350 (internal quotation marks and citation omitted) (emphasis original).

11

Commonality is readily found where, as here, "[d]efendants have engaged in a standardized course of conduct that affects all class members." *In re Terazosin Hydrochloride,* 220 F.R.D. at 687; *Agan v. Katzman & Korr, P.A.,* 222 F.R.D. 692, 697 (S.D. Fla. 2004).

First, courts have regularly found that a defendant's common defense to all class members' claims supports commonality. *See Shutler v. Citizens Disability LLC*, 347 F.R.D. 663, 675 (S.D. Fla. 2024) (Moore, J.) (granting class certification and finding predominance where defendant's "defense is common to Plaintiff and all putative class members," such that "the class will prevail or lose together on its claims without the need for 'mini-trials'"); *Manno v. Healthcare Revenue Recovery Group, LLC*, 289 F.R.D. 674, 686 (S.D. Fla. 2013) (Scola, J.) ("On this defense, all class members will prevail or lose together, making this another common issue to the class."); *see also Broin v. Philip Morris Companies, Inc.*, 641 So. 2d 888, 891 (Fla. 3d DCA 1994) (affirming certification where "[t]he trial will emphasize defenses applicable to the class as a whole," which "will aid judicial efficiency and economy, and is warranted to avoid duplicitous litigation of these common issues"); *In re Agent Orange Prod. Liab. Litig. MDL No. 381*, 818 F.2d 145, 166–67 (2d Cir. 1987) (holding that military contractor "defense is common to all of the plaintiffs' cases, and thus satisfies the commonality requirement of Rule 23(a)(2)").

Second, courts in this District and elsewhere have also found the question of a defendant's vicarious liability for a co-defendant's conduct supports commonality. *Walco Investments, Inc. v. Thenen*, 168 F.R.D. 315, 335–36 (S.D. Fla. 1996) (Moreno, J.) (granting class certification and finding that question of defendants' vicarious liability was common and predominant); *see also Kristensen v. Credit Payment Services*, 12 F. Supp. 3d 1292, 1306 (D. Nev. 2014) (granting class certification and finding question of vicarious liability was common and predominant).

The Arbitration Issue and Vicarious Liability Issue are both common legal issues subject to class-wide resolution that will determine "in one stroke" the validity of Putative Class Representative's claims. *See In re Terazosin Hydrochloride,* 220 F.R.D. at 687. Thus, because the resolution of the Arbitration Issue and Vicarious Liability Issue will affect all proposed class members, commonality is satisfied. *See In re FieldTurf,* 2023 WL 4551435, *6–11; *Navelski*, 244 F. Supp. 3d at 1309; *Las Olas Co.*, 2020 WL 9874296.

### C. Plaintiffs' claims are typical of those of the Classes.

"[T]ypicality measures whether a sufficient nexus exists between the claims of the named representatives and those of the class at large." *Prado-Steiman*, 221 F.3d at 1279. The focus of the typicality requirement is whether the named plaintiff will advance the interests of the class members by advancing his own interests. *Agan v. Katzman & Korr, P.A.*, 222 F.R.D. 692, 698 (S.D. Fla. 2004); *Herman*, 320 F.R.D. at 293 (same). Much like the commonality requirement, the typicality requirement does not require that the claims of the Putative Class Representative and the proposed class be identical: all that is required is that "the claims or defenses of the class and class representative arise from the same event or pattern or practice and are based on the same theory." *Agan*, 222 F.R.D. at 698 (citing *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984)).

Putative Class Representative possesses the same interest as the proposed Class because, like the proposed class, they were a passenger on a subject cruise (subject to the same ticket contract with arbitration provision) and were assigned a passenger cabin to which Defendant Mirasol was an attendant. Compl. ¶¶ 9–17. More specifically, the Putative Class Representative share a "nexus" with the proposed Class with respect to the Arbitration Issue and the Vicarious Liability Issue because their claims are based on the same theory. *See Rensel*, 2021 WL 4134984,

at *8 (holding typicality satisfied where Putative Class Representative alleged that defendants' solicitation of unregistered securities violated securities law). For one, the Arbitration Issue will be resolved by answering the same question for Putative Class Representative and the Class: whether the EFAA invalidates RCCL's mandatory arbitration provision because these claims relate to Mirasol's sexual assault and/or harassment. The Vicarious Liability Issue also rests on one issue: whether, "when MIRASOL accessed passenger cabins, including Plaintiffs' passenger cabins, it was in the course and scope of his duties as a stateroom attendant employed and subject to control by RCCL" such that RCCL is vicariously liable for his conduct. Compl. ¶ 13.

In sum, the claims of the named plaintiffs and unnamed plaintiffs alike all "arise from the same event or pattern or practice and are based on the same theory." *Agan*, 222 F.R.D. at 698 (citing *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984)).

Accordingly, the typicality requirement is satisfied.

**D. Plaintiffs will fairly and adequately protect the interests of the Classes.**

Adequacy requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Adequacy is satisfied where (i) counsel for the class is qualified and competent to vigorously prosecute the action, and (ii) the interests of the Putative Class Representative are not antagonistic to the interests of the Classes. *See, e.g.*, *Fresco v. Auto Data Direct, Inc.*, 2007 WL 2330895, at *2 (S.D. Fla. May 14, 2007). The central component of adequacy is the absence of conflicts of interest between the named representative and the class. *Amchem*, 521 U.S. at 625–26 ("The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent. A class representative must be part of the class and possess the same interest and suffer the same injury as the class members." (internal quotation marks and citations omitted)).

No such fundamental conflict exists here because, certainly, no Class member has an interest in a negative resolution of the Arbitration Issue or the Vicarious Liability Issue as either would extinguish their claims, likely resulting in the permanent loss of their ability to recover for the harm they suffered. *See id.*; *Rensel*, 2021 WL 4134984 at *2–3, *8–9 (holding investors in cryptocurrency tokens adequate representatives for class of defrauded investors who purchased the same alleged unregistered securities). The Putative Class Representative's and the Class Members' interests, as well as counsel's interests, are fully aligned in seeking a favorable resolution of these issues. As Putative Class Representative proves their own claims, they will also prove those of millions of absent Class members, and thus "share the true interests of the class." *Hastings-Murtagh v. Texas Air Corp.*, 119 F.R.D. 450, 459 (S.D. Fla. 1988); *Tefel v. Reno*, 972 F. Supp. 608, 617 (S.D. Fla. 1997) (ruling that the "common goal of each member of the class" is to remedy the unlawful conduct, and "[i]f the Plaintiffs succeed, the benefits will inure to all class members").

Moreover, as set forth below at greater length in the context of Rule 23(g), proposed Class Counsel is highly experienced in prosecuting class action litigation. *See*, *e.g., In re: FieldTurf,* Case No. 3:17-md-02779-MAS-TJB, ECF No. 377 (D.N.J. Dec. 13, 2024) (granting final approval to nationwide class settlement where Undersigned Counsel was appointed Co-Lead Counsel); *Fruitstone v. Spartan Race, Inc.*, No. 20-cv-20836-BLOOM/Louis, 2021 WL 2012362, at *12 (S.D. Fla. May 20, 2021) (finding in approving class settlement that Class Counsel's "reputation, diligence, expertise, and skill are reflected in the excellent results they have achieved"); *Feller v. Transamerica Life Ins. Co.*, No. 16-cv-01378 CAS (GJSx), 2019 WL 6605886, at *6 (C.D. Cal. Feb. 6, 2019) (same, finding Class Counsel "have demonstrated that they have fully and competently prosecuted all causes of action, claims, theories of liability, and remedies reasonably

15

available to the Settlement Class Members"); *In Re: Champlain Towers South Collapse Litigation*, Case No. 2021-015089 CA 01 (Fla. 11th Jud. Cir. July 16, 2021).

## IV.   Plaintiffs and These Issue Classes Satisfy the Requirements of Rule 23(b).

Under Rule 23(b)(3), the Court must find "the questions of law or fact common to class members predominate over any questions affecting only individual members," and "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *Id.*

### a.   Common questions of law or fact predominate.

The requirement that common questions of law or fact predominate means "the issues in the class action that are subject to generalized proof and thus applicable to the class as a whole, must predominate over those issues that are subject only to individualized proof." *Kerr v. City of West Palm Beach*, 875 F.2d 1546, 1558 (11th Cir. 1989) (citation omitted); *Carriuolo v. Gen. Motors Co.*, 823 F.3d977, 985 (11th Cir. 2016) (The Rule 23(b)(3) predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." (quoting *Amchem*, 521 U.S. at 623)). The predominance inquiry seeks to determine the evidentiary effect of adding plaintiffs to the Class. If adding more plaintiffs requires the introduction of "significant amounts of new evidence," this suggests that individual issues are important. *Klay,* 382 F.3d at 1255. Conversely, if adding more plaintiffs leaves the amount of evidence needed to prove the claims "relatively undisturbed," common issues likely predominate. *Id.* Here, too, the addition or subtraction of any given member from the Proposed Classes would have no substantial effect on the nature or quantity of the evidence offered to prove Defendants' liability, readily satisfying *Brown*'s practical test of predominance.

First, as with commonality, courts have regularly found that a defendant's common defense to all class members' claims supports predominance. *See Shutler*, 347 F.R.D. at 675 (granting class

16

certification and finding predominance where defendant's "defense is common to Plaintiff and all putative class members," such that "the class will prevail or lose together on its claims without the need for 'mini-trials'"); *Manno*, 289 F.R.D. at 686 ("On this defense, all class members will prevail or lose together, making this another common issue to the class."); *see also Broin*, 641 So. 2d at 891 (affirming certification where "[t]he trial will emphasize defenses applicable to the class as a whole," which "will aid judicial efficiency and economy, and is warranted to avoid duplicitous litigation of these common issues"); *In re Agent Orange*, 818 F.2d at 166–67 (finding predominance and holding "a class trial in a federal court [on military contractor defense] is a method of adjudication superior to the alternatives. If the defense succeeds, the entire litigation is disposed of. If it fails, it will not be an issue in the subsequent individual trials.").

Second, courts in this District and elsewhere have also found the question of a defendant's vicarious liability for a co-defendant's conduct supports predominance. *Walco*, 168 F.R.D. at 335–36 (granting class certification and finding that question of defendants' vicarious liability was common and predominant); *see also Kristensen*, 12 F. Supp. 3d at 1306 (granting class certification and finding question of vicarious liability was common and predominant).

Nor does proof of causation undermine predominance. Indeed, while individual causation and damages questions are recognized as no bar to class certification, *Brown*, 817 F.3d at 1239 ("The 'black letter rule' recognized in every circuit is that 'individual damage calculations generally do not defeat a finding that common issues predominate.'") (quotation omitted); *Allapattah Servs., Inc. v. Exxon Corp.*, 333 F.3d 1248, 1261 (11th Cir. 2003) ("the presence of individualized damages issues does not prevent a finding that the common issues in the case predominate.") (internal citations omitted), it is not an issue even remotely presented by the requested *issue class*, which will not at this stage seek to adjudicate any Class Members' damages,

17

but would rather focus on adjudicating the Arbitration Issue and Vicarious Liability Issue. *In re FieldTurf*, 2023 WL 4551435, at \*9 ("Finally, the Court is not concerned about management difficulties that may arise as a result of certifying these two discrete issues while leaving other aspects of liability and damages to individual adjudication.") [14]

Common issues predominate with respect to the causes of action the Putative Class Representative seeks to certify. For example, the Arbitration Issue involves RCCL's uniform ticket contract, the substantially similar facts regarding Marisol's sexual assault and/or harassment of Putative Class Representative and the Class Members, and whether the EFAA (or 46 U.S. Code § 30527) renders RCCL's arbitration agreement invalid and unenforceable. As another example, the Vicarious Liability Issue involves considering uniform facts to determine whether RCCL is vicariously liable for Marisol's sexual assault and/or harassment of Class Members, such as his use of his RCCL-provided key card to access Putative Class Representative's and the Class Members' cabins during the course and scope of his duties as a stateroom attendant. This evidence would remain the same regardless of class size or composition. Thus, predominance is met.

**b. A class action is superior to adjudicating thousands of individual cases.**

Rule 23(b)(3) superiority requires the court to analyze "the relative advantages of a class action suit over whatever other forms of litigation might be realistically available to the plaintiffs." *Palm Beach Golf Ctr.*, 311 F.R.D. at 699 (quoting *Klay*, 382 F.3d at 1269); *Muzuco v. Re$ubmitIt, LLC*, 297 F.R.D. 504, 521 (S.D. Fla. 2013) (citations omitted). Here, there can be little doubt as to

---

[14] That some class members ultimately may not be successful on their damage claims **does not** defeat certification where common issues otherwise predominate. *Navelski*, 244 F. Supp. 3d at 1309 (citing *Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1136 (9th Cir. 2016) ("[E]ven a well-defined class may inevitably contain some individuals who have suffered no harm as a result of a defendant's unlawful conduct.")); *Kohen v. Pac. Inv. Mgmt. Co. LLC*, 571 F.3d 672, 677 (7th Cir. 2009) (observing that it is inevitable "that a class will often include persons who have not been injured by the defendant's conduct;" but "[s]uch a possibility or indeed inevitability does not preclude class certification")).

the judicial efficiency in litigating the issue as to the applicability of the Defendant RCCL's arbitration defense to the claims of the potential hundreds of Mirasol's victims of his sexual assault and/or harassment class-wide rather than individually.

There are hundreds of potential Class members whose claims are based on an alleged common course of conduct, rendering the litigation more manageable as a class action than as thousands of individual suits. *See In re: Fieldturf*, 2023 WL 4551435, *9 ("Finally, the Court is not concerned about management difficulties that may arise as a result of certifying these two discrete issues while leaving other aspects of liability and damages to individual adjudication. *See Chiang v. Veneman*, 385 F.3d 256, 267 (3d Cir. 2004) ("[C]ourts commonly use Rule 23(c)(4) to certify some elements of liability for class determination, while leaving other elements to individual adjudication—or, perhaps more realistically, settlement.")).

A class action is superior to other available methods for the fair and efficient adjudication of this controversy because, after RCCL became aware of Mirasol's admitted heinous acts, they failed to notify the individual Class Plaintiffs. Further, upon information and belief, RCCL is in sole and exclusive custody of the passenger manifests to show the identity and contact information of the passengers who were assigned to cabins serviced by Mirasol aboard the vessel between December 2023 and February 26, 2024. Thus, it is unlikely that the vast majority of individual plaintiffs, having not been notified by RCCL, would discover the violations of their privacy, sexual harassment, and sexual assault; nor assume the burden and the cost of this complex litigation, and the Purported Class Representative and counsel is not aware of any significant numbers of class members who are interested in individually controlling the prosecution of a separate action. The interests of justice will be served by resolving the common disputes of the class members with Defendants in a single forum, and individual actions by class members, many of whom are citizens

19

and residents of different states would not be cost effective. The class consists of a finite, identifiable number of individuals which will make the matter manageable as a class action.

## APPOINTMENT OF CLASS COUNSEL

To appoint class counsel, the Court must consider: (1) "the work counsel has done," (2) "counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action," (3) "counsel's knowledge of the applicable law," and (4) "the resources [] counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A).

Here, Proposed Class Counsel have decades of experience handling class action litigation, are among the most experienced and capable in the field of maritime claims for cruise ship passenger injuries, including class actions, and have successfully represented claimants in other litigation relating to sexual assault and sexual harassment of cruise passengers by crewmembers, have demonstrated a sound knowledge of the legal issues pertaining to Putative Class Representative's and the Class's claims against RCCL, and certainly have the collective financial wherewithal to capably prosecute these claims on a class-wide basis. *See* Firm Resume attached as **Exhibit A**. The Moskowitz Law Firm PLLC has been appointed Co-Lead Counsel in *In Re: FTX Cryptocurrency Collapse Litigation* (MDL 3076), where they have worked extremely efficiently with the more than fifteen other law firms working for Plaintiffs. Their appointment as Co-Lead Class Counsel is both appropriate and warranted.

## CONCLUSION

For these reasons, the Court should (a) certify the proposed Issue Classes; (b) appoint the Putative Class Representative to serve as Class Representative; and (c) appoint The Moskowitz Law Firm, PLLC to serve as Co-Lead Class Counsel for the Proposed Issue Class. A Proposed Order appointing interim class counsel accompanies this Motion as **Exhibit B**.

## REQUEST FOR ORAL ARGUMENT

Plaintiff respectfully requests oral argument pursuant to Local Rule 7.1(b)(2). This case and the Plaintiff's motion raises complex questions of law and fact regarding whether the Class should be certified. Given the importance of these questions to the determination of this case, the Plaintiff believes the Court's decision-making process would be significantly aided by oral argument. Plaintiff estimates just one hour will be necessary for oral argument.

Dated: January 14, 2025                    Respectfully submitted,

**By: /s/ Adam M. Moskowitz**
Adam M. Moskowitz
Florida Bar No. 984280
Joseph M. Kaye
Florida Bar No. 117520
**THE MOSKOWITZ LAW FIRM, PLLC**
Continental Plaza
3250 Mary Street, Suite 202
Miami, FL 33133
**Mailing Address:**
P.O. Box 653409
Miami, FL 33175
Office: (305) 740-1423
adam@moskowitz-law.com
joseph@moskowitz-law.com

**Jason R. Margulies, Esq.**
jmargulies@lipcon.com
**Michael A. Winkleman, Esq.**
mwinkleman@lipcon.com
**Jacqueline Garcell, Esq.**
jgarcell@lipcon.com
**Marc E. Weiner, Esq.**
mweiner@lipcon.com
LIPCON, MARGULIES,
& WINKLEMAN, P.A.
2800 Ponce de Leon Boulevard, Suite 1480
Coral Gables, Florida 33134
Telephone: (305) 373-3016
Facsimile: (305) 373-6204
*Attorneys for Plaintiffs*

21

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the forgoing was filed on January 14, 2025, via the Court's CM/ECF system, which will send notification of such filing to all attorneys of record.

By: */s/ Adam M. Moskowitz*
ADAM M. MOSKOWITZ
Florida Bar No. 984280