UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

_____

*C.B. et al.,*

       Plaintiffs,                  No.  24-cv-25089-DPG

vs.

ROYAL  CARIBBEAN  CRUISES  LTD.,  a  Liberian Corporation, and ARVIN JOSEPH MIRASOL, a citizen and resident of the Republic of the Philippines,

       Defendants.

_____

*D.M. et al*,

       Plaintiffs,                 No. 24-cv-24988-DPG

vs.

ROYAL  CARIBBEAN  CRUISES  LTD.,  a  Liberian Corporation, and ARVIN JOSEPH MIRASOL, a citizen and resident of the Republic of the Philippines,

       Defendants.

_____

*Doe (S.F.) et al*,

       Plaintiffs,                 No. 24-cv-23953-DPG

vs.

ROYAL  CARIBBEAN  CRUISES  LTD.,  a  Liberian Corporation, and ARVIN JOSEPH MIRASOL, a citizen and resident of the Republic of the Philippines,

       Defendants.

_____

*Doe,*

       Plaintiff,                 No. 24-cv-24039-DPG

vs.

ROYAL CARIBBEAN CRUISES LTD., a Liberian
Corporation,

        Defendant.

---

*Doe et al,*

        Plaintiffs,                No. 25-cv-20138-DPG

vs.

ROYAL CARIBBEAN CRUISES LTD., a Liberian
Corporation,

        Defendant.

---

*Doe et al,*

        Plaintiffs,                No. 25-cv-20485-DPG

vs.

ROYAL CARIBBEAN CRUISES LTD., a Liberian
Corporation,

        Defendant.

---

*J.L.S. et al,*

        Plaintiffs,                No. 24-cv-24139-DPG

vs.

ROYAL CARIBBEAN CRUISES LTD., a Liberian
Corporation, and ARVIN JOSEPH MIRASOL, a citizen and
resident of the Republic of the Philippines,

        Defendants.

---

*K.T. et al,*

        Plaintiffs,                No. 24-cv-24193-DPG

vs.

ROYAL CARIBBEAN CRUISES LTD., a Liberian Corporation, and ARVIN JOSEPH MIRASOL, a citizen and resident of the Republic of the Philippines,

      Defendants.

---

*M.S. et al*,

      Plaintiffs,           No. 24-cv-24738-DPG

vs.

ROYAL CARIBBEAN CRUISES LTD., a Liberian Corporation, and ARVIN JOSEPH MIRASOL, a citizen and resident of the Republic of the Philippines,

      Defendants.

---

*T.L. et al*,

      Plaintiffs,           No. 24-cv-25009-DPG

vs.

ROYAL CARIBBEAN CRUISES LTD., a Liberian Corporation, and ARVIN JOSEPH MIRASOL, a citizen and resident of the Republic of the Philippines,

      Defendants.

---

*V.V., et al*,

      Plaintiffs,           No. 25-cv-20051-DPG

vs.

ROYAL CARIBBEAN CRUISES LTD., a Liberian Corporation,

      Defendant.

---

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ............................................................................................... 1

FACTS .................................................................................................................................. 4

    I.      Plaintiffs' Claims Address Emotional and Mental Distress Damages
Suffered after They Learned That They Had Previously Been Subjected to
Voyeurism ......................................................................................................... 4

    II.     Plaintiffs Concede That They Entered into the Contract That Governs
This Dispute ...................................................................................................... 6

    III.    The Contract Contains an Arbitration Clause That Must Be Broadly
Interpreted and That Requires Arbitration of Their Claims for Mental and
Emotional Distress ............................................................................................ 7

    IV.    The International Plaintiffs' Contracts Require All Claims to Be
Brought in the Courts of England and Wales ................................................... 9

ARGUMENT ....................................................................................................................... 10

    I.      Federal Law Favors Arbitration, Resolves All Doubts in Favor of Arbitration,
And Strongly Presumes Arbitration Agreements to Be Valid ............................. 10

    II.     Plaintiffs' Contract Requires Arbitration of All Their Claims ............................ 11

    III.    No Statute Overrides the Presumed Validity of Plaintiffs'
Agreement to Arbitrate ..................................................................................... 16

           A.     If There is Any Doubt, Lack of Clarity or Ambiguity on
Whether a Statute Bars Plaintiffs' Agreement to Arbitrate,
the Court Must Compel Arbitration ............................................................ 16

           B.     Maritime Statute 46 U.S.C. § 30527 Does Not Bar, and in
Fact Supports, Compelling Arbitration under Plaintiffs' Agreement to
Arbitrate ..................................................................................................... 17

           C.     The Ending Forced Arbitration Act Also Supports the Agreement to
Arbitrate ..................................................................................................... 23

    IV.    The Canadian and Chilean Plaintiffs' Claims Must Be Dismissed ..................... 27

CONCLUSION .................................................................................................................... 28

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Express Co. v. Italian Colors Rest.*,
570 U.S. 228 (2013)..................................................................................................11

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)..................................................................................................26

*AT&T Mobility v. Concepcion*,
563 U.S. 333 (2011).............................................................................................10, 11

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*,
475 U.S. 643 (1986).......................................................................................... *passim*

*Bazemore v. Jefferson Capital Sys., LLC*,
827 F.3d 1325 (11th Cir. 2016) ................................................................................10

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)..................................................................................................26

*Burch v. P.J. Cheese, Inc.*,
861 F.3d 1338 (11th Cir. 2017) ................................................................................16

*C.B. et al. v. Royal Caribbean Cruises Ltd., et al*,
No. 24-cv-25089-DPG, Dkt. No. 17 .................................................................. *passim*

*Canobinoti, LLC v. Woods*,
2021 WL 4479006 (S.D. Fla. Sept. 30, 2021) ..........................................................14

*Carnival Cruise Lines, Inc. v. Shute*,
499 U.S. 585 (1991)..............................................................................................17, 19

*Cellairis Franchise, Inc. v. Connor Enterprises, Inc.*,
2015 WL 12844484 (N.D. Ga. Mar. 17, 2015)..........................................................14

*Chan v. Soc'y Expeditions, Inc.*,
39 F.3d 1398 (9th Cir. 1994) ....................................................................................18

*City of Miami Beach v. Guerra*,
746 So. 2d 1159 (Fla. Dist. Ct. App. 1999) (Florida has no "common law tort
related to sexual harassment.") ..............................................................................27

*CompuCredit Corp. v. Greenwood*,
565 U.S. 95 (2012)............................................................................................... *passim*

*Cook v. Ross Island Sand & Gravel Co.*,
626 F.2d 746 (9th Cir. 1980) ...............................................................................18

*Cosgun v. Seabourn Cruise Line*,
666 F. Supp. 3d 1270 (S.D. Fla. 2023) ................................................................10

*D.B.C. ex rel. M.A.M. v. Pierson*,
2014 WL 2155017 (N.D. Ala. May 22, 2014)............................................15, 22, 31

*Davis v. S. Energy Homes, Inc.*,
305 F.3d 1268 (11th Cir. 2002) .............................................................16, 17, 22, 23

*DeLuca v. Royal Caribbean Cruises, Ltd.*,
244 F. Supp. 3d 1342 (S.D. Fla. 2017) ...........................................................17, 20

*Dextel Terrebonne v. K-Sea Transportation Corp.*,
2002 WL 34106288 (E.D. La. Sept. 13, 2002), *aff'd sub nom. Terrebonne v.*
*K-Sea Transp. Corp.,* 477 F.3d 271 (5th Cir. 2007) ..............................................20

*Doe (S.F.) et al v. Royal Caribbean Cruises Ltd. et al*,
No. 24-cv-23953-DPG, Dkt. No. 44 ................................................................ *passim*

*Doe v. Royal Caribbean Cruises, Ltd., et al*,
No. 24-cv-24039-DPG, Dkt. No. 1 ................................................................. *passim*

*E.E.O.C. v. Waffle House, Inc.*,
534 U.S. 279 (2002).............................................................................................11

*Erlich v. Menezes*,
21 Cal.4th 543 (1999) ....................................................................................15, 22

*Est. of Myhra v. Royal Caribbean Cruises, Ltd.*,
695 F.3d 1233 (11th Cir. 2012), *superseded by statute on other grounds*
*irrelevant to the Court's analysis, as stated in Caron v. NCL (Bahamas) Ltd.*,
910 F.3d 1359 (11th Cir. 2018) .......................................................................18, 19

*Farris v. Carnival Corp.*,
2018 WL 3699333 (S.D. Fla. Apr. 5, 2018) ...............................................11, 13, 21

*Geraci v. Conte*,
2000 WL 1739294 (Ohio Ct. App. Nov. 22, 2000) .........................................15, 22

*Gilmer v. Interstate/Johnson Lane Corp.*,
500 U.S. 20 (1991)...................................................................................... *passim*

*Gonzalez v. Carnival Corp.*,
2024 WL 4863892 (S.D. Fla. Nov. 22, 2024)..............................................24, 25, 27

iii

*Gravillis v. Coldwell Banker Residential Brokerage Co.*,
143 Cal. App. 4th 761 (2006) .......................................................................................15, 22

*In re Elec. Mach. Enterprises, Inc.*,
479 F.3d 791 (11th Cir. 2007) ...............................................................................17, 22, 23

*In re Wiand*,
2012 WL 611896 (M.D. Fla. Jan. 4, 2012).........................................................................16, 23

*Internaves de Mexico s.a. de C.V. v. Andromeda Steamship Corp.*,
898 F.3d 1087 (11th Cir. 2018) .............................................................................................11

*J.L.S. et al v. Royal Caribbean Cruises Ltd. et al*,
No. 24-cv-24139-DPG, Dkt. No. 10 .............................................................................. *passim*

*Jones v. Waffle House.*,
866 F.3d 1257 (11th Cir. 2017) .....................................................................................10, 13

*K.T. v. A Place for Rover*,
2023 WL 7167580 (E.D. Pa. Oct. 31, 2023), *reconsideration denied*, 2024
WL 1356221 (E.D. Pa. Mar. 29, 2024).........................................................................25, 27, 32

*Kamau v. Slate*,
2012 WL 5390001 (N.D. Fla. Oct. 1, 2012) .........................................................................26

*Knutsen v. State Farm Fire & Cas. Co.*,
375 F. Supp. 3d 514 (D. Vt. 2019)....................................................................................15, 22

*Mercury Telco Grp., Inc. v. Empresa De Telecommunicaciones De Bogota S.A.*
*E.S.P.*,
670 F. Supp. 2d 1350 (S.D. Fla. 2009) .................................................................................12

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
473 U.S. 614 (1985)....................................................................................................21

*Moore v. Bamboo Retreats, LLC*,
2021 WL 3029569 (Cal. Ct. App. July 19, 2021)...............................................................15, 22

*Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*,
460 U.S. 1 (1983)......................................................................................................10, 13

*Nationwide Gen. Ins. Co. v. Pelkey*,
2021 WL 2895643 (M.D. Fla. July 9, 2021) .................................................................14, 15, 22

*Nationwide Mut. Ins. Co. v. Pasiak*,
2012 WL 310772 (Conn. Super. Ct. Jan. 9, 2012)...........................................................15, 22

iv

*Nationwide Prop. & Cas. Co. v. Lacayo*,
   2008 WL 4831743 (M.D. Ala. Nov. 3, 2008)..................................................................15, 22

*Newton v. LVMH Moet Hennessy Louis Vuitton Inc.*,
   2024 WL 3925757 (S.D.N.Y. Aug. 23, 2024).................................................................24, 27

*Nolde Bros. v. Loc. No. 358, Bakery & Confectionery Workers Union, AFL-CIO*,
   430 U.S. 243 (1977)...............................................................................................10, 13, 23

*Offshore Marine Towing v. Gismondi*,
   473 F. Supp. 3d 1353 (S.D. Fla. 2020) ................................................................................10

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*,
   388 U.S. 395 (1967).............................................................................................................12

*Sea-Land Serv. v. Gaudet*,
   414 U.S. 573 ........................................................................................................................18

*Shearson/American Express Inc. v. McMahon*,
   482 U.S. 220 (1987).............................................................................................................21

*Shultz v. Fla. Keys Dive Ctr., Inc.*,
   224 F.3d 1269 (11th Cir. 2000) ...........................................................................................19

*Sims v. Clarendon Nat. Ins.*,
   336 F. Supp. 2d 1311 (S.D. Fla. 2004) ................................................................................11

*Singh v. Meetup LLC et al.*,
   2024 WL 4635482 (S.D.N.Y. Oct. 31, 2024).......................................................................25

*Steelworkers v. Warrior & Gulf Navigation Co.*,
   363 U.S. 574 (1960)........................................................................................................12, 14

*Turner v. Sedgwick Claims Mgmt. Servs., Inc.*,
   2015 WL 225495 (N.D. Ala. Jan. 16, 2015).........................................................................19

*Unite Here Loc. 355 v. Hollywood Greyhound Track, Inc.*,
   2009 WL 10668617 (S.D. Fla. Apr. 16, 2009) .....................................................................14

*Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer*,
   515 U.S. 528 (1995).............................................................................................................21

*Yost v. Everyrealm, Inc.*,
   657 F. Supp. 3d 563 (S.D.N.Y. 2023)..............................................................................26, 27

*Young v. City of Los Angeles*,
   2024 WL 3055489 (C.D. Cal. Apr. 11, 2024) (18 U.S.C. § 1801 is a "criminal
   statute" which "does not create a private civil right of action.") ..........................................26

**Statutes**

7 U.S.C. § 26(n)(2) ...........................................................................................................21, 22

9 U.S.C. § 2.............................................................................................................................10

9 U.S.C. §§ 3 & 4......................................................................................................................1

9 U.S.C. § 401(3) ....................................................................................................................24

18 U.S.C. § 1801......................................................................................................................25

18 U.S.C. § 2246(2)(D)............................................................................................................24

18 U.S.C. § 2246(3) .................................................................................................................24

46 U.S.C. App. § 183c .............................................................................................................17

46 U.S.C. § 30527....................................................................................................................17

46 U.S.C. § 30527(a)-(b) .........................................................................................................20

Coast Guard Authorization Act, Pub. L. 104–324, § 1129(b), 110 Stat. 3901,
     3984–85............................................................................................................................18

Ending Forced Arbitration Act, 9 U.S.C. § 402..................................................... *passim*

Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021 .......................3

Federal Arbitration Act .............................................................................. *passim*

Fla. Stat. § 810.145 .............................................................................................................25, 26

120 Stat 1485 ..........................................................................................................................19

**Other Authorities**

H.R. REP. 109-170, 45, 2006 U ...............................................................................................19

Title 18..................................................................................................................................24

**<u>DEFENDANT ROYAL CARIBBEAN CRUISES, LTD.'S OMNIBUS MOTION TO STAY
LITIGATION AND COMPEL ARBITRATION AND MEMORANDUM OF LAW IN
SUPPORT OF SAME</u>**

Defendant Royal Caribbean Cruises, Ltd. ("Royal Caribbean") hereby moves under 9
U.S.C. §§ 3 & 4 to stay this litigation and compel arbitration ("Motion") against 127 Plaintiffs
(collectively, "Plaintiffs") across eleven different plaintiffs' groups[1] and, in support thereof, states
as follows:

<b><u>PRELIMINARY STATEMENT</u></b>

Plaintiffs bring several claims against Royal Caribbean, seeking to hold it liable for the
mental and emotional distress that they allege to have suffered generally months after they were
passengers on a Royal Caribbean cruise. Plaintiffs allege that, while they were on a Royal
Caribbean cruise, a former crewmember, Arvin Mirasol ("Mirasol"), engaged in voyeurism though
the use of a hidden camera and other secret acts and that, when they later learned of Mirasol's
actions, they suffered mental and emotional injuries.

Plaintiffs' claims that they suffered mental and emotional injuries, however, must be settled
in arbitration, not in this Court. Plaintiffs agreed in their digitally signed ticket-contract
("Contract") that all claims for mental or emotional injury must be resolved through arbitration.

---

[1] *See Doe (S.F.) et al v. Royal Caribbean Cruises Ltd. et al*, No. 24-cv-23953-DPG ("S.F."), Dkt.
No. 44 ("S.F. FAC"); *Doe v. Royal Caribbean Cruises, Ltd., et al*, No. 24-cv-24039-DPG ("Doe"),
Dkt. No. 1 ("Doe Compl."); *C.B. et al. v. Royal Caribbean Cruises Ltd., et al*, No. 24-cv-25089-
DPG ("C.B."), Dkt. No. 17 ("C.B. SAC"); *D.M. et al v. Royal Caribbean Cruises Ltd., et al*, No.
24-cv-24988-DPG ("D.M."), Dkt. No. 1 ("D.M. Compl."); *K.T. et al v. Royal Caribbean Cruises
Ltd. et al*, No. 24-cv-24193-DPG ("K.T."), Dkt. No. 10 ("K.T. SAC"); *J.L.S. et al v. Royal
Caribbean Cruises Ltd. et al*, No. 24-cv-24139-DPG ("J.L.S."), Dkt. No. 10 ("J.L.S. FAC"); *M.S.
et al v. Royal Caribbean Cruises Ltd. et al*, No. 24-cv-24738-DPG ("M.S."), Dkt. No. 1 ("M.S.
Compl."); *T.L. et al v. Royal Caribbean Cruises Ltd. et al*, No. 24-cv-25009-DPG ("T.L."), Dkt.
No. 1 ("T.L. Compl."); *V.V. v. Royal Caribbean Cruises Ltd. et al.*, No. 25-cv-20051-DPG
("V.V."), Dkt. No. 1 ("V.V. Compl."); *Doe v. Royal Caribbean Cruises, Ltd.*, No. 25-cv-20138-
DPG ("L.R."), Dkt. No. 1 ("L.R. Compl."); *Doe et al v. Royal Caribbean Cruises, Ltd.*, No. 25-
cv-20485-DPG ("R.M."), Dkt. No. 1 ("R.M. Compl.").

1

The agreed-to Contract requires its arbitration provision to be construed broadly and exempts emotional distress injuries from arbitration only if—inapplicable here—they "arise out of bodily injury" and therefore constitute an inarbitrable "personal injury." In other words, Plaintiffs' Contract requires arbitration unless the emotional distress resulted from physical injury. Here, however, Plaintiffs allege that their emotional distress resulted from the discovery of Mirasol's secret, voyeuristic acts, not from a physical injury inflicted by Mirasol. Indeed, none of the Plaintiffs allege any harmful physical contact with Mirasol, and nearly all of them never allege that they even met him. There can be no other reading of Plaintiffs' Complaints: their injuries, which occurred after (often months after) Mirasol's secret voyeurism, originated from (or constitute) emotional distress, not any physical, bodily injury. Plaintiffs' claims must be arbitrated.

Importantly, the Contract and federal law unambiguously require the Contract's arbitration provision to be construed broadly.  The Contract does this in two ways.  It requires its mandatory arbitration provision to be "broadly interpreted," and it requires any exclusion from that arbitration provision to be "narrowly"  interpreted.  Federal policy, as enshrined in the Federal Arbitration Act ("FAA") and implemented by the courts, also strongly favors enforcement of the Contract's mandatory arbitration provision.  Federal law requires courts to resolve all doubts in favor of arbitration and, as held by the Supreme Court, to compel arbitration whenever there is ***any*** contractual interpretation supporting arbitration. Here, there is not only such an interpretation; there is no interpretation to the contrary.

Plaintiffs have signaled that they will argue that the Contract's explicit agreement to arbitrate their claims is somehow negated by two statutes.  This argument, however, faces a daunting burden that they cannot meet. To escape their express agreement to arbitrate, federal law embodied in the Federal Arbitration Act requires Plaintiffs to establish that Congress enacted a

statute that clearly and explicitly bars arbitration of Plaintiffs' claims.  If Congress remained silent, if the statute contains multiple plausible readings or ambiguities, or if Congress was anything other than crystal clear in prohibiting arbitration of Plaintiffs' claims, the Court must resolve these doubts in favor of compelling arbitration.

Here, if anything, Congress was clear that Plaintiffs' agreed-to arbitration provision should be enforced. Congress in essence memorialized in a federal maritime statute, discussed in great detail in the body of this brief, the same parameters that exist in Plaintiffs' agreed-to arbitration provision.  In particular, the maritime statute recognizes—and has for almost 90 years—the Contract's distinction between, on the one hand, personal injury claims that result from physical or bodily injury and, on the other hand, emotional distress claims not caused by bodily injury. This statute, like the Contract, bars arbitration of only the personal injury claims involving physical or bodily injury.  It imposes no such bar, however, (and has not for the many decades of its existence) on the arbitration of emotional distress claims not caused by physical or bodily injury, which are Plaintiffs' claims here. As made clear by the Supreme Court, where, as here, Congress merely remained silent or failed to clearly and explicitly bar arbitration, the parties' arbitration agreement must be enforced according to its terms.  Maybe more important, there is a dearth of decisions in which courts applied this maritime statute to bar arbitration of purely emotional distress claims like those asserted here by Plaintiffs—in fact, to date, Royal Caribbean has found no such decision.

Plaintiffs also cite a plainly inapplicable statute, the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021 ("EFAA"), which bars only the arbitration of claims that plausibly allege sexual assault or sexual harassment or a violation of such a statute. Yet here, Plaintiffs allege voyeurism and do not allege any actual facts that could amount to sexual assault or harassment or that could give rise to a violation of such a statute.  As to Royal Caribbean, they

3

only assert claims for intentional and negligent infliction of emotional distress, negligence, invasion of privacy, and breach of implied contractual duties. Under clear law, these factual allegations and these common law claims fall well outside the ambit of the EFAA.

In short, Plaintiffs' claims are subject to arbitration under the agreed-to arbitration provision and neither of the statutes to which Plaintiffs point changes that. The Action should be stayed pending the arbitration of Plaintiffs' claims. Also, as discussed in more detail below, the claims by certain International Plaintiffs (defined below) must be dismissed because they are filed in the wrong court.

## FACTS

**I.      Plaintiffs' Claims Address Emotional and Mental Distress Damages Suffered after They Learned That They Had Previously Been Subjected to Voyeurism**

Plaintiffs' own allegations establish that they seek to hold Royal Caribbean liable for emotional and mental distress damages caused only after they learned that a Royal Caribbean employee, Arvin Mirasol, had previously subjected them to secret voyeurism. Specifically, they allege that, while they were one of the Royal Caribbean cruises conducted between December 1, 2023 and February 26, 2024, Mirasol secretly recorded them via hidden cameras that he had installed in their rooms. *See* S.F. FAC ¶¶ 1, 15, 23; C.B. SAC ¶¶ 1, 15, 23; Doe Compl. ¶¶ 1-2, 3; D.M. Compl. ¶¶ 29, 33, 36; K.T. SAC ¶¶ 25, 28, 31; J.L.S. FAC ¶¶ 11, 14, 17; M.S. Compl. ¶¶ 12, 15, 17; T.L. Compl. ¶¶ 22, 25, 28; L.R. Compl. ¶ 17; RM Compl. ¶ 17. Some Plaintiffs (not all) also allege that Mirasol, again without their knowledge, would secretly "hide under the bed" and record them. *See* S.F. FAC ¶ 50; C.B. SAC ¶ 39; Doe Compl. ¶ 32; D.M. Compl. ¶ 47; T.L. Compl. ¶ 39.

Importantly, no Plaintiff alleges that Mirasol damaged them through physical contact. Instead, their Complaints make clear that they were not aware of Mirasol's actions as he conducted

them. Instead, Plaintiffs' allege that they learned of Mirasol's secret recordings later, and, for most Plaintiffs, over six months after their cruise. *See* S.F. FAC ¶¶ 34, 116; C.B. SAC ¶¶ 34, 105; Doe Compl. ¶ 35; D.M. Compl. ¶ 37; K.T. SAC ¶ 33; T.L. Compl. ¶ 29; L.R. Compl. ¶ 17; RM Compl. ¶ 17; *see generally* J.L.S. FAC; M.S. Compl.

These subsequent disclosures of Mirasol's actions caused their alleged emotional distress. *See* S.F. FAC ¶¶ 15, 23, 41; C.B. SAC ¶¶ 15-16, 23; Doe Compl. ¶¶ 1, 3; D.M. Compl. ¶¶ 33, 35-36; K.T. SAC ¶¶ 28, 30-31; J.L.S. FAC ¶¶ 14, 34, 37, 50, 53; M.S. Compl. ¶¶ 15, 17, 33, 36, 49, 52; T.L. Compl. ¶¶ 25, 27-28; L.R. Compl. ¶¶ 17-20; RM Compl. ¶¶ 17-20. Accordingly, they allege throughout their Complaints that this later discovery of Mirasol's "video voyeurism" caused them "emotional distress." *See, e.g.*, S.F. FAC ¶¶ 17, 41, 65-67, 72-73, 77, 82-83, 88, 92; *see also id.* ¶¶ 17, 41, 66, 73, 82, 88 (alleging they suffer from "crying"); *id.* ¶¶ 67, 77, 83, 92 ("mental anguish, loss of enjoyment of life, post-traumatic stress disorder, and other mental and/or nervous disorders"); *see also* C.B. SAC ¶¶ 16, 55-56, 62, 71, 77; Doe Compl. ¶¶ 38, 58, 73; D.M. Compl. ¶¶ 35, 49-50, 56, 68-69, 76-77, 87-88, 95-96, 100; K.T. SAC ¶¶ 30, 40-41, 48, 56-57, 62, 70, 83; J.L.S. FAC ¶¶ 34-35, 37-38, 50-51, 53-54; M.S. Compl ¶¶ 33-34, 36-37, 49-50, 52-53; T.L. Compl. ¶¶ 27, 41-42, 48, 52, 59-60, 68-69, 73, 79-81, 87-88, 92; L.R. Compl. ¶¶ 17-20; RM Compl. ¶¶ 17-20.

Plaintiffs' Complaints also do not allege that their emotional harm resulted from a bodily injury inflicted by Mirasol. To the contrary, they allege no inappropriate contact with Mirasol. Rather, they limit their claims to Mirasol's secret recordings through hidden cameras and other acts of voyeurism that they claim violated their privacy, which caused them mental and emotional distress. Based on these allegations, Plaintiffs variously bring several claims against Mirasol: (1) intentional infliction of emotional distress ("IIED"); (2) negligent infliction of emotional distress

("NIED"); (3) invasion of privacy; and (4) punitive damages. *See* S.F. FAC ¶¶ 48-52, 61-67; 78-83; C.B. SAC ¶¶ 37-41, 50-56, 67-72; D.M. Compl. ¶¶ 44-50, 61-69, 82-89; K.T. SAC ¶¶ 34-41, 52-57; J.L.S. FAC ¶¶ 36-38, 46-47, 52-54, 62-63; M.S. Compl. ¶¶ 35-37, 45-46, 51-53, 61-62; T.L. Compl. ¶¶ 36-42, 53-61, 74-81. Plaintiffs also variously bring eleven claims against Royal Caribbean: (1) vicarious strict liability for Mirasol's IIED; (2) vicarious strict liability for Mirasol's invasion of privacy; (3) vicarious strict liability for Mirasol's video voyeurism; (4) vicarious strict liability for Mirasol's negligence; (5) NIED; (6) general negligence; (7) negligent security; (8) negligent failure to warn; (9) negligent supervision; (10) breach of the implied covenant of good faith and fair dealing; and (11) punitive damages. *See* S.F. FAC ¶¶ 53-60, 68-77; 84-116; C.B. SAC ¶¶ 42-49, 57-66, 73-105; Doe Compl. ¶¶ 40-74; D.M. Compl. ¶¶ 51-60, 70-81, 90-114; K.T. SAC ¶¶ 42-51, 58-91; J.L.S. FAC ¶¶ 32-35, 39-45, 48-51, 55-58, 59-61; M.S. Compl. ¶¶ 31-34, 38-44, 47-50, 54-60; T.L. Compl. ¶¶ 43-52, 62-73, 82-106; L.R. Compl. ¶¶ 23-31, 32-45, 46-55, 56-67, 68-76, 77-89, 90-103, 104-112; R.M. Compl. ¶¶ 23-31, 32-46, 47-57, 58-70, 71-80, 81-93, 94-108, 109-117.

Plaintiffs do not allege that Royal Caribbean or any of its other employees knew of Mirasol's conduct. Plaintiffs also do not allege that Royal Caribbean itself is directly liable for IIED or invasion of privacy, or video voyeurism. Rather, on these claims, they seek to hold Royal Caribbean strictly and vicariously liable for Mirasol's conduct. S.F. FAC ¶¶ 53-60, 68-77; C.B. SAC ¶¶ 42-49, 57-66; Doe Compl. ¶¶ 40-74; D.M. Compl. ¶¶ 51-60, 70-81; K.T. SAC ¶¶ 42-51, 58-65; J.L.S. FAC ¶¶ 39-42, 55-58; M.S. Compl. ¶¶ 38-41, 54-57; T.L. Compl. ¶¶ 43-52, 62-73; L.R. Compl. ¶¶ 23-31, 85; R.M. Compl. ¶¶ 23-31, 89.

## II.     Plaintiffs Concede That They Entered into the Contract That Governs This Dispute

Plaintiffs concede that they and Royal Caribbean executed the Contract, and that the Contract, which nearly all of them digitally signed, governs this dispute. S.F. FAC ¶ 105 ("At all

6

times material hereto, [Royal Caribbean] and the Plaintiffs and all others similarly situated were parties to a passenger ticket contract."); C.B. SAC ¶ 94 (same); Doe Compl. ¶ 18 (acknowledging that the "passenger-ticket contract" controls); L.R. Compl. ¶ 5 (same); R.M. Compl. ¶ 5 (same); D.M. Compl. ¶ 21 (acknowledging "the operative ticket contract"); K.T. SAC ¶ 19 (same); T.L. Compl. ¶ 14 (same); J.L.S. FAC ¶ 11 (acknowledging "contractual period"); M.S. Compl. ¶ 12 (same); *see* Declaration of Amanda Campos ("Campos Declaration") ¶¶ 6-7 (confirming that nearly all Plaintiffs digitally signed the American, Canadian, or Chilean Contract, which are attached to the Campos Declaration as Exhibit A, B, and C, respectively). The T.L. Plaintiffs have confirmed that the Contract is the "operative contract." T.L. Compl. ¶ 14. Royal Caribbean is continuing to investigate the method by which those Plaintiffs executed their operative ticket-contracts. *See* Campos Declaration ¶ 7.

### III. The Contract Contains an Arbitration Clause That Must Be Broadly Interpreted and That Requires Arbitration of Their Claims for Mental and Emotional Distress

The Contract references an arbitration provision on its first page in all caps and in **bold**:

> **YOU ARE ESPECIALLY DIRECTED TO CAREFULLY READ AND UNDERSTAND SECTIONS 3, AND 10 THROUGH 12, AS THEY CONTAIN SIGNIFICANT LIMITATIONS…INCLUDING TIME LIMITS AND FORUM FOR CLAIMS AND SUITS, APPLICABLE LAW, [AND] ARBITRATION.**

Contract at 1 (emphasis in original).

Paragraph 10(c) lays out the "**MANDATORY ARBITRATION**" provision. It broadly requires arbitration of all claims between Plaintiffs and Royal Caribbean and specifically requires arbitration of claims for mental or emotional distress or injury. Contract, § 10(c). It states that "any dispute or claim between you and us must be arbitrated" and that the "agreement to arbitrate is intended to be broadly interpreted." Contract, § 10(c). The arbitration requirement "includes, but is not limited to" "claims arising out of or relating to this Agreement and/or the Cruise…or any

7

other aspect of the relationship between you and us, whether based in contract, tort, fraud, misrepresentation, or any other statutory or common-law legal theory." *Id.* § 10(c)(i).

Importantly, it requires arbitration of all mental or emotional distress claims, like Plaintiffs', that were not caused by bodily injury. *Id.* (requiring arbitration of "claims for mental or emotional distress or injury ***not arising out of bodily injury***.") (emphasis added). It also makes clear that the arbitration requirement "is intended to be broadly interpreted." *Id.* ¶10(c)(i). The arbitration clause goes on to exclude "personal injury, illness, or death" claims (unlike Plaintiffs' emotional distress claims) from arbitration and require that this exclusion be "narrowly" interpreted. *Id.* § 10(c)(ii). Thus, the Contracts' arbitration clause makes an important distinction between (i) claims (like Plaintiffs') for mental or emotional distress or injury not arising from bodily injury, which must be arbitrated, and (ii) claims for personal injury, illness or death, which are not to be arbitrated.

Some Plaintiffs allege that physical symptoms resulted from their emotional distress. *See* S.F. FAC ¶¶ 17, 41, 52, 60, 66-67, 73, 77, 82-83, 88, 92, 99, 104, 116 (alleging that Plaintiffs' "severe emotional distress" is "causing the Plaintiffs physical sickness" "physical pain" and "physical impact"); C.B. SAC ¶¶ 16, 41, 49, 55-56, 62, 66, 71-72, 77, 81, 88, 93, 105 (same); D.M. Compl. ¶¶ 50, 60, 68-69, 77, 81, 88, 89, 96, 100, 108 (same); T.L. Compl. ¶¶ 42, 52, 60, 61, 69, 73, 80-81, 88, 92, 100, 106 (same); J.L.S. FAC ¶¶ 35, 38, 42, 45, 47, 51, 54, 58, 61, 63 (alleging "pain and suffering"); M.S. Compl. ¶¶ 34, 37, 41, 44, 46, 50, 53, 57, 60, 62 (same). This is the opposite of what the narrow exclusion from arbitration requires. Contract, § 10(c)(i) (requiring arbitration if the alleged emotional distress arose "out of bodily injury," not the other way around).

In short, Plaintiffs' claims of mental and emotional distress and injury lie right at the center of the Contract's requirement to arbitrate. As does Plaintiffs' contract-based claim for breach of

8

the implied covenant of good faith and fair dealing. *Id.* § 10(c)(i) (requiring arbitration of claims "based in contract."). Notably, the Plaintiffs, all of whom acknowledge the Contract, (S.F. FAC ¶ 105; C.B. SAC ¶ 94; Doe Compl. ¶ 18; L.R. Compl. ¶ 5; R.M. Compl. ¶ 5; D.M. Compl. ¶ 21; K.T. SAC ¶ 19; J.L.S. FAC ¶ 11; M.S. Compl. ¶ 12; T.L. Compl. ¶ 14), and some of whom even directly acknowledge the "predispute arbitration agreement" (S.F. FAC ¶ 36; C.B. SAC ¶ 36), do not even attempt to dispute that its express language mandates arbitration of their claims.

## IV.    The International Plaintiffs' Contracts Require All Claims to Be Brought in the Courts of England and Wales

Some of the C.B. Plaintiffs are citizens and residents of Canada (C.B. SAC 1(p)-(s)) ("Canadian Plaintiffs"), and the V.V. Plaintiffs are citizens and residents of Chile ("Chilean Plaintiffs" and, together with the Canadian Plaintiffs, "International Plaintiffs"). VV. Compl. ¶¶ 2-3. The International Plaintiffs agreed in their signed ticket-contracts ("Canadian Contract" and "Chilean Contract," respectively) to only bring claims in the Courts of England and Wales, establishing that they are in the wrong court.

The Canadian Contract provides:

> EXCEPT AS PROVIDED IN SECTION 10.c. BELOW, ALL DISPUTES, CLAIMS OR OTHER MATTER OF ANY DESCRIPTION ARISING OUT OF, IN CONNECTION WITH OR IN ANY WAY RELATED OR INCIDENT TO THIS AGREEMENT, THE CRUISE, CRUISETOUR, LAND TOUR OR TRANSPORT (INCLUDING A CLAIM FOR PERSONAL INJURY, ILLNESS OR DEATH OF A GUEST) MUST BE LITIGATED, IF AT ALL, IN AND BEFORE THE COURTS OF ENGLAND AND WALES, TO THE EXCLUSION OF ALL OTHER COURTS OR TRIBUNALS.  GUEST HEREBY CONSENTS TO JURISDICTION AND WAIVES ANY VENUE OR OTHER OBJECTION THAT GUEST MAY HAVE TO ANY SUCH ACTION OR PROCEEDING BEING BROUGHT IN THE COURTS OF ENGLAND AND WALES.

Canadian Contract, § 10(a)(i).

Similarly, the Chilean Contract provides that, "[i]f the dispute is not resolved by [Arbitration or] Alternative Dispute Resolution, you must issue legal proceedings in the Courts of England and Wales." Chilean Contract, § 5.9.

The Canadian and Chilean Contracts further make clear that English law, and English law alone, applies, regardless of whether claims are resolved in Court or in arbitration. Canadian Contract, § 10(a)(ii) ("ALL DISPUTES OR CLAIMS WHATSOEVER," "WHETHER RESOLVED IN COURT OR IN ARBITRATION," are "GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH ENGLISH LAW."); Chilean Contract, § 5.9 ("The contract between us is governed by the laws of England and Wales.").

## **ARGUMENT**

### I. **Federal Law Favors Arbitration, Resolves All Doubts in Favor of Arbitration, And Strongly Presumes Arbitration Agreements to Be Valid**

It is "hornbook law" that the Federal Arbitration Act embodies the "'liberal federal policy favoring arbitration and the fundamental principle that arbitration is a matter of contract.'" *Jones v. Waffle House.*, 866 F.3d 1257, 1263-64 (11th Cir. 2017) (quoting *AT&T Mobility v. Concepcion*, 563 U.S. 333, 339 (2011)).  Courts must resolve "any doubts concerning the scope of arbitrable issues . . . in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.,* 460 U.S. 1, 24–25 (1983); *Bazemore v. Jefferson Capital Sys., LLC*, 827 F.3d 1325, 1329 (11th Cir. 2016). This extends to maritime arbitration agreements, establishing them as presumptively "valid, irrevocable, and enforceable." 9 U.S.C. § 2; *Cosgun v. Seabourn Cruise Line,* 666 F. Supp. 3d 1270, 1294 (S.D. Fla. 2023) (quoting 9 U.S.C. § 2); *Offshore Marine Towing v. Gismondi,* 473 F. Supp. 3d 1353, 1356 (S.D. Fla. 2020).  When interpreting a maritime arbitration agreement, courts must therefore apply a "strong presumption favoring arbitrability." *Nolde Bros. v. Loc. No. 358, Bakery & Confectionery Workers Union, AFL-CIO,* 430 U.S. 243, 244 (1977).

10

Plaintiffs bear a heavy burden to defeat this strong presumption. *Farris v. Carnival Corp.,* 2018 WL 3699333, at *4 (S.D. Fla. Apr. 5, 2018). They cannot do so unless they show "with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Techs., Inc. v. Commc'ns Workers of Am.,* 475 U.S. 643, 650 (1986). This is an "affirmative duty . . . by way of affidavit or allegation of fact to show cause" why arbitration is not required. *Sims v. Clarendon Nat. Ins.*, 336 F. Supp. 2d 1311, 1314 (S.D. Fla. 2004). They must present "the most forceful evidence of a purpose to exclude the claim from arbitration," otherwise arbitration is required, *AT&T Techs.,* 475 U.S. at 650, and the Court must then stay all proceedings. *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 25 (1991); *AT&T Mobility*, 563 U.S. at 344.

## II.      Plaintiffs' Contract Requires Arbitration of All Their Claims

"[A]rbitration is a matter of contract," so issues "arising out of arbitration agreements are generally resolved by contract-law principles." *Internaves de Mexico s.a. de C.V. v. Andromeda Steamship Corp.,* 898 F.3d 1087, 1092 (11th Cir. 2018). The Court must review the agreement and determine "whether the parties agreed to arbitrate a dispute," *E.E.O.C. v. Waffle House, Inc.,* 534 U.S. 279, 294 (2002)), "according to [the contract's] terms," *Internaves*, 898 F.3d at 1092; *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013) (holding that "courts must rigorously enforce arbitration agreements according to their terms"). Again, importantly, all doubts must be resolved in favor of arbitration.

There is no dispute that the Contract controls here, and it is clear that the Contract requires arbitration of Plaintiffs' claims. For one, most Plaintiffs explicitly concede that the Contract, which most or all digitally signed (*see* Campos Declaration ¶¶ 6-7), controls, (S.F. FAC ¶ 105; C.B. SAC ¶ 94; Doe Compl. ¶ 18; L.R. Compl. ¶ 5; R.M. Compl. ¶ 5; D.M. Compl. ¶ 21; K.T. SAC ¶ 19; J.L.S. FAC ¶ 11; M.S. Compl. ¶ 12; T.L. Compl. ¶ 14), with some Plaintiffs directly

11

acknowledging their "predispute arbitration agreement" (S.F. FAC ¶ 36; C.B. SAC ¶ 36) and purporting to attach it to their Complaint. *See* Doe Compl. ¶ 18. Many Plaintiffs even seek to enforce the Contract's terms through their implied covenant claims. S.F. FAC ¶ 105-16; C.B. SAC ¶ 94-105. All 127 Plaintiffs acknowledge the controlling effect of the Contract, and none dispute in their Complaints that its broad arbitration agreement covers their claims.

This is because there is no argument otherwise. The Contract "broadly" requires mandatory arbitration of "any dispute or claim between you and us," including all "claims arising out of or relating to this Agreement and/or the Cruise . . . or any other aspect of the relationship between you and us," regardless of the "legal theory." Contract, § 10(c)(i)-(ii). Such "broad" language renders the FAA's strong federal policy favoring arbitration "particularly applicable" and requires the Court to give significant weight to the strong presumption in favor of arbitrability. *AT&T,* 475 U.S. at 650 (interpreting similar provision) (citing *Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-585 (1960)); *Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 398 (1967) (same); *Mercury Telco Grp., Inc. v. Empresa De Telecommunicaciones De Bogota S.A. E.S.P.,* 670 F. Supp. 2d 1350, 1355 (S.D. Fla. 2009) (same).

The Contract's arbitration provision is not merely broad. It is also specific in requiring arbitration of the very claims that Plaintiffs bring here (mental and emotional distress claims) and explicit as to its broad reach. It requires arbitration of all "claims for mental or emotional distress or injury," so long as such distress does not "aris[e] out of bodily injury." Contract, § 10(c)(i). In other words, unless one's damages ***originated*** from a physical, bodily injury, arbitration is required.

Here, Plaintiffs concede that their mental and emotional injuries arose after Mirasol's conduct, and most concede that their injuries occurred months after their cruises when they first

learned of Mirasol's secret, voyeuristic acts. *See* S.F. FAC ¶¶ 34, 116; C.B. SAC ¶¶ 34, 105; Doe Compl. ¶ 35;  D.M. Compl. ¶ 37; K.T. SAC ¶ 33; T.L. Compl. ¶ 29; L.R. Compl. ¶¶ 17-20; R.M. Compl. ¶¶ 17-20; *see generally* J.L.S. FAC; M.S. Compl.

Also, no Plaintiff alleges receiving any bodily injury from Mirasol while on the cruise (*see generally* S.F. FAC; C.B. SAC; Doe Compl.; D.M. Compl.; K.T. SAC; J.L.S. FAC; M.S. Compl.; T.L. Compl; L.R. Compl.; R.M. Compl.) and, indeed, no Plaintiff alleges anything beyond a routine interaction with him, with nearly all the Plaintiffs never alleging that they even met him. In assessing whether these allegations qualify as "claims for mental or emotional distress or injury" that must be arbitrated (as they unambiguously do), the Contract is clear that it must be "broadly" interpreted in favor of arbitration. Contract, § 10(c)(i).

The Contract is similarly clear that its limited, inapplicable exclusion of "personal injury" claims from arbitration must be interpreted narrowly, thereby clarifying that emotional distress claims do not constitute "personal injury" claims unless they arose from some physical, "bodily injury." Contract, § 10(c)(i)-(ii). Since Plaintiffs' claims assert emotional distress that arose months after the cruise and not from any physical contact or bodily injury caused by Mirasol, they are subject to mandatory arbitration under the Contract. And to the extent there are any doubts about this (and there are none), such doubts must be resolved in favor of arbitration. Not only does the Contract twice make clear that doubts must be resolved in favor of arbitration, (Contract, § 10(c)(i)-(ii)), but it is also "basic hornbook law" that federal policy as embodied in the FAA (*Jones,* 866 F.3d at 1263-64) "strongly favors the enforcement of agreements to arbitrate" (*Farris,* 2018 WL 3699333, at *1) and requires "any doubts" to be "resolved in favor of arbitration." *Moses*, 460 U.S. at 24-25; *Nolde*, 430 U.S. at 244 (nothing that there is a "strong presumption favoring arbitrability"). Based on the unambiguous language of the Contract, its two explicit interpretative

13

principles, and longstanding federal policy enshrined under the FAA, Plaintiffs' claims, which are rooted in mental and emotional distress and injury caused months after the cruise by the revelation of previous hidden voyeurism, can only be arbitrated.

The statutory and contractual requirement that the arbitration agreement be broadly interpreted is powerful. All that is needed to require arbitration is some "interpretation" of the arbitration provision that covers Plaintiffs' emotional distress claims. *AT&T,* 475 U.S. at 650 (holding that arbitration is required "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute…only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail") (citing *Steelworkers*, 363 U.S. at 582-585); *Unite Here Loc. 355 v. Hollywood Greyhound Track, Inc.,* 2009 WL 10668617, at *1 (S.D. Fla. Apr. 16, 2009) (same); *see also Canobinoti, LLC v. Woods*, 2021 WL 4479006, at *6 (S.D. Fla. Sept. 30, 2021) (resolving "doubt" in favor of arbitrability and compelling arbitration); *Cellairis Franchise, Inc. v. Connor Enterprises, Inc.*, 2015 WL 12844484, at *3 (N.D. Ga. Mar. 17, 2015) (compelling arbitration where arbitration clause was "ambiguous as to what claims, if any, are arbitrable").  Here, it is not just some "interpretation" of the arbitration provision that covers Plaintiffs' claims.  The explicit and only interpretation of the arbitration provision does so.

Courts interpreting similar provisions nationwide are unanimous: Plaintiffs' claims must be arbitrated. Courts routinely confirm that claims rooted in emotional, rather than physical, injury do not constitute personal injury/bodily injury claims. In *Nationwide Gen. Ins. Co. v. Pelkey,* 2021 WL 2895643, at *1 (M.D. Fla. July 9, 2021), the plaintiff brought claims for, *inter alia,* IIED and invasion of privacy after the defendant recorded her engaging in a private sexual act. The court held that, like here, the emotional distress claims were not "bodily injury" claims excluded from

14

the parties' arbitration agreement because, to be so excluded, the emotional distress claims must have been "the direct result of bodily harm." *Id.* (citing *D.B.C. ex rel. M.A.M. v. Pierson*, 2014 WL 2155017, at *4 (N.D. Ala. May 22, 2014) (holding that physical injuries caused by a mental injury did not constitute "bodily injury"); *Nationwide Prop. & Cas. Co. v. Lacayo,* 2008 WL 4831743, at *3 (M.D. Ala. Nov. 3, 2008) (adopting identical interpretation of the same provision); *Nationwide Mut. Ins. Co. v. Pasiak,* 2012 WL 310772, at *8 (Conn. Super. Ct. Jan. 9, 2012) (same); *Knutsen v. State Farm Fire & Cas. Co.,* 375 F. Supp. 3d 514, 520–22 (D. Vt. 2019) (adopting identical interpretation of similar provision); *Gravillis v. Coldwell Banker Residential Brokerage Co.,* 143 Cal. App. 4th 761, 770 (2006) (compelling arbitration because plaintiff alleged that her emotional distress caused physical harm [rather than the reverse]: "if emotional distress were considered a bodily injury, the arbitration exclusion in the Agreement could apply in virtually every dispute, rendering the arbitration provision a nullity") (citing *Erlich v. Menezes*, 21 Cal.4th 543, 554-555 (1999) (holding that the question is whether the origins of the injury are physical or emotional: "[t]he only physical injury alleged is [plaintiff's] heart disease, which flowed from the emotional distress and *not directly* from the [alleged conduct]") (emphasis added)); *Geraci v. Conte*, 2000 WL 1739294, at *6 (Ohio Ct. App. Nov. 22, 2000) (holding that claims of emotional distress with subsequent physical symptoms, as a result of video voyeurism, did not constitute "bodily injury": "physical sickness, which occurred as a result of [appellant's] emotional distress, is excluded"); *Moore v. Bamboo Retreats, LLC,* 2021 WL 3029569, at *3 (Cal. Ct. App. July 19, 2021) (arbitrator ruling that "emotional distress" claims did not constitute "personal injury" claims).

There need only be a plausible interpretation of the Contract that requires arbitration of Plaintiffs' claims to thereby require the Court to compel arbitration. But, here, there is no plausible

15

interpretation otherwise. The Contract makes clear that Plaintiffs' claims, which Plaintiffs repeatedly allege consist of and originate from emotional distress, are expressly subject to arbitration under the very terms of the arbitration clause.

Beyond their emotional distress claims, Plaintiffs also bring contract-based claims seeking to enforce the Contract's implied covenant of good faith and fair dealing. S.F. FAC ¶¶ 105-116 C.B. SAC ¶¶ 94-105. These claims fall under the broad agreement to arbitrate, which covers all claims between Plaintiffs and Royal Caribbean, regardless of "legal theory," and even specifically covers claims "based in contract." Contract, § 10(c)(i). In short, Plaintiffs' contract-based claims are also subject to binding arbitration, and, again, there is no plausible reading otherwise.

### III.	No Statute Overrides the Presumed Validity of Plaintiffs' Agreement to Arbitrate

#### A.	If There is Any Doubt, Lack of Clarity or Ambiguity on Whether a Statute Bars Plaintiffs' Agreement to Arbitrate, the Court Must Compel Arbitration

To rely on a statute to override an agreement to arbitrate, Plaintiffs must show that the statute "clearly" and "*explicitly*" bars arbitration. *Davis v. S. Energy Homes, Inc.*, 305 F.3d 1268, 1273 (11th Cir. 2002) (emphasis in original); *see also CompuCredit Corp. v. Greenwood*, 565 U.S. 95, 104 (2012); *Davis,* 305 F.3d 1268, 1274 (11th Cir. 2002) (noting that, "unless Congress has clearly expressed an intention to preclude arbitration . . . party is bound by its agreement to arbitrate" and that, "[i]n every [] case that the Supreme Court has considered, it has upheld binding arbitration" unless the statute "*explicitly* preclude[d] arbitration") (emphasis in original).

This is a "daunting" burden for Plaintiffs to meet. *In re Wiand*, 2012 WL 611896, at *4 (M.D. Fla. Jan. 4, 2012) (citing *Davis*, 305 F.3d at 1273).  If there is any doubt, the Court must find "in favor of arbitration." *Burch v. P.J. Cheese, Inc.*, 861 F.3d 1338, 1350 (11th Cir. 2017).  If Congress is "silent," the "FAA requires the arbitration agreement to be enforced according to its terms." *CompuCredit*, 565 U.S. at 104 (reversing Ninth Circuit and enforcing arbitration

16

agreement); *Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 26 (1991) (holding that arbitration was required since Congress "did not explicitly preclude arbitration"). If application of the statutory ban is not "clear" or "ambiguous," the Court must compel arbitration. *Davis*, 305 F.3d at 1274-76; *In re Elec. Mach. Enterprises, Inc., 479 F.3d 791, 796 (11th Cir. 2007).  In short, unless there is an undeniable statutory prohibition on the agreement to arbitrate—meaning one that does not allow for any contrary interpretation—the Court must enforce the parties' express agreement to arbitrate. *Id.* at 1350; *Davis,* 305 F.3d at 1274-76; *In re Elec.,* 479 F.3d at 796; *CompuCredit,* 565 U.S. at 104; *Gilmer*, 500 U.S. at 26; *AT&T*, 475 U.S. at 650.

**B.     Maritime Statute 46 U.S.C. § 30527 Does Not Bar, and in Fact Supports, Compelling Arbitration under Plaintiffs' Agreement to Arbitrate**

Congress long ago enacted a statute codifying what are essentially the same key operative terms used in Plaintiffs' arbitration agreement.  Specifically, Plaintiffs agreed in their Contract that, on the one hand, mental and emotional distress claims not arising out of bodily injury must be arbitrated while also agreeing that, on the other hand, "personal injury" claims would not be arbitrated.

Dating back as far as 1936, federal maritime law now codified in 46 U.S.C. § 30527 ("Maritime Statute") made the same distinction.  Congress enacted the Maritime Statute to prohibit shipowners from contractually limiting passengers' ability to pursue physical injury claims. *DeLuca v. Royal Caribbean Cruises, Ltd.*, 244 F. Supp. 3d 1342, 1346 (S.D. Fla. 2017); *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 595-97 (1991). As originally codified as an amendment at Section 4283B of the Revised Statutes of the United States (46 U.S.C. App. § 183c), the Maritime Statute barred such limitations only if they involved claims for "bodily injury"—in other words, a physical injury. The 1936 Maritime Statute confirms that, in instances of death or "bodily injury," contracts cannot relieve a ship owner from liability or weaken a claimant's right to "a trial

17

by a court of competent jurisdiction." *See* Section 4283B (attached hereto as **Exhibit D**). In short, the Maritime Statute did not allow shipowners to require arbitration for claims of bodily injury. The Maritime Statute did not bar any such limitations of emotional distress claims. In fact, in 1936, emotional distress claims did not exist under maritime law. *Chan v. Soc'y Expeditions, Inc.*, 39 F.3d 1398, 1409 (9th Cir. 1994) (recognizing, for the first time, that emotional distress claims are cognizable under maritime law) (citing *Sea-Land Serv. v. Gaudet*, 414 U.S. 573, 585 n.17 (barring claims for "mental anguish or grief" under maritime law); *Cook v. Ross Island Sand & Gravel Co.*, 626 F.2d 746, 752 (9th Cir. 1980) (same)).

In 1996, just two years after *Chan* opened the door for emotional distress claims under maritime law, Congress amended the Maritime Statute to address such claims, adding a new section to the Maritime Statute to address claims for "emotional distress, mental suffering, or psychological injury." *See* Coast Guard Authorization Act, Pub. L. 104–324, § 1129(b), 110 Stat. 3901, 3984–85; *Est. of Myhra v. Royal Caribbean Cruises, Ltd.*, 695 F.3d 1233, 1243 n.29 (11th Cir. 2012), *superseded by statute on other grounds irrelevant to the Court's analysis, as stated in Caron v. NCL (Bahamas) Ltd.*, 910 F.3d 1359, 1364 n.2 (11th Cir. 2018). In this new section, Congress only barred, under certain circumstances, limitation of "liability" of emotional distress claims. *Id.* It did not in any way prohibit or limit contracts from requiring arbitration of emotional distress claims.

The 1996 amendment's placement of restrictions on limitation of liability clauses, while placing no restrictions on arbitration clauses, was consistent with the original intent of the Maritime Statute, which was designed to preserve maritime passengers' right to pursue compensation for physical injury claims—also referred to as "bodily injury" claims. The amendment's primary effect was, in subsection (a), to restrict owners from using limitation of

18

liability clauses to deprive passengers of any recourse for such bodily injury. *Est. of Myhra*, 695 F.3d at 1243 (citing legislative history); *Shultz v. Fla. Keys Dive Ctr., Inc.,* 224 F.3d 1269, 1271 (11th Cir. 2000) (same); *Carnival*, 499 U.S. at 602 (Stevens, J., dissenting) (noting that limitation of liability clauses are the "principal subject of the statute."). Arbitration clauses, on the other hand, are far less onerous. They do not deprive a maritime passenger of recourse, but rather prescribe their adjudicative forum. *Turner v. Sedgwick Claims Mgmt. Servs., Inc.,* 2015 WL 225495, at *14 (N.D. Ala. Jan. 16, 2015) (stating that "the Supreme Court has frequently observed that an arbitration agreement is but a species of forum-selection agreement, which designates an arbitral forum rather than a judicial one") (citing cases). Accordingly, subsection (b) of the 1996 Maritime Statute addressed only emotional distress (not bodily injury) claims and did not prohibit arbitration of those claims.

In 2006, Congress again amended the Maritime Statute, this time to insert "personal injury" where bodily injury had previously been used. This was a clarification, not a change to the meaning of the statute. The Eleventh Circuit made this clear in 2012, stating that the inclusion of the "slight[]" "modifi[cation]" to the "language" of the Maritime Statute was not a "substantive change" to its meaning. *Est. of Myhra*, 695 F.3d at 1243 n.29. This is consistent with Congress's intent that the modern term "personal injury," as used in the 2006 amended iteration of the Maritime Statute, was to be interchangeable with "bodily injury," as used in prior iterations. Congress confirmed that it was not substantively changing the Statute and only intended to "conform to the understood policy, intent, and purpose of the Congress in the original enactments" and "remove ambiguities." CODIFICATION OF TITLE 46, PL 109–304, October 6, 2006, 120 Stat 1485; H.R. REP. 109-170, 45, 2006 U.S.C.C.A.N. 972, 992 (clarifying that the terms were swapped for readability purposes).

19

Accordingly, under Congress's reaffirmed intent for the Maritime Statute, the 2006 statute's language, and the Eleventh Circuit's reading, the Maritime Statute continues, as it has for decades, to only bar the arbitration of physical injury claims, not emotional distress claims. It continues to treat "personal injury" claims and "emotional distress" claims differently, addressing "personal injury" claims in subsection (a) and addressing "emotional distress, mental suffering, and psychological injury" claims in subsection (b). 46 U.S.C. § 30527(a)-(b). Subsection (a) continues to bar ship owners from contractually limiting liability for "personal injury" claims or requiring arbitration of such claims. *See id.* § 30527(a)(1)(A)-(B). Subsection (b), on the other hand, remains the only section that addresses "emotional distress, mental suffering, and psychological injury" claims, and it prohibits only the limitations of liability for such claims, *id.* § 30527(b), not (consistent prior iterations) the arbitration of such claims. *Id.*

Congress has made its intent crystal clear. Nothing at law restricts the parties' contractual agreement to arbitrate claims for emotional distress. *CompuCredit*, 565 U.S. at 104 (noting that, if a statute is "silent" on whether claims can be arbitrated, the arbitration agreement must be enforced); *Gilmer*, 500 U.S. at 26. The arbitration provision in Plaintiffs' Contracts in no way limits "liability." *Dextel Terrebonne v. K-Sea Transportation Corp.,* 2002 WL 34106288, at *2 (E.D. La. Sept. 13, 2002), *aff'd sub nom. Terrebonne v. K-Sea Transp. Corp.,* 477 F.3d 271 (5th Cir. 2007) (interpreting the Maritime Statute and holding that an arbitration "agreement does not exempt [a party] from liability" but, instead, "merely requires that the dispute be resolved through arbitration"); *DeLuca*, 244 F. Supp. 3d at 1346 (noting that the Maritime Statute's restrictions on (1) limitations of liability and (2) arbitration are separate and distinct).

Thus, Maritime Statute subsection (a)'s current prohibition on limitations of liability for personal injury (bodily injury) claims does not restrict the parties' right to require arbitration of

20

emotional distress claims, which subsection (b) on emotional injuries does not prohibit. As Plaintiffs' claims are emotional distress claims not arising out of bodily injury, which, by both Contract and Statute, is separate and distinct from a claim for "personal injury," this case is simply another "non-personal injury" case that must be arbitrated. *Farris*, 2018 WL 3699333, at *4 (holding that courts in the "maritime context" "compel[] arbitration for non-personal injury claims.") (citing cases). We have seen no decision of a federal court rejecting arbitration under the Maritime Statute of pure emotional and psychological injuries not caused by a bodily injury.

The Supreme Court has repeatedly reached the same conclusion. In *CompuCredit*, the Supreme Court assessed whether a statutory bar on restricting "liability" prevented the parties from agreeing to arbitrate. 565 U.S. at 102. The Court, citing decades of its own precedent, found it did not, holding that "we have repeatedly recognized that contractually required arbitration of claims" does not interfere with a statutory bar on limiting "liability." *Id.* (citing *Gilmer*, 500 U.S. at 28; and *Shearson/American Express Inc. v. McMahon*, 482 U.S. 220, 226 (1987); and *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985)); *see also Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer*, 515 U.S. 528, 538 (1995) (statutory prohibition on limiting liability did not affect the parties' right to arbitrate).

The Maritime Statute's irrelevant limitation of liability restrictions is nowhere near sufficient to override the FAA's strong preference for arbitration. As the Supreme Court put it, "[h]ad Congress meant to prohibit" the arbitration of emotional distress claims, "it would have done so in a manner less obtuse." *CompuCredit*, 565 U.S. at 102. Indeed, "[w]hen it has restricted the use of arbitration in other contexts it has done so with a clarity" that is nowhere present in the Maritime Statute. *Id.* at 102 (citing, *e.g.*, 7 U.S.C. § 26(n)(2) ("No predispute arbitration agreement shall be valid or enforceable…")).

21

At best for Plaintiffs, the Maritime Statute stays "silent" on the arbitrability of emotional distress claims—thus, the parties' agreement to arbitrate must "be enforced according to its terms." *CompuCredit*, 565 U.S. at 104; *Gilmer*, 500 U.S. at 26.   Similarly, its restriction on arbitrating "personal injury" claims in subsection (a) is neither clear nor explicit enough to also preclude arbitration of emotional distress claims exclusively addressed in subsection (b). This distinction between the two types of claims is not only recognized in the operative Contract in this dispute but has also been recognized in the Maritime Statute for decades.   In fact, courts across the country have routinely confirmed that emotional distress claims do not constitute personal injury/bodily injury claims. *Nationwide Gen.,* 2021 WL 2895643, at *1; *D.B.C.*, 2014 WL 2155017, at *4; *Nationwide Prop.,* 2008 WL 4831743, at *3; *Nationwide Mut.,* 2012 WL 310772, at *8; *Knutsen,* 375 F. Supp. 3d at 520–22; *Gravillis,* 143 Cal. App. 4th at 770; *Erlich*, 21 Cal.4th at 554-555; *Geraci*, 2000 WL 1739294, at *6; *Moore,* 2021 WL 3029569, at *3.

If Congress intended to override nationwide jurisprudence and bar arbitrability of emotional distress claims, the amendments of the Maritime Act needed to be explicit. Under the longstanding federal public policy in favor of arbitration, Congress *had to be* more explicit to justify Plaintiffs' reading of the Maritime Statute. At best for Plaintiffs, Congress, has, at minimum, remained "silent" (*CompuCredit*, 565 U.S. at 104), "ambiguous" or not "clear" as to whether emotional distress claims may be arbitrated. *Davis*, 305 F.3d at 1274-76; *In re Elec.,* 479 F.3d at 796. Once again, if Congress "meant to prohibit" the arbitration of emotional distress, it would not have done so in such a confusing, roundabout manner—"it would have done so in a manner less obtuse." *CompuCredit*, 565 U.S. at 102 (citing, *e.g.*, 7 U.S.C. § 26(n)(2)).

This ends the analysis.   All that is needed to require arbitration here is an interpretation of the Maritime Statute that permits arbitration; arbitration can only be avoided if Congress "clearly"

22

and "*explicitly*" precluded it. *Davis*, 305 F.3d at 1274-76 (emphasis in original); *CompuCredit,* 565 U.S. at 104; *Gilmer*, 500 U.S. at 26; *In re Elec.,* 479 F.3d at 796; *AT&T*, 475 U.S. at 650. Yet far from explicit preclusion, the Maritime Statute says nothing suggesting that emotional distress claims cannot be arbitrated, instead distinguishing arbitration clauses from the far more onerous limitation of liability clauses, and only barring the limitation of liability of emotional distress claims. Nor does the Maritime Statute's legislative history support Plaintiffs' arguments—rather, it only confirms that the Maritime Statute, intended to protect maritime passengers, appropriately dealt with the more burdensome limitation of liability clauses more harshly.

Nor is there any case law that can support Plaintiffs' arguments; indeed, in the eighty-nine years since the Maritime Statute was enacted in 1936, we have seen no Court decisions ruling against the arbitrability of purely emotional distress claims. Plaintiffs simply cannot satisfy their "daunting" burden to overcome the strong presumption in favor of arbitration. *In re Wiand*, 2012 WL 611896, at *4; *Nolde*, 430 U.S. at 244.

C.  **The Ending Forced Arbitration Act Also Supports the Agreement to Arbitrate**

Plaintiffs do not even try to dispute that they voluntarily and expressly agreed, via both broad and specific language, to arbitrate their claims. Instead, they have taken the position that their agreement to arbitrate should be somehow overridden by the Ending Forced Arbitration Act, 9 U.S.C. § 402 ("EFAA"). S.F. FAC ¶¶ 36; C.B. SAC ¶¶ 36. But the EFAA does nothing to disrupt the parties' contractual agreement to arbitrate Plaintiffs' claims. The EFAA only bars the arbitrability of a case that "relates to [a] sexual assault dispute or [] sexual harassment dispute." *Id.* § 402(a). This case is neither.

None of the 127 Plaintiffs, across nine different Plaintiffs' groups, ever allege sexual harassment or sexual assault, whether in form or substance. Plaintiffs bring claims against Royal

23

Caribbean here for invasion of privacy, IIED, NIED, general negligence, negligent security, negligent failure to warn, breach of the implied covenant of good faith and fair dealing, and punitive damages—they do not bring a single claim for sexual assault or sexual harassment. Nor do they allege any actual facts that even suggest physical or sexual contact from Mirasol, instead alleging that they were only harmed afterward—often several months after their cruise when they learned that Mirasol had previously secretly recorded them without their knowledge. Such allegations of "voyeurism," and resultant emotional distress, simply do not constitute sexual assault or harassment.

Like Plaintiffs themselves, the EFAA is equally clear that Mirasol's alleged conduct does not constitute sexual assault or harassment. The EFAA defines a "sexual assault dispute" as one "involving a nonconsensual sexual act or sexual contact, as such terms are defined in section 2246 of title 18 or similar applicable Tribal or State law, including when the victim lacks capacity to consent." 9 U.S.C. § 401(3). The referenced section 2246 of title 18, in turn, defines "sexual act" and "sexual contact" solely to encompass physical contact between two individuals. *See, e.g.,* 18 U.S.C. § 2246(2)(D) ("the intentional touching, not through the clothing, of the genitalia of another person…"); *id.* § 2246(3) ("the intentional touching, either directly or through the clothing, of the genitalia, anus, groin, breast, inner thigh, or buttocks of any person…"). None of these definitions apply here.

As for sexual harassment, for a claim to so qualify under the EFAA, Plaintiffs must plausibly allege that Mirasol's "conduct violated a law prohibiting sexual harassment." *Gonzalez v. Carnival Corp.,* 2024 WL 4863892, at *4 (S.D. Fla. Nov. 22, 2024) (citing cases); *Newton v. LVMH Moet Hennessy Louis Vuitton Inc.,* 2024 WL 3925757, at *7 (S.D.N.Y. Aug. 23, 2024) (such allegations cannot be "implausible or frivolous."). Plaintiffs' invasion of privacy, IIED,

24

NIED, negligence, implied covenant, and punitive damages claims certainly do not allege the violation of a law prohibiting sexual harassment. And the Southern District of Florida is in accord, making clear that where a plaintiff brings such "common law" claims, they do not "allege conduct that violates a law prohibiting sexual harassment." *Gonzalez*, 2024 WL 4863892, at *4 (assessing IIED arising out of alleged sexual harassment and sexual assault: "Plaintiff does not allege conduct that violates a law prohibiting sexual harassment but only brings a state common law claim for IIED. Therefore, the EFAA does not apply to the instant Action and does not render the Arbitration Clause invalid."); *K.T. v. A Place for Rover*, 2023 WL 7167580, at *1 (E.D. Pa. Oct. 31, 2023), *reconsideration denied*, 2024 WL 1356221 (E.D. Pa. Mar. 29, 2024) (plaintiff alleged that defendant used hidden cameras to secretly film plaintiffs in various stages of undress, and brought claims for IIED, NIED, and claims under Pennsylvania's wiretapping statute and human trafficking statute. Compelling arbitration, as the EFAA did not apply: plaintiffs did "not allege a claim for 'sexual harassment' as the term is defined in the EFAA.").

The video voyeurism statutes cited by Plaintiffs offer nothing to the contrary. *See* S.F. FAC ¶ 6 (citing 18 U.S.C. § 1801 and Fla. Stat. § 810.145); C.B. SAC ¶ 6 (same); Doe Compl. ¶ 50 (citing Fla. Stat. § 810.145). For one, they do not purport to cover sexual assault or harassment, and merely concern video voyeurism without including any reference to sexual assault or harassment in the body of the statute. *See* 18 U.S.C. § 1801; Fla. Stat. § 810.145; *see also K.T.*, 2023 WL 7167580, at *1 (EFAA did not apply to claims brought under human trafficking statute, which protected individuals who were a "victim of the sex trade," as statute did not specifically cover "sexual assault" or "sexual harassment."); *Singh v. Meetup LLC et al.*, 2024 WL 4635482, at *2 (S.D.N.Y. Oct. 31, 2024) (EFAA did not apply to claims brought under New York statute

25

which barred "harassment" on the basis of "sex"; "sex-based" harassment did not necessarily constitute "sexual harassment," as defined under the EFAA).

Further, Plaintiffs only cite criminal statutes, which do "not create a private civil right of action." *Young v. City of Los Angeles*, 2024 WL 3055489, at *3 (C.D. Cal. Apr. 11, 2024) (18 U.S.C. § 1801 is a "criminal statute" which "does not create a private civil right of action."); *Kamau v. Slate*, 2012 WL 5390001, at *9 (N.D. Fla. Oct. 1, 2012) (dismissing claim for video voyeurism based on Fla. Stat. Ann. § 810.145: "there is no provision providing for a civil cause of action."). Since the EFAA is only triggered where the alleged "sexual harassment claim [is] capable of surviving dismissal at the threshold of a litigation," these criminal video voyeurism statutes, which cannot sustain a civil claim, and certainly cannot sustain a civil claim of sexual harassment, do nothing to void Plaintiffs' express agreement to arbitrate. *Yost v. Everyrealm, Inc.*, 657 F. Supp. 3d 563, 585 (S.D.N.Y. 2023) ("at a minimum," the EFAA can only bar arbitration where allegations, "if true," would [] state a judicially cognizable claim.") (citing cases).

Nor do Plaintiffs' factually unsupported efforts to style their allegations or claims as for "sexual assault" (S.F. FAC ¶¶ 28, 48-99; C.B. SAC ¶¶ 28, 37-81;  D.M. Compl. ¶ 39; T.L. Compl. ¶ 31; L.R. Compl. ¶¶ 23-31; R.M. Compl. ¶¶ 23-31), "sexual offenses" (K.T. SAC ¶ 72 ), or "sexual crimes" (J.L.S. FAC ¶ 60; M.S. Compl. ¶ 43), have any legal effect. Nor does Plaintiffs bald titling of their claims as "IIED by video voyeurism and sexual assault." S.F. FAC at ¶¶ 61-77; C.B. SAC ¶¶ 50-66. Wordsmithing, without facts or the necessary content, does transform their assertions to sexual assault or harassment claims. It is a well-established that when evaluating the viability of a complaint, courts focus on the substance of the factual allegations and not labels. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("labels and conclusions…will not do.") (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The only relevant inquiry here is whether

26

Plaintiffs plausibly alleged that Royal Caribbean's conduct "violated a law prohibiting sexual harassment," and here they have failed to cite a single example of such a law or actual facts alleged by them, rather than labels, that implicate such a law. *Gonzalez,* 2024 WL 4863892, at *4 (citing cases); *K.T.*, 2023 WL 7167580, at *1; *Newton*, 2024 WL 3925757, at *7 (same); *Yost,* 657 F. Supp. 3d at 585 (it is not enough for a lawsuit to merely "describe[] conduct in the vernacular as 'sexual harassment.'"); *City of Miami Beach v. Guerra*, 746 So. 2d 1159, 1160 (Fla. Dist. Ct. App. 1999) (Florida has no "common law tort related to sexual harassment."). Since none of Plaintiffs' claims describe sexual assault or sexual harassment in substance or cite a sexual assault or sexual harassment law that can reasonably be implicated by their factual allegations, they cannot escape their express and voluntary agreement to arbitrate their claims.

## IV.    The Canadian and Chilean Plaintiffs' Claims Must Be Dismissed

This Court does not have jurisdiction to hear the Canadian or Chilean Plaintiffs' claims. Both the Canadian and Chilean Plaintiffs expressly agreed in their signed Contract that they could only bring claims in the courts of England and Wales, to the exclusion of all other courts or tribunals. Canadian Contract, § 10(a)(i) ("ALL DISPUTES…MUST BE LITIGATED, IF AT ALL, IN AND BEFORE THE COURTS OF ENGLAND AND WALES, TO THE EXCLUSION OF ALL OTHER COURTS OR TRIBUNALS."); Chilean Contract, § 5.9 ("If the dispute is not resolved by" arbitration or "Alternative Dispute Resolution, you must issue legal proceedings in the Courts of England and Wales."). The Canadian and Chilean Plaintiffs also agreed that "ENGLISH LAW" alone covers their claims, making it particularly improper for the Court to exercise jurisdiction. Canadian Contract, § 10(a)(i); Chilean Contract, § 5.9 ("The contract between us is governed by the laws of England and Wales."). Quite simply, the Canadian and Chilean Plaintiffs filed their claims in the wrong court, and they must be dismissed.

27

## CONCLUSION

This Action should be stayed in its entirety in favor of arbitration.

**WHEREFORE**, Defendant, ROYAL CARIBBEAN CRUISES, LTD., moves the Court

for entry of an Order granting its Omnibus Motion and to Stay Litigation and Compel Arbitration.

## **S.D. FLA. LOCAL RULE 7.1 CERTIFICATION**

Counsel for Defendant hereby certifies that pursuant to Local Rule 7.1(a)(3)(A), it has conferred with Plaintiffs' counsel regarding this motion and, further, that Plaintiffs oppose the relief sought in this motion.

## **REQUEST FOR HEARING**

Defendant hereby requests a hearing on its Motion to Stay Litigation and Compel Arbitration, in light of the importance of the issues raised in the Motion, which will determine whether litigation will proceed at all. Defendant estimates that it will require at least one hour for oral argument.

**Respectfully submitted,**

Kurt K. Lunkenheimer, Esq.
Florida Bar No. 1059216
Hayley H. Ryan, Esq.
Florida Bar No. 1032623
COZEN O'CONNOR
200 S. Biscayne Blvd., Suite 3000
Miami, FL 33132
Telephone: (305) 704-5940
kklunkenheimer@cozen.com
hryan@cozen.com

John J. Sullivan, Esq. (*pro hac vice* to be filed)
COZEN O'CONNOR
3 WTC
175 Greenwich Street, 55th Floor
New York, NY 10007
Telephone: (212) 453-3729
jsullivan@cozen.com

*Co- Counsel for Defendant, Royal Caribbean Cruises, Ltd.*

29

and

Jerry D. Hamilton, Esq.
Florida Bar No. 970700
Krista Fowler Acuna, Esq.
Florida Bar No. 650791
Annalisa Gutierrez, Esq.
Florida Bar No. 97940
Kassandra Doyle Taylor, Esq.
Florida Bar No. 68645
HAMILTON, MILLER & BIRTHISEL, LLP
150 Southeast Second Avenue, Suite 1200
Miami, Florida 33131
Telephone: (305) 379-3686
hmb-symphony-team@hamiltonmillerlaw.com
*Co- Counsel for Defendant, Royal Caribbean Cruises, Ltd.*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on March 26, 2025, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing is being served this day on all counsel in the above-captioned cases either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically notices of Electronic Filing.

 

Kurt K. Lunkenheimer

## SERVICE LIST

Justin B. Shapiro, Esq.
Bernardo Pimentel II, Esq.
LEESFIELD & PARTNERS, P A
2350 South Dixie Hwy.
Miami, FL 33133
shapiro@leesfield.com
pimentel@leesfield.com
alpizar@leesfield.com
gonzalez@leesfield.com
*Counsel for Plaintiff, Jane Doe*

Jay Halpern
Halpern Santos & Pinkert, P.A.
150 Alhambra Circle
Coral Gables, FL 33134
Email: Jay@hsptrial.com
*Counsel for Plaintiffs, D.M., et al.*

LORETTA GUEVARA, ESQ.
lguevara@hickeylawfirm.com
LISA GOODMAN, ESQ.
lgoodman@hickeylaw.com
JOHN H. HICKEY, ESQ.
hickey@hickeylawfirm.com
HICKEY LAW FIRM, P.A.
12150 SW 128th Court, Suite 225
Miami, Florida 33186

Nicholas I. Gerson
ngerson@gslawusa.com
Philip M. Gerson
pgerson@gslawusa.corn
Edward S. Schwartz
eschwartz@gslawusa.corn
David L. Markel
dmarkel@gslawusa.com
GERSON & SCHWARTZ, P.A.
1980 Coral Way
Miami, Florida 33145
Telephone: (305) 371-6000
Facsimile: (305) 371-5749
*Counsel for Plaintiffs, V.V., et al.* and
*Plaintiffs, K.T., et al.*

Jason R. Margulies, Esq.
jmargulies@lipcon.com
Michael A. Winkleman, Esq.
mwinkleman@lipcon.com
Jacqueline Garcell, Esq.
jgarcell@lipcon.com
Marc E. Weiner, Esq.
mweiner@lipcon.com
LIPCON, MARGULIES,
& WINKLEMAN, P.A.

Telephone: (305) 371-8000
Facsimile: (305) 371-3542
*Counsel for Plaintiff Jane Doe*

Spencer Marc Aronfeld
Abby Ivey
Mathias Hayashi
1 Alhambra Plaza Penthouse
Coral Gables, FL 33134
Phone: 305-441-0440
Aronfeld@aronfeld.com
Aivey@aronfeld.com
Mhayashi@aronfeld.com
*Counsel for Plaintiffs, C.B., et al.*

Jay Halpern
Halpern Santos & Pinkert, P.A.
150 Alhambra Circle
Coral Gables, FL 33134
Email: Jay@hsptrial.com
*Counsel for Plaintiffs, T.L., et al.*

Sagi Shaked, Esq.
Brian L. Harvell, Esq.
SHAKED LAW FIRM, P.A.
20900 NE 30th Ave., Suite 715
Aventura, FL 33180
Telephone No.: 305-937-0191
Facsimile No.: 305-937-0193
filingcourtdocuments@gmail.com
shakedservice@gmail.com
sagi@miamiattys.com
*Counsel for Plaintiffs, J.L.S., et al.*

2800 Ponce de Leon Boulevard, Suite 1480
Coral Gables, Florida 33134
Telephone: (305) 373-3016
Facsimile: (305) 373-6204
and
Adam M. Moskowitz
The Moskowitz Law Firm
Continental Plaza
3250 Mary Street
Suite 202
Miami, FL 33133
305.740.1423 main
786.309.9561 direct
adam@moskowitz-law.com
*Counsel for Plaintiffs, Jane Doe (S.F.), et al.*

Prosper Shaked
Florida Bar No. 111764
Prosper Shaked Accident Injury Attorneys PA
15520 W Dixie Hwy
North Miami Beach, FL 33162
prosper@prosperlaw.com
*Counsel for Plaintiffs, M.S., et al.*

32