**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.: 24-CV-23953-DPG/DSW**

JANE DOE (S.F.), et al.,

     **Plaintiffs,**

v.

ROYAL CARIBBEAN CRUISES, LTD., and
ARVIN JOSEPH MIRASOL,

     **Defendants.**

_____/

### REPORT AND RECOMMENDATION ON DEFENDANT ROYAL CARIBBEAN CRUISES, LTD.'S OMNIBUS MOTION TO STAY LITIGATION AND COMPEL ARBITRATION

     **THIS CAUSE** is before the Court on the Omnibus Motion to Stay Litigation and Compel

Arbitration ("Motion"), [ECF No. 57], filed by Defendant Royal Caribbean Cruises, Ltd. ("Royal

Caribbean") in eleven related cases.[1] The Honorable Darrin P. Gayles, United States District

---

[1]    While Royal Caribbean's Motion and Plaintiffs' Opposition are both consolidated filings, the Court's Report and Recommendation for the above-captioned case is not. On January 14, 2025, the Court issued an Order staying all deadlines pending the resolution of Royal Caribbean's forthcoming Consolidated Motion to Stay Litigation and Compel Arbitration and requiring Plaintiffs to file their consolidated response to the Motion to Compel by or before April 28, 2025. *See* [ECF No. 42]. Pursuant to this Order, Royal Caribbean filed its Consolidated Motion to Stay Litigation and Compel Arbitration against plaintiffs from eleven different cases, with the above-captioned case designated as the lead case. The cases include 1) *Doe (S.F.) et al. v. Royal Caribbean Cruises Ltd. et al.*, No. 24-cv-23953-DPG; 2) *Doe v. Royal Caribbean Cruises, Ltd.*, *et al.*, No. 24-cv-24039-DPG; 3) *C.B. et al. v. Royal Caribbean Cruises Ltd., et al.*, No. 24-cv-25089-DPG; 4) *D.M. et al. v. Royal Caribbean Cruises Ltd., et al.*, No. 24-cv-24988-DPG; 5) *K.T. et al. v. Royal Caribbean Cruises Ltd. et al.*, No. 24-cv-24193-DPG; 6) *J.L.S. et al. v. Royal Caribbean Cruises Ltd. et al.*, No. 24-cv-24139-DPG; 7) *M.S. et al. v. Royal Caribbean Cruises Ltd. et al.*, No. 24-cv-24738-DPG; 8) *T.L. et al. v. Royal Caribbean Cruises Ltd. et al.*, No. 24-cv-25009-DPG; 9) *V.V. v. Royal Caribbean Cruises Ltd. et al.*, No. 25-cv-20051-DPG; 10) *Doe v. Royal Caribbean Cruises, Ltd.*, No. 25-cv-20138- DPG; and 11) *Doe et al. v. Royal Caribbean Cruises, Ltd.*, No. 25- cv-20485-DPG. *See* [ECF No. 57] n.1. Plaintiffs then filed their Consolidated Response on behalf of Plaintiffs from the same eleven cases against which Royal Caribbean

1

Judge, referred this Motion to the undersigned for a Report and Recommendation. [ECF No. 71].

Upon review of the Motion, Plaintiffs' Response, [ECF No. 61], Royal Caribbean's Reply, [ECF No. 63], Plaintiffs' Notices of Supplemental Authority, [ECF Nos. 65, 66, 69], Royal Caribbean's Responses to Plaintiffs' Notices of Supplemental Authority, [ECF Nos. 67, 68, 70], and argument of counsel at the October 27, 2025 hearing, the undersigned respectfully recommends that the Motion be **DENIED** for the reasons outlined below.[2]

## I.      BACKGROUND

This is a case involving video voyeurism committed by Defendant Arvin Mirasol ("Mirasol"), who was a stateroom attendant aboard Defendant Royal Caribbean's ship, *Symphony of the Seas*, for twelve cruises between December 2023 and February 2024. [ECF No. 95 ¶¶ 9, 11, 28–29]. Mirasol was the assigned stateroom attendant for Plaintiffs during their Royal Caribbean cruises on the *Symphony of the Seas*. *Id.* ¶ 13.  Over the course of those twelve cruises, without their knowledge or consent, Mirasol placed hidden cameras in Plaintiffs' cabin bathrooms and captured videos of Plaintiffs, including minor children, while undressed and engaging in private activities. *Id.* ¶¶ 15, 26. After retrieving the video recordings from the staterooms, Mirasol would "pleasure himself and masturbate" while viewing the videos. *Id.* ¶ 27. Mirasol also entered staterooms and hid under the bed to record guests with his cellular device while they were naked

---

brought its Motion. *See* [ECF No. 61] n.1 (citing [ECF No. 57] n.1). The eleven cases themselves have not been consolidated into one case. Therefore, the Court must analyze the facts and claims of the eleven complaints separately, and the Court will issue separate Reports and Recommendations for each case accordingly. This Report and Recommendation will address the facts alleged in the Sixth Amended Complaint of the above-captioned lead case.

[2]      Royal Caribbean asserts an argument that the Chilean and Canadian Plaintiffs' claims should be dismissed. [ECF No. 57 at 36]. Because the Chilean and Canadian Plaintiffs are not plaintiffs listed in the Sixth Amended Complaint for the above-captioned lead case, the Court will not address this argument in this Report and Recommendation.

in the shower. *Id.* On February 26, 2024, Mirasol's hidden camera was discovered in the cabin bathroom of one of the Plaintiffs.  *Id.* ¶ 24.

Plaintiffs later learned that Mirasol had placed hidden cameras in their respective cabin bathrooms and had taken video recordings. *Id.* ¶¶ 28(l); 40(b).  Plaintiffs claim that they suffered emotional distress with physical pain, mental anguish, loss of enjoyment of life, post-traumatic stress disorder, and other mental and/or nervous disorders when they learned of Mirasol's conduct. *Id.* ¶¶ 56, 64, 71, 81, 87, 96, 103, 108, 120, 125. Plaintiffs bring claims for Invasion of Privacy by Video Voyeurism and Sexual Assault against Mirasol (Count I), Vicarious Strict Liability for Invasion of Privacy by Video Voyeurism and Sexual Assault against Royal Caribbean (Count II), Intentional Infliction of Emotional Distress by Video Voyeurism and Sexual Assault against Mirasol (Count III), Vicarious Strict Liability for Intentional Infliction of Emotional Distress by Video Voyeurism and Sexual Assault against Royal Caribbean (Count IV), Negligent Infliction of Emotional Distress by Video Voyeurism and Sexual Assault against Mirasol and Royal Caribbean (Counts V and VI), Negligent Security against Royal Caribbean (Count VII), General Negligence against Royal Caribbean (Count VIII), Breach of Implied Covenant of Good Faith and Fair Dealing against Royal Caribbean (Count IX), and Negligent Hiring and Retention against Royal Caribbean (Count X). *See generally* [ECF No. 95].

Royal Caribbean moves to compel arbitration and stay litigation pursuant to the arbitration provision in Royal Caribbean's ticket contract ("Contract"). *See generally* [ECF No. 57]. The Contract requires arbitration of "claims for mental or emotional distress or injury not arising out of bodily injury." *Id.* at 17. The arbitration provision in the Contract also provides that "any dispute or claim between you and us must be arbitrated" and that the "agreement to arbitrate is intended to be broadly interpreted." *See id.* at 16. The arbitration provision "includes, but is not limited to,"

"claims arising out of or relating to this Agreement and/or the Cruise . . . or any other aspect of the relationship between you and us, whether based in contract, tort, fraud, misrepresentation, or any other statutory or common-law legal theory." *Id*. at 16–17.

Plaintiffs do not dispute the validity of the Contract, nor do they claim that Defendant has waived its right to arbitrate. Plaintiffs contend, however, that both the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act ("EFAA"), 9 U.S.C. §§ 401–02, and 46 U.S.C. § 30527 ("Maritime Statute") preclude the Court from enforcing the arbitration provision. *See* [ECF No. 61]. Royal Caribbean contends that Mirasol's video voyeurism and self-masturbation without any physical contact with Plaintiffs does not qualify as a "sexual assault dispute" or a "sexual harassment dispute" under the EFAA.  Royal Caribbean also contends that because Plaintiff's alleged mental and emotional distress injuries do not arise from physical or bodily injury, the Contract's arbitration provision is not void under the Maritime Statute.  *See* [ECF No. 57 at 29–30]; *see generally* [ECF No. 63].

## II.        LEGAL STANDARD

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1, *et seq.*, reflects a liberal "policy favoring arbitration." *Morgan v. Sundance, Inc.*, 596 U.S. 411, 417 (2022). "[A]ny doubts" concerning the arbitrability of a dispute "should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983); *see also Doe v. Princess Cruise Lines, Ltd*., 657 F.3d 1204, 1213 (11th Cir. 2011). "In determining whether to compel arbitration, the Court considers three factors: (1) whether a valid written agreement to arbitrate exists, (2) whether an arbitrable issue exists, and (3) whether the right to arbitrate was waived." *Hilton v. Fluent, LLC*, 297 F. Supp. 3d 1337, 1341 (S.D. Fla. 2018). "[T]he party resisting

arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Griggs v. Kenworth of Montgomery, Inc.,* 775 F. App'x 608, 612 (11th Cir. 2019).

The EFAA bars mandatory arbitration of cases that (1) "allege[] conduct constituting a sexual assault or sexual harassment dispute," (2) are "filed under Federal, Tribal, or State law," and (3) "relate[ ] to the sexual assault or sexual harassment dispute." *Doe (J.K.) v. Celebrity Cruises, Inc.*, 792 F. Supp. 3d 1371, 1380 (S.D. Fla. 2025) (citing 9 U.S.C. § 402(a)). The EFAA provides that its "applicability to an agreement to arbitrate and the validity and enforceability of an agreement to which this chapter applies shall be determined by a court, rather than an arbitrator." 9 U.S.C. § 402(b).  The threshold question of arbitrability under the EFAA is reserved for the Court. *See Yost v. Everyrealm*, 657 F. Supp. 3d 563 (S.D.N.Y. 2023) (citing 9 U.S.C. § 402(b)).

The Maritime Statute prohibits the owner of a vessel from "includ[ing] in a regulation or contract a provision limiting . . . the right of a claimant for personal injury or death to a trial by court of competent jurisdiction." 46 U.S.C. § 30527(a)(1)(B).

### III.   DISCUSSION

Royal Caribbean asserts that this Court must compel arbitration because Plaintiffs concede they signed the Contract, that it contains an arbitration provision, and that Royal Caribbean has not waived arbitration. [Reply at 1]. Plaintiffs, however, contend that their claims are not arbitrable because the Contract's arbitration provision is not enforceable under the EFAA and the Maritime Statute. [ECF No. 61 at 10–17]. Royal Caribbean, on the other hand, insists that Plaintiffs cannot rely on the EFAA or the Maritime Statute to avoid arbitration under the Contract. This Court must decide whether the EFAA and/or the Maritime Statute apply here and, if so, whether they bar mandatory arbitration of some or all of Plaintiffs' claims.

**A. The Applicability of the Ending Forced Arbitration Act**

Under the EFAA, in cases involving sexual assault and sexual harassment disputes, otherwise valid arbitration agreements are rendered unenforceable upon the plaintiff's election. 9 U.S.C. §§ 401–02.  In 2022, Congress amended the FAA by adopting the EFAA, which provides:

> Notwithstanding any other provision of this title, at the election of the person alleging conduct constituting a sexual harassment dispute or sexual assault dispute, …no predispute arbitration agreement … shall be valid or enforceable with respect to a case which is filed under Federal, Tribal, or State law and relates to the ***sexual assault dispute or sexual harassment dispute***.

9 U.S.C. § 402(a)(emphasis added); *see also Diaz-Roa v. Hermes Law, P.C.*, 757 F. Supp. 3d 498, 530 (S.D.N.Y. 2024) (explaining that the effect of the EFAA is to amend the FAA).

Plaintiffs frame their case as a "sexual assault dispute." *See* [ECF No. 61 at 13–14].  The EFAA defines the term "sexual assault dispute" as "a dispute involving a nonconsensual sexual act or sexual contact, as such terms are defined in section 2246 of title 18 or similar applicable Tribal or State law, including when the victim lacks capacity to consent."  9 U.S.C. § 401(3).  Thus, with respect to a sexual assault dispute, under the EFAA, "no predispute arbitration agreement . . . shall be valid or enforceable with respect to a case which is filed under Federal, Tribal or State law and relates to . . . a dispute involving a nonconsensual sexual act or sexual contact as defined in [18 U.S.C. § 2246] or similar applicable Tribal or State law." *Doe (J.K.)*, 792 F. Supp. 3d at 1378 (alteration in original) (citing 9 U.S.C. §§ 402(a); 401(3)).

**1.  Plaintiffs Have Sufficiently Alleged a Sexual Assault Dispute Under the EFAA**

To invoke the EFAA for a sexual assault dispute, Plaintiffs must allege conduct constituting a nonconsensual "sexual act" or "sexual contact" under 18 U.S.C. § 2246.  Plaintiffs do not allege that Mirasol engaged in conduct that falls under the definition of "sexual act" under § 2246(2)(D), which requires specific types of contact, touching, or penetration between the

6

genitalia of another, which is not applicable here.  This Court must determine if Plaintiffs have sufficiently alleged that Mirasol engaged in conduct constituting "sexual contact, under § 2246(3), which is defined as "the intentional touching, either directly or through the clothing, of the genitalia, anus, groin, breast, inner thigh, or buttocks of any person with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of *any* person." *See* § 2246(3) (emphasis added).

Royal Caribbean argues that Mirasol's conduct in masturbating while watching Plaintiffs on video falls short of "sexual contact" under § 2246(3) because Plaintiffs did not allege that Mirasol touched the private areas of Plaintiffs.  [ECF No. 57 at 33].  Under Royal Caribbean's interpretation of the EFAA, absent physical contact between Plaintiffs and Mirasol, the EFAA does not apply. *See id*. at 33–34.  Contrary to Royal Caribbean's position, multiple circuits, including the Eleventh Circuit, have held that masturbation—self pleasuring without contact with another person—qualifies as "sexual contact" under § 2246(3). *See U.S. v. Aldrich*, 566 F.3d 976, 979 (11th Cir. 2009) (holding that Congress's use of the phrase "any person" indicates that "sexual contact" under § 2246(3) includes masturbation); *U.S. v. Butler*, 65 F.4th 199, 203 (5th Cir. 2023) ("The plain meaning of 'sexual contact' includes masturbation because that act necessarily entails the 'intentional touching ... of the genitalia . . . of *any* person with an intent to . . . arouse or gratify the sexual desire of *any* person.'" (emphasis in original)); *U.S. v. Raiburn*, 20 F.4th 416, 422 (8th Cir. 2021) (holding that the plain meaning of "sexual contact" under 18 U.S.C. § 2246(3) includes the act of masturbating); *U.S. v. Pawlowski*, 682 F.3d 205, 212 (3d Cir. 2012) (finding that "sexual contact" includes masturbation because "the language of the statute is unambiguous: it is clear that 'of any person' includes a defendant himself and does not require the touching of the victim"); *U.S. v. Skinner*, 70 F.4th 219, 230 (4th Cir. 2023) (holding that the term "sexual contact" covers

7

masturbation because "'the intentional touching . . . of *any* person' is broad enough to cover a defendant's self-touching" (emphasis in original)); *U.S. v. Shafer*, 573 F.3d 267, 278 (6th Cir. 2009) ("[W]e hold that 'sexual contact,' as defined by § 2246(3), includes self-masturbation . . . .")

"The statute's operative phrase 'any person'" in ¶ 2246(3) "applies to all persons," regardless of whether the act is performed by the defendant or the victim. *Aldrich*, 566 F.3d at 979; *see also Butler*, 65 F.4th at 203. In *Aldrich*, the Eleventh Circuit ruled that the plain meaning of "sexual contact" under ¶ 2246(3) "includes the act of masturbating." 566 F.3d at 979. The Court concluded that the meaning of the phrase "any person" in the definition of sexual contact includes the touching of all people, including the defendant himself, who was sentenced under a two-level enhancement for masturbating in front of a minor female. *Id.* at 978–79. In interpreting the meaning of sexual contact" and concluding that the term "any person" did not require contact with "another person," the Court followed the canon of construction that requires statutes to be construed so that "no clause, sentence, or work shall be superfluous, void, or insignificant." *Id.* at 978 (citing *United States v. Ballinger*, 395 F.3d 1218, 1236 (11th Cir. 2005)). Applying this canon, the Court looked to the use of the term "another person" in § 2246(2)(D) and concluded that the plain meaning of sexual contact under 18 U.S.C. § 2246(3) includes the act of masturbating without contact with another person:

> We come to this conclusion based on our observation that § 2246(2)(D) defines a "sexual *act*" as the "intentional touching, not through the clothing, of the genitalia of *another person* who has not attained the age of 16 years with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of *any person.*" (emphases added). We believe that § 2246(2)(D) clearly indicates that Congress used the phrase "any person" when it meant to include the offender himself, as well as another individual, and the phrase "another person" when it meant to exclude the offender.

> *Aldrich*, 566 F.3d at 979 (emphasis in original).

8

Undeterred by the Eleventh Circuit's ruling in *Aldrich*, Royal Caribbean insists that Plaintiffs must have "participated in, been present for, or aware of" Mirasol's masturbation to trigger the EFAA because the sexual contact must be "nonconsensual." [Reply at 21–24]. Nothing in the definition of "sexual contact" under § 2246(3), or the cases construing its meaning, justifies reading in a requirement of victim presence or awareness when the sexual contact occurs. "Courts have no authority to alter statutory language . . . . We cannot add to the terms of [the] provision what Congress left out." *CBS Inc. v. PrimeTime 24 Joint Venture*, 245 F.3d 1217, 1228 (11th Cir. 2001) (alteration in original).

Royal Caribbean relies on the Eleventh Circuit's ruling in *United States v. Dawson*, 64 F.4th 1227 (11th Cir. 2023) in support of its position that masturbation is only "actionable" under the EFAA if it takes place in the victim's presence. [Reply at 22]. *Dawson* does not stand for this proposition. Neither the EFAA nor the definition of sexual contact under § 2246(3) were at issue in *Dawson*. The court in *Dawson* was concerned with 18 U.S.C. § 2251,[3] a different statutory provision governing the sexual exploitation of children. 64 F.4th at 1232. Specifically, the *Dawson* court addressed the question of whether an "adult who films himself exposing his genitals and masturbating in the presence of a child where the child is the object of sexual desire in the film 'uses' that child to engage in sexually explicit conduct for purposes of 18 U.S.C. § 2251(a)." *Id.* at 1230. In *Dawson*, the defendant admitted to taking videos of himself masturbating in the presence of his daughter and including her in videos that he used for his own pleasure and distributed online. *Id.* at 1231. The defendant's daughter did not see him masturbate and testified

---

[3]      18 U.S.C. § 2251(a) makes it illegal for "[a]ny person [to] employ[ ], use[ ], persuade[ ], induce[ ], entice[ ], or coerce[ ] any minor to engage in . . . any sexually explicit conduct for the purpose of producing any visual depiction of such conduct or for the purpose of transmitting a live visual depiction of such conduct . . . ." 18 U.S.C. § 2251(a).

that she never knew or understood what he was doing.  *Id.* The defendant argued that § 2251(a) did not apply because his daughter was not aware of his masturbation and was not involved in his sexual conduct. *Id.* at 1232.

Upon construing § 2251(a), the Eleventh Circuit ruled that while § 2251(a) requires that a minor must be involved in the offender's sexually explicit conduct, the minor did not necessarily need to actively engage in her own sexually explicit conduct.  *Dawson*, 64 F.4th at 1238. Notably, the court did not rule that presence was required, as Royal Caribbean suggests, but rather the court ruled that because the daughter was the "object of his sexual desire" the defendant used her "to engage in sexually explicit conduct for purposes of 18 U.S.C. § 2251(a)" even though she was merely present and did not herself engage in any sexual conduct.  *Id.* at 1236–39. Neither the *Dawson* court's holding nor its reasoning authorizes this Court to read a requirement into "sexual contact" that the victim must be aware or present during Defendant's self-masturbation to trigger the EFAA.

The court's ruling in *Aldrich* does, however, require this Court to conclude that Mirasol's self-masturbation without touching Plaintiffs constitutes sexual contact under § 2246(3).  Here, Plaintiffs allege that Mirasol's conduct was nonconsensual. [ECF No. 95 ¶¶ 15–16]. At the pleading stage, "a plaintiff need only plead nonfrivolous claims relating to sexual assault . . . with the sufficiency of those claims to be reserved for proper merits adjudication, be it a motion to dismiss, motion for judgment on the pleadings, motion for summary judgment, or trial." *Diaz-Roa*, 757 F. Supp. 3d at 533. Plaintiffs allege that Mirasol entered their staterooms, hid under their beds, recorded them undressed without their consent, and then used their video images for his own self-gratification and as the objects of his sexual desire—all without their consent. [ECF No. 95

¶¶ 15, 27]. This is enough to allege sexual contact under § 2246(3) and conduct constituting a sexual assault dispute under the EFAA.

## 2. Plaintiffs' Claims are Sufficient to Trigger the EFAA

The next requirement under the EFAA is that Plaintiffs' case must be "filed under Federal, Tribal or State law and relate[] to the sexual assault dispute or sexual harassment dispute." 9 U.S.C. § 402(a). Courts in this district have ruled that while plaintiffs proceeding under the sexual harassment prong of the EFAA may be required to plead a violation of a particular federal, state, or Tribal law "prohibiting sexual assault," the same is not true for plaintiffs proceeding under the "sexual assault dispute prong." *See, e.g.*, *Doe (J.K.)*, 792 F. Supp. 3d at 1380–82; *Bulic v. Celebrity Cruises, Inc.*, No. 25-21231-CIV, 2025 WL 1783865, at *3–4 (S.D. Fla. June 27, 2025). The court in *Bulic*, in discussing *Gonzalez*, one of the cases cited by Royal Caribbean, explained that the difference in the pleading requirement under the sexual harassment and sexual assault dispute prongs of the EFAA:

> [c]rucially, however, the reasoning in *Gonzalez* turned on language specific to the sexual harassment prong — language that does not appear in the statute's separate definition of a sexual assault dispute . . . . [In sexual assault dispute cases], [i]t is enough that the dispute "involv[es] a nonconsensual sexual act or sexual contact," as defined in 18 U.S.C. section 2246 or similar applicable Tribal or State law. 9 U.S.C. § 401(3) (alteration added). That definition, grounded in the nature of the conduct rather than the legal theory invoked, stands in contrast to the statute's sexual harassment prong, which has been read to limit coverage to disputes "relating to conduct that is alleged to constitute sexual harassment under applicable" law. *Id.* § 401(4); *see also id.* § 401(3). The sexual assault prong's cross-reference to 18 U.S.C. section 2246 — absent from the sexual harassment prong — reinforces that distinction, supplying a substantive definition of qualifying acts without regard to how they are pleaded or labeled. *See id.* §§ 401(3)–(4).

*Bulic*, 2025 WL 1783865, at *4 (discussing *Gonzalez*, 757 F. Supp. 3d at 1322).

"Congress wrote the EFAA to apply when a plaintiff alleges a sexual assault *dispute*, not as Defendant submits, when a plaintiff pleads a specific sexual assault *claim,* let alone a violation

of a law explicitly prohibiting sexual assault." *Doe (J.K.)*, 792 F. Supp. 3d at 1379 (emphasis in original) (citing 9 U.S.C. §§ 401–02). *See id.*

Since Plaintiffs are proceeding under the sexual assault dispute prong of the EFAA, they are not required to bring claims under a federal or state law that specifically prohibits sexual assault. Plaintiffs have alleged ten counts under state common law that relate to the sexual assault dispute at issue in this case. *See* [ECF No. 95]. Plaintiffs have therefore satisfied the requirement that the case must be filed under state law and relate to the sexual assault dispute to proceed under the EFAA.

### 3. The Ending Forced Arbitration Act Applies to Plaintiffs' Entire Case

The EFAA overrides the FAA's general policy in favor of arbitration and expressly provides that it applies to a "case" that "relates to the sexual assault . . . dispute." 9 U.S.C. § 402(a). "In this phrase, the 'case' is something separate and apart from the sexual assault dispute underlying it." *Doe (J.K.)*, 792 F. Supp. 3d at 1381 (citing *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 384 (1992)). Once the EFAA is triggered in a matter that relates to a sexual assault dispute, the Court cannot enforce arbitration, and the bar to arbitration applies to the entire case. *See id.* at 1383 ("[T]he Court finds that the text of the EFAA demands its application to any case where the facts alleged constitute a sexual assault dispute under the EFAA and the sexual assault dispute relates to the case . . . ."); *see also Johnson v. Everyrealm, Inc.*, 657 F. Supp. 3d 535, 558 (S.D.N.Y. 2023) (finding that once a case is filed under applicable law and relates to a sexual harassment dispute, an arbitration agreement becomes unenforceable "with respect to" that entire "case" relating to the dispute).

Plaintiffs allege conduct constituting a sexual assault dispute, that the case was filed under state law, and that the case relates to a sexual assault dispute.  As such, Plaintiffs' case falls squarely under the EFAA, and at the Plaintiffs' election, this Court cannot compel arbitration.

## B.  Applicability of the Maritime Statute

Plaintiffs also assert the Maritime Statute as an independent basis to preclude arbitration. The Contract's arbitration provision "is only enforceable if it does not run afoul of" the Maritime Statute, 46 U.S.C. § 30527, which prohibits cruise lines from requiring mandatory arbitration of passenger claims involving "personal injury" or "death" caused by the negligence or fault of the cruise line, its agents, or its employees. *Johnson v. Royal Caribbean Cruises, Ltd.*, 449 F. App'x 846, 848 (11th Cir. 2011). The Maritime Statute provides, in relevant part:

> (a) Prohibition. –
> (1) In general. The owner, master, manager, or agent of a vessel transporting passengers between ports in the United States, or between a port in the United States and a port in a foreign country, ***may not include in a regulation or contract a provision limiting***—
> (A) the liability of the owner, master, or agent for personal injury or death caused by the negligence or fault of the owner or the owner's employees or agents; or
> (B) ***the right of a claimant for personal injury or death to a trial by court of competent jurisdiction***.

46 U.S.C. § 30527(a)(1) (emphasis added).

The parties agree that § 30527(a)(1)(B) precludes cruise companies from including in their cruise contracts mandatory arbitration provisions requiring passengers to arbitrate "personal injury" claims. They disagree, however, on whether the term "personal injury" encompasses emotional distress, mental suffering, and psychological injury claims not arising from physical injury as Plaintiffs have alleged in their Sixth Amended Complaint. *See generally* [ECF Nos. 61, 63].

Royal Caribbean contends that the term "personal injury" in § 30527(a)(1)(B) must be interpreted narrowly to mean only "physical injury" or "bodily injury." *See* [ECF No. 57 at 17]. Royal Caribbean urges this Court to consider the Maritime Statute's revision and legislative history and conclude that "personal injury" means physical/bodily injury. [Reply at 9–15]. On the other hand, Plaintiffs also advance their own interpretation of the statute's revision and legislative history and urge this Court to conclude that the term "personal injury" includes both physical and non-physical injuries.  [ECF No. 61 at 19–28]. This Court, however, must not begin with legislative history; instead, it must focus first on the statute's plain language.  *See In re Royal Caribbean Cruises Ltd.*, 991 F. Supp. 2d 1171, 1176 (S.D. Fla. 2013) ("The district court erred by ignoring the statute's plain language and instead focusing on the statute's underlying policy rationales . . . Those policy rationales were nowhere in the statute . . . ." (citations omitted)). "[W]here the clear and unambiguous language of a statute provides a bridge to Congress' intent, we need not and will not wade into the brackish waters of legislative history." *CBS*, 245 F.3d at 1222. As explained in detail below, the plain meaning of the term "personal injury" as used in the Maritime Statute can be gleaned from the statute itself.

### 1.  "Personal Injury" Has a Plain and Unambiguous Meaning

The Maritime Statute does not define "personal injury."  In the absence of a statutory definition of a term, courts "look to the common usage of words for their meaning." *Id.* To determine the plain meaning of "personal injury" in the Maritime Statute, the Court must "follow the rules of statutory construction." *See Johnson*, 449 F. App'x at 848 (citing *United States v. Silva*, 443 F.3d 795, 797 (11th Cir. 2006)). In evaluating the Maritime Statute, the Eleventh Circuit has instructed:

> "The first rule in statutory construction is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute. If

the statute's meaning is plain and unambiguous, there is no need for further inquiry." *United States v. One 1990 Beechcraft,* 619 F.3d 1275, 1279 (11th Cir. 2010). Judges are to "ascertain—neither to add nor to subtract, neither to delete nor to distort" the words with which Congress has expressed its purpose. *62 Cases of Jam v. United States,* 340 U.S. 593, 596, 71 S.Ct. 515, 518, 95 L.Ed. 566 (1951).

*Id.*

To determine the common usage or ordinary meaning of a term, "courts often turn to dictionary definitions for guidance." *CBS*, 245 F.3d at 1223 (citations omitted). In Black's Law Dictionary, "personal injury," specifically defined under the broader term of "Injury," encompasses both non-physical and physical injury:

1. In a negligence action, any harm caused to a person, such as a broken bone, a cut, or a bruise; bodily injury.
2. Any invasion of a personal right, including mental suffering and false imprisonment. — Also termed *private injury.*

*Injury*, Black's Law Dictionary (8th ed. 2004)[4] (italics in original).[5]

The definition of "personal injury" includes the meanings advanced by both Royal Caribbean and Plaintiffs, but this alone does not create an ambiguity. "[M]ost words in English have multiple definitions. "Any ambiguity in the statutory language must result from the common usage of that language, not from the parties' dueling characterizations of what Congress 'really meant.'" *CBS*, 245 F.3d at 1225. "Multiple definitions do not make words inherently ambiguous

---

[4]    The primary approach for determining the ordinary meaning of a word "is by looking at dictionaries in existence around the time of enactment." *United States v. Chinchilla*, 987 F.3d 1303, 1308 (11th Cir. 2021) (quoting *EEOC v. Catastrophe Mgmt. Sols.*, 852 F.3d 1018, 1026 (11th Cir. 2016)).  Because Congress added the term "personal injury" to the Maritime Statute in 2006, the Court must look to dictionary definitions for "personal injury" as defined at that time.

[5]    Webster's Third New International Dictionary also demonstrates that the ordinary meaning and common usage of "personal injury" encompasses both mental and physical injury. *See Harleysville Ins. Co. v. Physical Distribution Servs., Inc.*, 716 F.3d 451, 458 (8th Cir. 2013) (defining "personal injury" as "an injury affecting one's physical and mental person as contrasted with one causing damage to one's property" and "an injury giving rise to a personal action at law" (citing *Webster's Third New International Dictionary* 97, 1686 (1993))).

15

as they are commonly used and understood." *See United States v. Fifty-Two Firearms*, 362 F. Supp. 2d 1308, 1315 (M.D. Fla. 2005). Because the ordinary and commonly understood meaning of "personal injury" includes more than just bodily injury, the Court cannot read "personal injury" with a singular meaning as "bodily injury," as Royal Caribbean asks this Court to do. Instead, the Court must presume that Congress meant for the Maritime Statute's use of "personal injury" to refer to the ordinary meaning of the term, which covers *both* bodily injuries and "any" invasion of a personal right. Black's Law Dictionary then provides two examples of "any" invasions of a personal right: mental suffering and false imprisonment. However, the use of the words "any" and "including" in the definition indicates that this list of examples is not exhaustive. "Any" invasion of a personal right not only includes mental suffering and false imprisonment, but it can also include other emotional injury claims that constitute an invasion of a personal right, such as claims for emotional distress or other psychological injuries. As such, the common usage and ordinary meaning of the term "personal injury" refers to bodily injury and any invasion of a personal right, including mental suffering and other emotional injury claims.

Based on the common use and ordinary meaning of "personal injury" as defined in Black's Law Dictionary, the Court finds that the term "personal injury" has a plain and unambiguous meaning. Specifically, the plain and unambiguous meaning of "personal injury" encompasses both bodily injury claims and emotional injury claims, such as claims for mental suffering, that flow from "[a]ny invasion of a personal right." *Injury*, Black's Law Dictionary (8th ed. 2004).

### 2. The Maritime Statute, Read as a Whole, Supports the Conclusion that "Personal Injury" Encompasses Emotional Injury Claims

The next step of the Court's analysis is to read the entirety of the pertinent statutory language. "When interpreting a statute, this Court must read the statute as a whole because statutory language depends on context . . . ." *Ala. Educ. Ass'n v. State Superintendent of Educ.*,

16

746 F.3d 1135, 1146 (11th Cir. 2014). "We do not look at one word or term in isolation." *Equal*

*Emp. Opportunity Comm'n v. STME, LLC*, 938 F.3d 1305, 1314 (11th Cir. 2019). Relevant to this

analysis, this Court must review § 30527(a) at issue here in conjunction with § 30527(b), which

immediately follows:

> (a) Prohibition. –
> (1) In general. The owner, master, manager, or agent of a vessel transporting passengers between ports in the United States, or between a port in the United States and a port in a foreign country, may not include in a regulation or contract a provision limiting—
> (A) the liability of the owner, master, or agent for ***personal injury*** or death caused by the negligence or fault of the owner or the owner's employees or agents; or
> (B) the right of a claimant for ***personal injury*** or death to a trial by court of competent jurisdiction.
>
> (b) Emotional distress, mental suffering, and psychological injury.--
> (1) In general.--Subsection (a) does not prohibit a provision in a contract or in ticket conditions of carriage with a passenger that relieves an owner, master, manager, agent, operator, or crewmember of a vessel from liability for infliction of emotional distress, mental suffering, or psychological injury so long as the provision does not limit such liability when the emotional distress, mental suffering, or psychological injury is--
> (A) the result of ***physical injury*** to the claimant caused by the negligence or fault of a crewmember or the owner, master, manager, agent, or operator;
> (B) the result of the claimant having been at actual risk of ***physical injury***, and the risk was caused by the negligence or fault of a crewmember or the owner, master, manager, agent, or operator; or
> (C) intentionally inflicted by a crewmember or the owner, master, manager, agent, or operator.
> (2) Sexual offenses.--This subsection does not limit the liability of a crewmember or the owner, master, manager, agent, or operator of a vessel in a case involving sexual harassment, sexual assault, or rape.
>
> 46 U.S.C. § 30527(a)–(b) (emphasis added).

When interpreting a statute, "when the legislature uses certain language in one part of the

statute and different language in another, the court assumes different meanings were intended."

*DePierre v. United States*, 564 U.S. 70, 83 (2011) (quoting *Sosa v. Alvarez,* 542 U.S. 692, 711 n.9

(2004)); *see also Pulsifer v. United States*, 601 U.S. 124, 149 (2024) (citing A. Scalia & B. Garner,

17

Reading Law 170–171 (2012)) (finding that, in a given statute, "the same term usually has the same meaning and different terms usually have different meanings"). Here, the Maritime Statute uses "personal injury" in § 30527(a) and "physical injury" in § 30527(b). Because "personal injury" is a different phrase than "physical injury" within the same statute, the Court must "assume[] different meanings were intended." *See DePierre*, 564 U.S. at 83. Importantly, the Court "must presume that Congress said what it meant and meant what it said." *CBS*, 245 F.3d at 1222 (citing *United States v. Steele,* 147 F.3d 1316, 1318 (11th Cir.1998) (en banc)). The use of the term "physical injury" in § 30527(b) undermines Royal Caribbean's position that "personal injury" used in § 30527(a) should be narrowly interpreted to mean "physical injury."  There is nothing in § 30527(a) or (b) that suggests that the term "personal injury" should be limited to a subset of injuries to a person: personal injuries involving physical or bodily injury.

When Congress wanted to address only a subset of personal injuries—those involving physical injuries—it expressly did so in § 30527(b).  "Congress knew how to say 'personal *bodily* injury' when it wanted to" and that in the relevant statute, "Congress chose to use an unrestricted version of personal injury" that should be "construed broadly." *In re Adams*, 478 B.R. 476, 486 (Bankr. N.D. Ga. 2012).  Thus, a reading of the statute as a whole requires this Court to conclude that Congress intended for "personal injury" and "physical injury" to have different meanings within § 30527. The term "personal injury" should be given its full, commonly understood meaning, as discussed above, to encompass both non-physical (emotional, psychological, and mental) injury and physical injury.

Based on the plain meaning of the term "personal injury" and the Court's reading of the statute as a whole, § 30527(a)(1)(B)'s prohibition against mandatory arbitration of personal injury applies to Plaintiffs' emotional distress claims in this matter.  The Court, however, agrees with

18

Royal Caribbean that Plaintiffs' "contract-based, implied covenant claims [] fall under their agreement to arbitrate and [are] outside the scope of the Maritime Statute's bar on arbitration." [Reply at 16]. The Maritime Statute does not bar the arbitration of claims sounding in contract. Thus, Plaintiffs' claim for Breach of Implied Covenant of Good Faith and Fair Dealing (Count IX) would not be barred from arbitration under the Maritime Statute, but as discussed above, would be barred from arbitration under the EFAA.

### IV.    RECOMMENDATION

For the reasons stated herein, the undersigned hereby **RECOMMENDS** Royal Caribbean's Omnibus Motion to Stay Litigation and Compel Arbitration be **DENIED.**

### V.    OBJECTIONS

Within **fourteen (14) days** after being served with a copy of this Report and Recommendation, any party may serve and file written objections to any of the above findings and recommendations as provided by the Local Rules for this district. 28 U.S.C. § 636(b)(1). Any response shall be filed within **seven (7) days** of the objections. The parties are hereby notified that a failure to timely object waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions contained in this Report and Recommendation. 11th Cir. R. 3-1 (2016); *see Thomas v. Arn*, 474 U.S. 140 (1985).

**DONE AND ORDERED** at Fort Lauderdale, Florida, this 22nd day of April 2026.

**DETRA SHAW-WILDER**
**UNITED STATES MAGISTRATE JUDGE**

cc:    The Honorable Darrin P. Gayles

19

All Counsel of Record