UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 24-CV-23953-DPG

JANE DOE (S.F.), on her own behalf and on behalf of all other similarly situated passengers who sailed aboard the *Symphony of the Seas* between December 1, 2023 and February 26, 2024, who used a cabin bathroom which was within the cabins assigned to Stateroom Attendant, Arvin Joseph Mirasol,

and

JANE DOE 1 (J.A.); JOHN DOE 1 (Q.A.); JOHN DOE 2 (D.A.); JANE DOE 2 (D.A.); JANE DOE 3 (D.B.); JANE DOE 4 (S.B.); JANE DOE 5 (M.B.); JANE DOE 6 (N.B.); JANE DOE 7 (D.B.); JANE DOE 8 (J.B.); JANE DOE 9 (L.E.); JUNIOR DOE 1 (S.F.), by and through parent and natural guardian JOHN DOE 3 (S.F.); JOHN DOE 3 (S.F.); JUNIOR DOE 2 (A.G.), by and through parent and natural guardian JANE DOE 10 (N.G.); JANE DOE 10 (N.G.); JOHN DOE 4 (R.G.); JUNIOR DOE 3 (R.G.), by and through parent and natural guardian JOHN DOE 4 (R.G.); JANE DOE 11 (V.L.); JUNIOR DOE 4 (C.N.), by and through parent and natural guardian JOHN DOE 5 (J.N.); JOHN DOE 5 (J.N.); JANE DOE 12 (M.N.); JUNIOR DOE 5 (S.N.), by and through parent and natural guardian JANE DOE 12 (M.N.); JOHN DOE 6 (G.P.); JANE DOE 13 (T.P.); JANE DOE 14 (L.R.); JOHN DOE 7 (M.R.); JUNIOR DOE 6 (S.R.), by and through parent and natural guardian JOHN DOE 8 (S.R.); JOHN DOE 8 (S.R.); JANE DOE 15 (L.R.); JOHN DOE 9 (T.R.); JANE DOE 16 (R.S.); JANE DOE 17 (K.D.); JUNIOR DOE 7 (T.D.), by and through parent and natural guardian JANE DOE 17 (K.D.); JOHN DOE 10 (E.S.); JANE DOE 18

(M.S.); JUNIOR DOE 8 (J.G.), by and through parent and natural guardian JOHN DOE 11 (C.G.); JANE DOE 20 (J.G.); JOHN DOE 12 (B.N.); JANE DOE 21 (S.C.); JUNIOR DOE 9 (A.N.), by and through parent and natural guardian JANE DOE 21 (S.C.); JUNIOR DOE 10 (A.N.), by and through parent and natural guardian JOHN DOE 12 (B.N.); JANE DOE 22 (T.D.); JOHN DOE 13 (N.D.); JUNIOR DOE 11 (E.D.) by and through parent and natural guardian JOHN DOE 13 (N.D.); JANE DOE 23 (M.V.); JOHN DOE 14 (R.V.); JUNIOR DOE 12 (C.V.) by and through parent and natural guardian JOHN DOE 14 (R.V.); JOHN DOE 15 (R.P.); JANE DOE 24 (H.P.); JOHN DOE 16 (R.P.); JANE DOE 25 (D.P.); JUNIOR DOE 13 (P.P.), by and through parent and natural guardian JOHN DOE 16 (R.P.); JOHN DOE 17 (M.G.); JANE DOE 26 (Y.G.); and JUNIOR DOE 14 (A.G.), by and through parent and natural guardian JANE DOE 26 (Y.G.); JANE DOE 27 (R.V.); JOHN DOE 18 (C.V.); JUNIOR DOE 15 (S.V.), by and through parent and natural guardian JOHN DOE 18 (C.V.); and JUNIOR DOE 16 (R.V.), by and through parent and natural guardian JOHN DOE 18 (C.V.),

et al.

      Plaintiffs,

v.

ROYAL CARIBBEAN CRUISES LTD., and ARVIN JOSEPH MIRASOL,

      Defendants.

**CLASS ACTION**

**CONSOLIDATED[1] CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**

The Plaintiffs[2] hereby sue Defendants and allege as follows:

**JURISDICTIONAL AND PRELIMINARY ALLEGATIONS**

1.      The Plaintiffs' are all *sui juris* or are minors proceeding through parents/natural guardians and/or guardians who are *sui juris*, indicated as follows. The Plaintiffs' citizenships and residences are as follows, and the sailing date, and cabin number for each Plaintiff (where available) when they sailed aboard the *Symphony of the Seas* (where available), are as follows:

   A. **Case No. 24-CV-23953-DLG:**

   a.      JANE DOE (S.F.) is a citizen and resident of the State of New Hampshire, with a sailing date of February 24, 2024 and cabin number 9711;

   b.      JANE DOE 1 (J.A.) is a citizen and resident of the State of Connecticut, with a sailing date of February 10, 2024 and cabin number 9688;

---

[1] The cases consolidated by the Report and Recommendation on Consolidation and Case Management dated May 20, 2026 (D.E. 120), include (in chronological order of filing): (1) Doe (S.F.), et al., v. Royal Caribbean Cruises, Ltd. et al., No. 24-CV-23953 (designated as lead case); (2) Doe v. Royal Caribbean Cruises, Ltd., et al., No. 24-cv-24039-DPG; (3) J.L.S. et al. v. Royal Caribbean Cruises Ltd. et al., No. 24-cv-24139-DPG; (4) K.T. et al. v. Royal Caribbean Cruises Ltd. et al., No. 24-cv-24193-DPG; (5) M.S. et al. v. Royal Caribbean Cruises Ltd. et al., No. 24-cv-24738- DPG; (6) D.M. et al. v. Royal Caribbean Cruises Ltd., et al., No. 24-cv-24988-DPG; (7) T.L. et al. v. Royal Caribbean Cruises Ltd. et al., No. 24-cv-25009-DPG; (8) C.B. et al. v. Royal Caribbean Cruises Ltd., et al., No. 24-cv-25089- DPG; (9) V.V. v. Royal Caribbean Cruises Ltd. et al., No. 25-cv-20051-DPG; (10) Doe v. Royal Caribbean Cruises, Ltd., No. 25-cv-20138-DPG; and (11) Doe et al. v. Royal Caribbean Cruises, Ltd., No. 25- cv-20485- DPG.

[2] The Plaintiffs are referred to by pseudonyms and their initials because of the nature of the allegations alleged herein.  The names of each Plaintiff have been provided directly to Defendant, ROYAL CARIBBEAN CRUISES LTD., and are available, upon request, to counsel and/or parties.

c.     JOHN DOE 1 (Q.A.) is a citizen and resident of the State of Maryland, with a sailing date of January 13, 2024 and cabin number 9703;

d.     JOHN DOE 2 (D.A.) is a citizen and resident of the State of Connecticut, with a sailing date of January 13, 2024 and cabin number 9708;

e.     JANE DOE 2 (D.A.) is a citizen and resident of the State of Connecticut, with a sailing date of January 13, 2024 and cabin number 9708;

f.     JANE DOE 3 (D.B.) is a citizen and resident of the State of Florida, with a sailing date of February 10, 2024 and cabin number 9690;

g.     JANE DOE 4 (S.B.) is a citizen and resident of the State of Connecticut, with a sailing date of February 10, 2024 and cabin number 9690;

h.     JANE DOE 5 (M.B.) is a citizen and resident of the State of Florida, with a sailing date of February 24, 2024 and cabin number 9686;

i.     JANE DOE 6 (N.B.) is a citizen and resident of the State of Florida, with a sailing date of February 24, 2024 and cabin number 9686;

j.     JANE DOE 7 (D.B.) is a citizen and resident of the State of Maryland, with a sailing date of January 13, 2024 and cabin number 9703;

k.     JANE DOE 8 (J.B.) is a citizen and resident of the State of Connecticut, with a sailing date of February 10, 2024 and cabin number 9692;

l.     JANE DOE 9 (L.E.) is a citizen and resident of the State of Connecticut, with a sailing date of February 10, 2024 and cabin number 9692;

m.     JUNIOR DOE 1 (S.F.) is a citizen and resident of the State of New Hampshire, and is a minor who is represented by and through the minor's parent and natural

guardian JOHN DOE 3 (S.F.), with a sailing date of February 24, 2024 and cabin number 9711;

n.   JOHN DOE 3 (S.F.) is a citizen and resident of the State of New Hampshire, with a sailing date of February 24, 2024 and cabin number 9701;

o.   JUNIOR DOE 2 (A.G.) is a citizen and resident of the State of Massachusetts and is a minor who is represented by and through the minor's parent and natural guardian JANE DOE 10 (N.G.), with a sailing date of February 18, 2024 and cabin number 9696;

p.   JANE DOE 10 (N.G.) is a citizen and resident of the State of Massachusetts, with a sailing date of February 18, 2024 and cabin number 9698;

q.   JOHN DOE 4 (R.G.) is a citizen and resident of the State of Massachusetts, with a sailing date of February 18, 2024 and cabin number 9698;

r.   JUNIOR DOE 3 (R.G.) is a citizen and resident of the State of Massachusetts and is a minor who is represented by and through the minor's parent and natural guardian JOHN DOE 4 (R.G.), with a sailing date of February 18, 2024 and cabin number 9696;

s.   JANE DOE 11 (V.L.) is a citizen and resident of the State of Florida, with a sailing date of February 24, 2024 and cabin number 9686;

t.   JUNIOR DOE 4 (C.N.) is a citizen and resident of the State of Massachusetts and is a minor who is represented by and through the minor's parent and natural guardian JOHN DOE 5 (J.N.), with a sailing date of February 18, 2024 and cabin number 9694;

u.  JOHN DOE 5 (J.N.) is a citizen and resident of the State of Massachusetts, with a sailing date of February 18, 2024 and cabin number 9692;

v.  JANE DOE 12 (M.N.) is a citizen and resident of the state of Massachusetts, with a sailing date of February 18, 2024 and cabin number 9692;

w.  JUNIOR DOE 5 (S.N.) is a citizen and resident of the State of Massachusetts and is a minor who is represented by and through the minor's parent and natural guardian JANE DOE 12 (M.N.), with a sailing date of February 18, 2024 and cabin number 9694;

x.  JOHN DOE 6 (G.P.) is a citizen and resident of the State of Florida, with a sailing date of February 4, 2024 and cabin number 9708;

y.  JANE DOE 13 (T.P.) is a citizen and resident of the State of Florida, with a sailing date of February 4, 2024 and cabin number 9708;

z.  JANE DOE 14 (L.R.) is a citizen and resident of the State of Maryland, with a sailing date of January 13, 2024 and cabin number 9694;

aa.  JOHN DOE 7 (M.R.) is a citizen and resident of the State of Maryland, with a sailing date of January 13, 2024 and cabin number 9699;

bb.  JUNIOR DOE 6 (S.R.) is a citizen and resident of the State of Maryland who is represented by and through the minor's parent and natural guardian JOHN DOE 8 (S.R.), with a sailing date of January 13, 2024 and cabin number 9694;

cc.  JOHN DOE 8 (S.R.) is a citizen and resident of the State of Maryland, with a sailing date of January 13, 2024 and cabin number 9699;

dd.  JANE DOE 15 (L.R.) is a citizen and resident of the State of Michigan, with a sailing date of January 7, 2024 and cabin number 9688;

ee.   JOHN DOE 9 (T.R.) is a citizen and resident of the State of Michigan, with a sailing date of January 7, 2024 and cabin number 9688;

ff.   JANE DOE 16 (R.S.) is a citizen and resident of the State of Connecticut, with a sailing date of February 10, 2024 and cabin number 9688;

gg.   JANE DOE 17 (K.D.) is a citizen and resident of the State of Indiana, with a sailing date of December 30, 2023 and cabin number 9696;

hh.   JUNIOR DOE 7 (T.D.) is a citizen and resident of the State of Indiana and is a minor who is represented by and through the minor's parent and natural guardian JANE DOE 17 (K.D.), with a sailing date of December 30, 2023 and cabin number 9694;

ii.   JOHN DOE 10 (E.S.) is a citizen and resident of the State of Indiana, with a sailing date of December 30, 2023 and cabin number 9696;

jj.   JANE DOE 18 (M.S.) is a citizen and resident of the State of Indiana, with a sailing date of December 30, 2023 and cabin number 9694;

kk.   JUNIOR DOE 8 (J.G.) is a citizen and resident of the State of Florida and is a minor who is represented by and through the minor's parent and natural guardian JOHN DOE 11 (C.G.), with a sailing date of December 10, 2023 and cabin number 9580;

ll.   JANE DOE 20 (J.G.) is a citizen and resident of the State of Florida, with a sailing date of December 10, 2023 and cabin number 9580;

mm.   JOHN DOE 12 (B.N.) is a citizen and resident of the State of Virginia, with a sailing date of December 24, 2023 and cabin number 9710;

nn.   JANE DOE 21 (S.C.) is a citizen and resident of the State of Virginia, with a sailing date of December 24, 2023 and cabin number 9710;

oo.     JUNIOR DOE 9 (A.N.) is a citizen and resident of the State of Virginia and is a minor who is represented by and through the minor's parent and natural guardian JANE DOE 21 (S.C.), with a sailing date of December 24, 2023 and cabin number 9710;

pp.     JUNIOR DOE 10 (A.N.) is a citizen and resident of the State of Virginia and is a minor who is represented by and through the minor's parent and natural guardian JOHN DOE 12 (B.N.), with a sailing date of December 24, 2023 and cabin number 9710; and

qq.     JANE DOE 22 (T.D.) is a citizen and resident of the State of Indiana, with a sailing date of January 13, 2024 and cabin number 9682;

rr.     JOHN DOE 13 (N.D.) is a citizen and resident of the State of Indiana, with a sailing date of January 13, 2024 and cabin number 9682;

ss.     JUNIOR DOE 11 (E.D.) is a citizen and resident of the State of Indiana and is a minor who is represented by and through the minor's parent and natural guardian JOHN DOE 13 (N.D.), with a sailing date of January 13, 2024 and cabin number 9682;

tt.     JANE DOE 23 (M.V.) is a citizen and resident of the State of Florida, with a sailing date of January 13, 2024 and cabin number 7330;

uu.     JOHN DOE 14 (R.V.) is a citizen and resident of the State of Florida, with a sailing date of January 13, 2024 and cabin number 7330;

vv.     JUNIOR DOE 12 (C.V.) is a citizen and resident of the State of Florida and is a minor who is represented by and through the minor's parent and natural guardian

JOHN DOE 14 (R.V.), with a sailing date of January 13, 2024 and cabin number 7330;

ww. JOHN DOE 15 (R.P.) is a citizen and resident of the State of Maryland, with a sailing date of January 27, 2024 and cabin numbers 9434 and 3196, but he also used cabin numbers 9705 & 9709, including the bathrooms, during the cruise;

xx. JANE DOE 24 (H.P.) is a citizen and resident of the State of Maryland, with a sailing date of January 27, 2024 and cabin numbers 9434 and 3196, but she also used cabin numbers 9705 & 9709, including the bathrooms, during the cruise;

yy. JOHN DOE 16 (R.P.) is a citizen and resident of the State of Maryland, with a sailing date of January 27, 2024 and cabin number 9705;

zz. JANE DOE 25 (D.P.) is a citizen and resident of the State of Maryland, with a sailing date of January 27, 2024 and cabin number 9705;

aaa. JUNIOR DOE 13 (P.P.) is a citizen and resident of the State of Maryland and is a minor who is represented by and through the minor's parent and natural guardian JOHN DOE 16 (R.P.), with a sailing date of January 27, 2024 and cabin number 9705;

bbb. JOHN DOE 17 (M.G.) is a citizen and resident of the State of Maryland, with a sailing date of January 27, 2024 and cabin number 9709;

ccc. JANE DOE 26 (Y.G.) is a citizen and resident of the State of Maryland, with a sailing date of January 27, 2024 and cabin number 9709; and

ddd. JUNIOR DOE 14 (A.G.) is a citizen and resident of the State of Maryland and is a minor who is represented by and through the minor's parent and natural guardian

JANE DOE 26 (Y.G.), with a sailing date of January 27, 2024 and cabin number 9709.

eee.    JANE DOE 27 (R.V.) is a citizen and resident of the State of Florida, with a sailing date of January 21, 2024 and cabin number 9709; JANE DOE 27 (R.V.) did not learn of her potential claim until she was notified by authorities between April 2024 and May 2024 because RCCL failed to notify her after learning that she may be a potential victim on February 26, 2024; JANE DOE 27 (R.V.) therefore claims that, pursuant to the discovery rule, she is not time-barred under RCCL's contractually-shortened, one-year statute of limitations;

fff.    JOHN DOE 18 (C.V.) is a citizen and resident of the State of Florida, with a sailing date of January 21, 2024 and cabin number 9709; JOHN DOE 18 (C.V.) did not learn of his potential claim until he was notified by authorities between April 2024 and May 2024 because RCCL failed to notify him after learning that he may be a potential victim on February 26, 2024; JOHN DOE 18 (C.V.) therefore claims that, pursuant to the discovery rule, he is not time-barred under RCCL's contractually-shortened, one-year statute of limitations;

ggg.    JUNIOR DOE 15 (S.V.) is a citizen and resident of the State of Florida and is a minor who is represented by and through the minor's parent and natural guardian JOHN DOE 18 (C.V.), with a sailing date of January 21, 2024 and cabin number 9709; and

hhh.    JUNIOR DOE 16 (R.V.) is a citizen and resident of the State of Florida and is a minor who is represented by and through the minor's parent and natural guardian

JOHN DOE 18 (C.V.), with a sailing date of January 21, 2024 and cabin number 9709.

B. **Case No. 24-CV-24039-DLG:**

    a.  JANE DOE-24039 (J.J.) is a citizen and resident of the State of Hawaii, with a sailing date of January 21, 2024.

C. **Case No. 24-CV-24139-DLG:**

    a.  B.L.S.-24139 is a citizen and resident of the state of Wisconsin and is a minor who is represented by and through the minor's parent and natural guardian J.L.S.-24139, with a sailing date of February 4, 2024; and

    b.  L.L.Z.-24139 is a citizen and resident of the state of Wisconsin and is a minor who is represented by and through the minor's parent and natural guardian J.D.Z.-24139, with a sailing date of February 4, 2024.

D. **Case. No. 24-CV-24193-DLG:**

    a.  K.T.-24193 is a citizen and resident of the state of Virginia, with a sailing date of January 12, 2024; and

    b.  J.T.-24193-1 is a citizen and resident of the state of Virginia and is a minor who is represented by and through the minor's parent and natural guardian K.T.-24193, with a sailing date of January 12, 2024; and

    c.  J.T.-24193-2 is a citizen and resident of the state of Virginia and is a minor who is represented by and through the minor's parent and natural guardian K.T.-24193, with a sailing date of January 12, 2024; and

    d.  J.H.-24193 is a citizen and resident of the state of New York, with a sailing date of February 18, 2024; and

- 11 -

e.  A.H.-24193-1 is a citizen and resident of the state of New York, with a sailing date of February 18, 2024; and

f.  A.H.-24193-2 is a citizen and resident of the state of New York and is a minor who is represented by and through the minor's parent and natural guardian J.H.-24193, with a sailing date of February 18, 2024; and

g.  E.B.-24193 is a citizen and resident of the state of New York and is a minor who is represented by and through the minor's parent and natural guardian J.H.-24193, with a sailing date of February 18, 2024.

E.  **Case No. 24-CV-24738-DLG:**

a.  M.S.-24738 is a citizen and resident of the state of Colorado, with a sailing date of February 10, 2024[3]; and

b.  T.S.-24738 is a citizen and resident of the state of Colorado, with a sailing date of February 10, 2024; and

c.  J.S. is a citizen and resident of the state of Colorado and is a minor who is represented by and through the minor's parents and natural guardians M.S.-24738 and T.S.-24738, with a sailing date of February 10, 2024; and

d.  W.S. is a citizen and resident of the state of Colorado and is a minor who is represented by and through the minor's parents and natural guardians M.S.-24738 and T.S.-24738, with a sailing date of February 10, 2024.

---

[3] Note that Plaintiff M.S.-24738 did/does not suffer from post-traumatic stress disorder and/or other mental and/or nervous disorders and/or aggravation of any previously existing conditions and/or psychological injury (as alleged for other Plaintiffs in ¶¶ 237, 264, 277, 289, 304, 315, 343, 369, 388, 407, and 424); however, she did/does suffer specifically and solely from: severe emotional distress, mental anguish, loss of enjoyment of life, and the physical manifestations of such emotional injuries.

F.     **Case No. 24-CV-24988-DLG:**

   a.   D.M.-24988 is a citizen and resident of the state of South Carolina, with a sailing date of December 30, 2023 and cabin numbers 9710 and 9712; and

   b.   S.M.-24988 is a citizen and resident of the state of South Carolina, with a sailing date of December 30, 2023 and cabin numbers 9710 and 9712; and

   c.   A.M.-24988-1 is a citizen and resident of the state of South Carolina and is a minor who is represented by and through the minor's parent and natural guardian D.M.-24988, with a sailing date of December 30, 2023 and cabin numbers 9710 and 9712; and

   d.   A.M.-24988-2 is a citizen and resident of the state of South Carolina and is a minor who is represented by and through the minor's parent and natural guardian D.M.-24988, with a sailing date of December 30, 2023 and cabin numbers 9710 and 9712; and

   e.   M.M.-24988 is a citizen and resident of the state of South Carolina and is a minor who is represented by and through the minor's parent and natural guardian D.M.-24988, with a sailing date of December 30, 2023 and cabin numbers 9710 and 9712; and

   f.   M.L.-24988 is a citizen and resident of the state of Washington State and is a minor who is represented by and through the minor's parent and natural guardian Y.L.-24988, who is *sui juris*, with a sailing date of December 30, 2023 and cabin numbers 9710 and 9712.

G.     **Case No. 24-CV-25009-DLG:**

- 13 -

a.     T.L.-25009 is a citizen and resident of the state of Florida, with a sailing date of January 21, 2024 and cabin number 9680; and

b.     L.L.-25009 is a citizen and resident of the state of Florida, with a sailing date of January 21, 2024 and cabin number 9680.

H.     **Case No. 24-CV-25089-DLG:**

a.     JANE DOE-25089-1 (C.B.) is a citizen and resident of the State of Arkansas, with a sailing date of January 13, 2024, and cabin number 9702;

b.     JOHN DOE-25089-1 (T.B.) is a citizen and resident of the State of Arkansas, with a sailing date of January 13, 2024, and cabin number 9702;

c.     JANE DOE-25089-2 (P.F.) is a citizen and resident of the State of Texas, with a sailing date of December 24, 2023, and cabin number 9698;

d.     JANE DOE-25089-3 (W.R.) is a citizen and resident of the State of Texas, with a sailing date of December 24, 2023, and cabin number 9698;

e.     JOHN DOE-25089-2 (M.L.) is a citizen and resident of the State of Arkansas, with a sailing date of January 13, 2024 and cabin number 9700;

f.     JANE DOE-25089-4 (T.P.) is a citizen and resident of the State of Arkansas, with a sailing date of January 13, 2024 and cabin number 9700;

g.     JOHN DOE-25089-3 (D.T.) is a citizen and resident of the State of Arkansas, with a sailing date of January 13, 2024 and cabin number 9704;

h.     JANE DOE-25089-5 (J.T.) is a citizen and resident of the State of Arkansas, with a sailing date of January 13, 2024 and cabin number 9704;

i.     JOHN DOE-25089-4 (M.M.) is a citizen and resident of the State of Missouri, with a sailing date of January 13, 2024 and cabin number 9706;

- 14 -

j.   JANE DOE-25089-6 (V.M.) is a citizen and resident of the State of Missouri, with a sailing date of January 13, 2024 and cabin number 9706;

k.   JUNIOR DOE-25089-1 (K.P.) is a citizen and resident of the State of Georgia and is a minor who is represented by and through the minor's parent and natural guardian JANE DOE-25089-7 (S.P.), with a sailing date of January 21, 2024 and cabin number 178 (on deck 3);

l.   JANE DOE-25089-7 (S.P.) is a citizen and resident of the State of Georgia, with a sailing date of January 21, 2024 and cabin number 178 (on deck 3).

m.   JANE DOE-25089-8 (A.G.) is a citizen and resident of the State of New York, with a sailing date of February 18, 2024 and cabin number 9703;

n.   JOHN DOE-25089-5 (D.G.) is a citizen and resident of the State of New York, with a sailing date of February 18, 2024 and cabin number 9703;

o.   JOHN DOE-25089-6 (Z.G.) is a citizen and resident of the State of New York, with a sailing date of February 18, 2024 and cabin number 9703;

p.   JOHN DOE-25089-7 (G.P.) is a citizen and resident of the Nation of Canada, with a sailing date of January 7, 2024 and cabin number 11162 (11th floor) [4]

q.   JANE DOE-25089-9 (L.P.) is a citizen and resident of the Nation of Canada, with a sailing date of January 7, 2024 and cabin number 11162 (11th floor)[4];

---

[4] The Plaintiffs JOHN DOE-25089-7 (G.P.), JANE DOE-25089-9 (L.P.), JUNIOR DOE-25089-2 (E.P.), JUNIOR DOE-25089-3 (P.P.), are citizens and residents of Canada. Although their claims were consolidated by the Magistrate Judge's Report & Recommendation (D.E. 120), because their claims are expected to be met with a Motion to Dismiss their claims from being litigated in the United States District Court for the Southern District of Florida pursuant to an asserted forum selection clause purportedly contained in their passenger ticket contract directed to passengers whom are citizens of countries outside of the United States, the Court may consider severing their claims (contained in Case No. 25-CV-20051-DLG) from the other consolidated claims.

r.    JUNIOR DOE-25089-2 (E.P.) is a citizen and resident of the Nation of Canada and is a minor who is represented by and through the minor's parents and natural guardians JOHN DOE-25089-7 (G.P.) and JANE DOE-25089-9 (L.P.), with a sailing date of January 7, 2024 and cabin number 11162 (11th floor)[4];

s.    JUNIOR DOE-25089-3 (P.P.) is a citizen and resident of the Nation of Canada and is a minor who is represented by and through the minor's parents and natural guardians JOHN DOE-25089-7 (G.P.) and JANE DOE-25089-9 (L.P.), with a sailing date of January 7, 2024 and cabin number 11162 (11th floor)[4];

t.    JANE DOE-25089-10 (J.G.) is a citizen and resident of the State of New York, with a sailing date of February 18, 2024 and cabin number 9707;

u.    JOHN DOE-25089-8 (R.G. III) is a citizen and resident of the State of New York, with a sailing date of February 18, 2024 and cabin number 9719;

v.    JOHN DOE-25089-9 (R.G.) is a citizen and resident of the State of New York, with a sailing date of February 18, 2024 and cabin number 9707;

w.    JOHN DOE-25089-10 (T.S.) is a citizen and resident of the State of New York, with a sailing date of February 18, 2024 and cabin number 9686;

x.    JANE DOE-25089-11 (M.S.) is a citizen and resident of the State of New York, with a sailing date of February 18, 2024 and cabin number 9686;

y.    JUNIOR DOE-25089-4 (E.S.) is a citizen and resident of the State of New York and is a minor who is represented by and through the minor's parents and natural guardians JOHN DOE-25089-10 (T.S.) and JANE DOE-25089-11 (M.S.), with a sailing date of February 18, 2024 and cabin number 9686;

- 16 -

z.    JOHN DOE-25089-11 (B.S.) is a citizen and resident of the State of New York, with a sailing date of February 18, 2024 and cabin number 9686;

aa.   JANE DOE-25089-12 (C.M.), is a citizen and resident of the State of Massachusetts, with a sailing date of January 27, 2024 and cabin number 697 (Deck 9);

bb.   JOHN DOE-25089-12 (M.R.), is a citizen and resident of the State of Massachusetts, with a sailing date of January 27, 2024 and cabin number 697 (Deck 9);

cc.   JUNIOR DOE-25089-5 (VA.M.) is a citizen and resident of the State of Massachusetts and is a minor who is represented by and through the minor's parents and natural guardians

dd.   JOHN DOE-25089-12 (M.R.) and JANE DOE-25089-12 (M.S.), with a sailing date of January 27, 2024 and cabin number 697 (Deck 9);

ee.   JUNIOR DOE-25089-6 (V.M.) is a citizen and resident of the State of Massachusetts and is a minor who is represented by and through the minor's parents and natural guardians JOHN DOE-25089-12 (M.R.) and JANE DOE-25089-12 (M.S.), with a sailing date of January 27, 2024 and cabin number 697 (Deck 9);

ff.   JANE DOE-25089-13 (B.W.) is a citizen and resident of the State of Indiana, with a sailing date of January 27, 2024 and cabin number 10-444;

gg.   JOHN DOE-25089-13 (K.W.) is a citizen and resident of the State of Indiana, with a sailing date of January 27, 2024 and cabin number 10-444;

hh.     JUNIOR DOE-25089-7 (J.W.) is a citizen and resident of the State of Indiana and is a minor who is represented by and through the minor's parents and natural guardians JOHN DOE-25089-13 (K.W.) and JANE DOE-25089-13 (B.W.), with a sailing date of January 27, 2024 and cabin number 10-444;

ii.     JUNIOR DOE-25089-8 (D.W.) is a citizen and resident of the State of Indiana and is a minor who is represented by and through the minor's parents and natural guardians JOHN DOE-25089-13 (K.W.) and JANE DOE-25089-13 (B.W.), with a sailing date of January 27, 2024 and cabin number 10-444;

jj.     JANE DOE-25089-14 (K.G.) is a is a citizen and resident of the State of New York, with a sailing date of February 14, 2024 and cabin number 9682;

kk.     JOHN DOE-25089-14 (K.G.) is a is a citizen and resident of the State of New York, with a sailing date of February 14, 2024 and cabin number 9682;

ll.     JOHN DOE-25089-15 (D.G.) is a is a citizen and resident of the State of New York, with a sailing date of February 14, 2024 and cabin number 9682;

mm.    JUNIOR DOE-25089-9 (J.G.) is a is a citizen and resident of the State of New York and is a minor who is represented by and through the minor's parents and natural guardians JOHN DOE 14 (K.G.) and JANE DOE 14 (K.G.), with a sailing date of February 14, 2024 and cabin number 9682.

I.      **Case No. 25-CV-20051-DLG[5]:**

---

[5] The claims for V.V.-20051 and C.C.-20051 occurred outside of the period of time when Mirasol was employed as a crewmember stateroom attendant by Royal Caribbean Cruises. Their claims arise from finding a hidden camera in their passenger cabin bathroom, which may have been left by Mirasol during the relevant period of time (December 1, 2023 through February 24, 2024) or placed by another crewmember employed by Royal Caribbean Cruises, Ltd. Although their claims were consolidated by the Magistrate Judge's Report & Recommendation (D.E. 120), because their claims arise outside of the period of employment of Mirasol by Royal Caribbean Cruises, Ltd.,

    a.       V.V.-20051 is a citizen and resident of Chile, with a sailing date of October 2, 2024; and

    b.       C.C.-20051 is a citizen and resident of Chile and is a minor who is represented by and through the minor's parent and natural guardian V.V.-20051, with a sailing date of October 2, 2024.

**J.**      **Case No. 25-CV-20138-DLG:**

    a.       JANE DOE-20138 is a is a citizen and resident of the State of Virginia, with a sailing date of January 13, 2024 and cabin number 9709; and

    b.       L.R.-20138 is a citizen and resident of the State of Virginia and is a minor who is represented by and through the minor's parent and natural guardian JANE DOE-20138, with a sailing date of January 13, 2024 and cabin number 9709.

**K.**      **Case No. 25-CV-20485-DLG:**

    a.       JANE DOE-20485 is a citizen and resident of the State of Iowa, with a sailing date of February 4, 2024 and cabin number 9701; and

    b.       JOHN DOE-20485 is a citizen and resident of the State of Iowa, with a sailing date of February 4, 2024 and cabin number 9701; and

    c.       R.M.-20485 is a citizen and resident of the State of Iowa and is a minor who is represented by and through the minor's parents and natural guardians JANE

---

and the fact that they are residents and citizens of Chile, which is expected to be met with a Motion to Dismiss their claims from being litigated in the United States District Court for the Southern District of Florida pursuant to an asserted forum selection clause purportedly contained in their passenger ticket contract directed to passengers whom are citizens of countries outside of the United States, the Court may consider severing their claims (contained in Case No. 25-CV-20051-DLG) from the other consolidated claims.

DOE-20485 and JOHN DOE-20485, with a sailing date of February 4, 2024 and cabin number 9701.

2.     Defendant, ROYAL CARIBBEAN CRUISES LTD. ("RCCL"), is a foreign entity incorporated in Liberia with its principal place of business in Florida.

3.     Defendant, ARVIN JOSEPH MIRASOL ("MIRASOL"), is a citizen of the Republic of the Philippines.  MIRASOL was recently convicted by the United States for acts related to this matter and was sentenced to 30 years in prison.[6]

4.     The matter in controversy exceeds, exclusive of interest and costs, the sum specified by 28 U.S.C. § 1332.  In the alternative, if diversity jurisdiction does not apply, then this matter falls under the admiralty and maritime jurisdiction of this Court.

5.     At all times material hereto, RCCL personally or through an agent:

    a.     Operated, conducted, engaged in or carried on a business venture in this state and/or county or had an office or agency in this state and/or county;

    b.     Was engaged in substantial activity within this state;

    c.     Operated vessels in the waters of this state;

    d.     Committed one or more of the acts stated in Florida Statute §§ 48.081, 48.181 and/or 48.193;

    e.     The acts of RCCL set out in this Complaint occurred in whole or in part in this county and/or state.

    f.     RCCL was engaged in the business of providing to the public and to the Plaintiffs in particular, for compensation, vacation cruises aboard their vessels.

---

[6] *See United States v. Mirasol*, Case No. 24-cr-60046-MD (S.D. Fla. August 28, 2024) [ECF No. 35]; *see also*, https://www.justice.gov/usao-sdfl/pr/cruise-ship-employee-sentenced-30-years-prison-placing-hidden-cameras-inside-passenger.

6.      At all times material hereto:

      a.      MIRASOL was a crewmember aboard the cruise ship *Symphony of the Seas*;

      b.      The *Symphony of the Seas* embarked and disembarked cruise passengers in Florida for cruise vacations which began and ended in Florida;

      c.      On the subject voyages, over half of the revenue passengers originally embarked and planned to finally disembark in the State of Florida, without regard to intermediate stopovers, as contemplated by Florida Statute § 910.006;

      d.      MIRASOL committed crimes during the subject cruise aboard the *Symphony of the Seas*, which are prohibited by the criminal laws of the United States and the laws of Florida.   Specifically, MIRASOL violated 18 U.S.C. §1801 and Florida Statute §810.145, against the Plaintiffs who are nationals of the United States, and other passengers who are nationals of the United States.

7.   Defendants are subject to the jurisdiction of the Courts of this state.

8.   The causes of action asserted in this Complaint arise under the General Maritime Law of the United States.

## GENERAL ALLEGATIONS COMMON TO ALL COUNTS

9.   At all times material hereto, RCCL owned, operated, managed, maintained and/or controlled the vessel, the *Symphony of the Seas* (the "vessel").

10. At all times material hereto, RCCL employed and controlled MIRASOL as a crewmember assigned as a stateroom attendant aboard the vessel.

11. At all times material hereto, MIRASOL was a member of the crew working as a stateroom attendant aboard the vessel and was acting in the course and scope of his employment.

- 21 -

12. On or about the dates of the voyages alleged specifically in Paragraph 1, each of the Plaintiffs were paying passengers aboard the vessel, which was in navigable waters.

13. At all times material hereto, MIRASOL was assigned by RCCL to serve as stateroom attendant for the Plaintiffs' cabins.  MIRASOL had access to Plaintiffs' cabins solely by means provided to him by RCCL through providing MIRASOL a key card pass to Plaintiffs' cabins to be used in the course and scope of MIRASOL'S duties as a stateroom attendant.  As such, when MIRASOL accessed passenger cabins, including Plaintiffs' passenger cabins, it was in the course and scope of his duties as a stateroom attendant employed and subject to control by RCCL.

14. At all times material hereto, Plaintiffs had an expectation of privacy in their passenger cabins and passenger cabin bathrooms.

## Subject Incidents

15. During the subject cruises, upon information and belief, MIRASOL taped a video camera containing a memory card in the Plaintiffs' passenger cabin bathrooms and captured images of the Plaintiffs while undressed and engaging in private activities, without Plaintiffs' prior knowledge or consent.

16. Upon information and belief, MIRASOL transmitted and/or uploaded images of the Plaintiffs while undressed and engaging in private activities, to third parties and/or to the world wide web, including, but not limited to, the dark web, without Plaintiffs' prior knowledge or consent.

   a. Plaintiffs have consulted with an expert witness in law enforcement who has extensive experience investigating video voyeurism and child pornography cases.  The consulting law enforcement expert witness opines that based on the statements made by Mirasol

which are part of the Federal criminal record[7] and are self-authenticating pursuant to the Federal Rules of Evidence, Rule 902, and the expert witness' education and experience, that it is more likely than not, within a reasonable degree of scientific probability within the  discipline of law enforcement investigation, that Arvin Mirasol disseminated and/or posted to the internet illicit images and videos that he obtained during his video voyeurism and child pornography activities aboard the Symphony of the Seas between December 2023 and February 26, 2024.

b. Plaintiffs have consulted with an expert witness in psychology who has extensive experience treating registered sex offenders who engaged in video voyeurism and child pornography.  The consulting psychology expert witness opines that based on the statements made by Mirasol which are part of the Federal criminal record[8] and are self-authenticating pursuant to the Federal Rules of Evidence, Rule 902, and the expert witness' education and experience, that it is more likely than not, within a reasonable degree of scientific probability within the  discipline of psychology, that Arvin Mirasol disseminated and/or posted to the internet illicit images and videos that he obtained during his video voyeurism and child pornography activities aboard the Symphony of the Seas between December 2023 and February 26, 2024.

17. Further, on June 5, 2024, MIRASOL admitted that in connection with his intentionally hiding cameras in private passenger cabin bathrooms and under beds, and videoing passengers in their private cabin bathrooms aboard the vessel between December 2023 and February 26, 2024, that he, <u>in fact</u>, coerced and enticed minors to engage in sexually explicit conduct for the purpose

---

[7] *See United States v. Mirasol*, Case No. 24-cr-60046-MD (S.D. Fla. June 5, 2024) [ECF No. 23].
[8] Id.

of producing visual depictions of that conduct, <u>knowing or having reason to know that such depictions would be transmitted into interstate or foreign commerce</u>.[9]

18. As a result of MIRASOL'S actions, Plaintiffs reasonably believe that images of Plaintiffs undressed while engaging in private activities have been distributed in a manner to allow them to be able to be immediately reproduced and posted to the world wide web, including the dark web. As a result of MIRASOL'S acts and Plaintiffs' reasonable beliefs as a result of MIRASOL'S acts, Plaintiffs suffer from severe emotional distress, which manifests physically, causing the Plaintiffs physical sickness, sweating, nausea, insomnia, dizziness, crying, and physical pain, thereby causing physical impact to the Plaintiffs. The Plaintiffs reasonably believe that these images may never be completely discovered by the Plaintiffs, not for lack of searching, but as a consequence of the vastness of the world wide web; it would be the digital equivalent of searching for specific shards of glass in the ocean. And, if Plaintiffs found the images, Plaintiffs could neither permanently extract them from the world wide web, nor could Plaintiffs be sure that Plaintiffs found all of the images. Accordingly, Plaintiffs live in constant fear, reasonably under the circumstances, that images of the Plaintiffs undressed while engaging in private activities are regularly viewed by others and used for illicit purposes.

**RCCL's Notice of Sexual Assaults and Video Voyeurism Activities on its Cruise Ships**

19. At all times material hereto, RCCL knew or should have known sexual assaults were reasonably foreseeable considering the prevalence of sexual assaults aboard RCCL's cruise ships. Pursuant to the Secretary of Transportation's statistical compilation of shipboard incidents, there were a total of 26 sexual assaults and rapes reported during RCCL cruises in 2023; and 22 sexual

---

[9] See Transcript of Change of Plea Before The Honorable Melissa Damian, United States Judge, June 5, 2024. *United States v. Mirasol*, Case No. 24-cr-60046-MD (S.D. Fla. June 5, 2024) [ECF No. 43], p. 15, ll. 15-17; p. 17, l. 16 – p. 18, l. 16; p. 19, l. 8 – p. 20, l. 21.

assaults reported during RCCL cruises in 2022.  These shipboard incidents are (required to be) reported by RCCL directly to the Secretary of Transportation and/or the Federal Bureau of Investigation (pursuant to the Cruise Vessel Security and Safety Act of 2010).[10]

20. Additionally, the Eleventh Circuit Court of Appeal previously referenced the required reporting of RCCL's sexual assaults to the Secretary of Transportation and/or the Federal Bureau of Investigation and acknowledged "that Royal Caribbean was on notice a decade before [plaintiff's] cruise that sexual assaults on cruise ships were a serious problem." *K.T. v. Royal Caribbean Cruises, Ltd.*, 931 F.3d 1041, 1049 (11th Cir. 2019) (citing *Doe v. Princess Cruise Lines, Ltd.*, 657 F.3d 1204 (11th Cir. 2011)).

21. The overall data concerning sexual assaults aboard cruise ships reported to the Secretary of Transportation and/or the Federal Bureau of Investigation show that sexual assault allegations on cruise ships rose in 2023, with 131 sex crimes reported to the Federal Bureau of Investigation in 2023 on ships embarking and disembarking in the United States, up from 87 in 2022 and 101 in 2019, before the COVID-19 pandemic shut the cruise industry down until mid-2021.[11]

22. Furthermore, from April 30, 2023 through May 1, 2023, a hidden Wi-Fi camera was surreptitiously installed in a public bathroom on the top deck of RCCL's cruise ship, *Harmony of the Seas*, during a cruise which left Miami on April 29, 2023.  That hidden camera recorded more than 150 people using the Royal Caribbean bathroom, including at least 40 minor children, in

---

[10] See https://www.transportation.gov/mission/safety/cruise-line-incident-reports
[11] See, Sexual assaults rose on cruise ships last year, according to federal data, USA Today, Jan. 31, 2024, Nathan Diller.

various stages of undress, until the hidden camera was discovered by a passenger on May 1, 2023 at 7:00PM and reported to the ship's security aboard the *Harmony of the Seas*.[12]

23. Accordingly, at all times material hereto, RCCL was aware of prior instances of sexual assaults, including video voyeurism occurring aboard RCCL cruise ships in the immediate year prior to the subject incidents.  Yet RCCL failed to take adequate steps and/or provide adequate security and/or training and/or supervision to prevent such sexual assaults, including video voyeurism, to occur aboard its cruise ships.  Furthermore, RCCL failed to warn its passengers of sexual assaults, including video voyeurism, occurring aboard its cruise ships.  RCCL's motive for failing to warn its passengers is financial in nature; that is, RCCL willfully chooses not to warn its passengers about sexual assaults, including video voyeurism, aboard its cruise ships so as not to scare any prospective passengers away. And RCCL willfully chooses not to fortify its onboard security detail so as to thwart sexual assaults, including video voyeurism, aboard its cruise ships, because to do so would require RCCL to increase security spending and to divert berths reserved for passengers to accommodate additional security aboard its ships, thereby reducing revenue and profits.  Such willful and outrageous conduct on the part of the Defendant exposes Defendant to punitive damages. *See Lobegeiger v. Celebrity Cruises, Inc.*, 11-21620, 2011 WL 3703329, 2011 U.S. Dist. LEXIS 93933 (S.D. Fla Aug. 23, 2011).

### Admissions by MIRASOL following arrest and Miranda warnings

24. Mirasol's hidden camera was discovered in the cabin bathroom of the Plaintiffs JANE DOE 5 (M.B.), JANE DOE 6 (N.B.) and JANE DOE 11 (V.L.), cabin number 9686 on February 26, 2024.

---

[12] See, <u>Man Arrested for Placing Hidden Camera in Royal Caribbean Cruise Ship's Public Bathroom: FBI</u>, NBC Miami, May 10, 2023, Brian Hamacher and Niko Clemmons.  See also, USA v. Froias, Case No. 23-cr-00190-FAB, U.S. District Court for Puerto Rico; Document 2-1.

25. On March 3, 2024, the vessel arrived into Port Everglades and Homeland Security Agents and Customs and Border Patrol Officers boarded the vessel and took custody of MIRASOL'S electronic devices including: an Android cellular device (IMEI 015734006047846), one Sandisk Micro SD Card, one Transcend 8 GB, one camera, one Sandisk USB Stick and one Apple watch (SN number G99T34E2KDH2).[13]

26. During examination of MIRASOL'S USB Stick device, law enforcement discovered numerous videos of naked females undressing the bathroom as well as videos of child pornography.[14]

27. During a post Miranda interview, MIRASOL admitted to taping a video camera in the guests' bathrooms that he worked as a stateroom attendant. MIRASOL explained that he would place his camera in the bathroom, and he would "pleasure himself and masturbate" after retrieving the camera and viewing the videos. MIRASOL revealed that he has been placing these cameras in the bathrooms since he started working on *Symphony of the Seas* around December 2023. MIRASOL stated, "I want to control it, but I can't". Law enforcement questioned MIRASOL on how he decides what room he puts the camera in. MIRASOL stated, "If I like who is in that room, I place it". MIRASOL further stated he would choice [sp] females approximately (16) sixteen and over in age. MIRASOL acknowledges knowing that videoing underage girls was illegal. MIRASOL also stated that while the guests were taking a shower, he would enter the rooms and hide under the bed while recording them naked with his cellular device.[15]

**Allegations Regarding the Class of Passengers Assigned to
Mirasol's Cabins between December 1, 2023 and February 26, 2024**

---

[13] *See United States v. Mirasol*, Case No. 24-cr-60046-MD (S.D. Fla. June 5, 2024) [ECF No. 23].
[14] Id.
[15] Id.

28. From December 1, 2023 through February 26, 2024, RCCL operated cruises embarking on the following dates aboard the *Symphony of the Seas*:

    a.   December 2, 2023;

    b.   December 10, 2023;

    c.   December 16, 2023;

    d.   December 24, 2023;

    e.   December 30, 2023;

    f.   January 7, 2024;

    g.   January 13, 2024;

    h.   January 21, 2024;

    i.   January 27, 2024;

    j.   February 4, 2024;

    k.   February 10, 2024; and

    l.   February 18, 2024.

29. Thus, for approximately 12 cruises, MIRASOL committed sexual assault through video voyeurism to passengers assigned to passenger cabins for which MIRASOL served as stateroom attendant.

30. Upon information and belief, a RCCL stateroom attendant is assigned to a section of 16 to 20 passenger cabins.

31. Upon information and belief, the passenger cabins attended to by MIRASOL aboard the *Symphony of the Seas* slept between 2 to 4 passengers.

32. Thus, MIRASOL'S victims may include up to 960 passengers (up to 12 cruises; times up to 20 passenger cabins; times up to 4 passengers per cabin; equals up to 960 passengers).

33. Upon learning of MIRASOL'S acts of sexual assault through video voyeurism on passengers in the staterooms he attended to as a stateroom attendant since December 1, 2023, RCCL had a duty to inform all passengers who stayed in passenger cabins attended to by MIRASOL between December 1, 2023 and February 26, 2024.

34. RCCL breached its duty of reasonable care under the circumstances to its passengers by failing to notify all passengers in the staterooms MIRASOL attended to as a stateroom attendant from December 2023 through February 26, 2024.

35. RCCL's motive for failing to notify its passengers affected by MIRASOL'S acts was financial in nature. RCCL was concealing the information from its passengers in order to prevent them from filing a civil suit against RCCL for damages related to MIRASOL'S acts.

    a. Notably, RCCL provides a contractually-shortened notice period of six months and statute of limitations of one year (as opposed to the Federal Statute of Limitations for Maritime Personal Injury of 3 years pursuant to 46 U.S.C. §30106).

36. MIRASOL's intentional acts[16] described herein and admitted by MIRASOL as occurring within cabins he served as a stateroom attendant aboard the vessel between December 2023 and February 26, 2024 are sexual assaults and sexual harassment that MIRASOL committed on passengers staying in and/or using the cabin bathrooms to which MIRASOL served as a stateroom attendant aboard the vessel between December 2023 and February 26, 2024.

---

[16] See ¶26, wherein MIRASOL states his intentional acts. Specifically, MIRASOL stated, "I want to control it, but I can't"; and when questioned on how MIRASOL decides what room he puts the camera in, he stated, "If I like who is in that room, I place it"; and that MIRASOL acknowledged knowing that videoing underage girls was illegal; and MIRASOL also stated that while the guests were taking a shower, he would enter the rooms and hide under the bed while recording them naked with his cellular device.

37. 9 U.S.C. §402(a) provides, at the election of the person alleging conduct constituting a sexual harassment dispute or sexual assault dispute, or the named representative of a class or in a collective action alleging such conduct, no predispute arbitration agreement or predispute joint-action waiver shall be valid or enforceable with respect to a case which is filed under Federal, Tribal, or State law and relates to the sexual assault dispute or the sexual harassment dispute.

38. 46 U.S.C. §30527(a)(1) provides that "<u>The owner, master, manager, or agent of a vessel transporting passengers</u> between ports in the United States, or <u>between a port in the United States and a port in a foreign country, may not include in a regulation or contract a provision limiting,</u> (A) the liability of the owner, master or agent for personal injury or death caused by the negligence or fault of the owner or the owner's employees or agents[17]; or (B) <u>the right of a claimant for personal injury or death to a trial by court of competent jurisdiction.</u>" (emphasis added).

39. At all times material hereto, Royal Caribbean's crewmember, Arvin Joseph Mirasol, acted intentionally when committing the sexual assault and/or sexual harassment of video voyeurism

---

[17] 46 U.S.C. §30527(b)(1) provides that "Subsection (a) does not prohibit in a contract or in ticket conditions of carriage with a passenger <u>that relieves an owner</u>, master, manager, agent, operator, or crewmember of a vessel <u>from liability for infliction of emotional distress, mental suffering or psychological injury</u> <u>so long as the provision does not limit such liability when the emotional distress, mental suffering, or psychological injury is . . . (C) intentionally inflicted by a crewmember</u> or the owner, master, manager, agent or operator." (emphasis added).  Thus, subsection (b) would allow an owner to limit their liability by contract for infliction of emotional distress, mental suffering or psychological injury; <u>but does not allow an owner to contractually limit the right of a claimant for personal injury or death to a trial by court of competent jurisdiction</u>. Further, subsection (b) does not allow an owner to contractually limit their liability for infliction of emotional distress, mental suffering or psychological injury if the emotional distress, mental suffering or psychological injury is intentionally inflicted by a crewmember.

Further, 46 U.S.C. §30527(b)(2) provides that "<u>This subsection does not limit the liability of a crewmember or the owner</u>, master, manager, agent, or operator of a vessel <u>in a case involving sexual harassment, sexual assault</u>, or rape."  Thus, subsection (b), in addition to <u>not allowing an owner to contractually limit their liability for infliction of emotional distress, mental suffering or psychological injury if such was intentionally inflicted by a crewmember; also <u>does not allow an owner to contractually limit their liability in a case involving sexual harassment or sexual assault</u>.</u>

and child pornography aboard the Symphony of the Seas which inflicted emotional distress, mental suffering, and psychological injury on the Plaintiffs; as evidenced by the statements made by Mirasol which are part of the Federal criminal record[18] and are self-authenticating pursuant to the Federal Rules of Evidence, Rule 902.[19]

40. At all times material hereto, the vessel transported the Plaintiffs between a port in the United States (Fort Lauderdale, Florida) and a port in a foreign country. The subject cruises all transported the Plaintiffs between Fort Lauderdale, Florida and foreign ports, as follows:

a. Symphony of the Seas, Southern Caribbean 9 day cruise itinerary, leaving Ft. Lauderdale, Florida on the following dates: December 2, 2023; December 16, 2023; January 13, 2024; January 27, 2024; February 10, 2024; February 24, 2024 – traveling to the following ports in a foreign country: Oranjestad, Aruba (day 4 of each cruise); Willemstad, Curacao (day 5 of each cruise); Labadee, Haiti (day 7 of each cruise).

b. Symphony of the Seas, Western Caribbean 7 day cruise itinerary: December 10, 2023, December 24, 2023, January 7, 2024; January 21, 2024; February 4, 2024; February 18, 2024 – traveling to the following ports in a foreign country: Labadee, Haiti (day 3 of each cruise); Falmouth, Jamaica (day 4 of each cruise); Nassau, Bahamas (day 6 of each cruise).

c. Symphony of the Seas, Eastern Caribbean 9 day cruise itinerary: December 30, 2023 – traveling to the following ports in a foreign country: Basseterre, St. Kitts (day 4 of cruise); Philipsburg, St. Maarten (day 5 of cruise); Labadee, Haiti (day 7 of cruise).

## CLASS ACTION ALLEGATIONS

---

[18] *See United States v. Mirasol*, Case No. 24-cr-60046-MD (S.D. Fla. June 5, 2024) [ECF No. 23].
[19] Id. See also, ¶26 and FN13.

41. The putative Class Representative is Plaintiff, JANE DOE (S.F.) ("Putative Class Representative").

42. At all times material hereto, the Putative Class Representative and Class Members herein, were passengers aboard Royal Caribbean's vessel, *Symphony of the Seas*, between December 1, 2023 and February 26, 2024 and who stayed in cabins aboard the vessel which were serviced by MIRASOL as Stateroom Attendant.

43. This action is brought by Plaintiffs on their own behalf, and by the Putative Class Representative on behalf of all others similarly situated, (the "Class Plaintiffs"), under the provisions of Rule 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure.

44. The class so represented by the Putative Class Representative in this action, and of which Plaintiffs are members, consists of passengers aboard Royal Caribbean's vessel, *Symphony of the Seas*, between December 1, 2023 and February 26, 2024 who stayed in cabins aboard the vessel which were serviced by MIRASOL as Stateroom Attendant, who were subjected to the sexual assault and sexual harassment by MIRASOL while he was employed by RCCL and a member of RCCL's crew, as outlined above.

45. This class of passengers reasonably believe that images of them undressed while engaging in private activities have been distributed in a manner to allow them to be able to be immediately reproduced and posted to the world wide web, including the dark web. As a result of MIRASOL'S acts and the class of passengers' reasonable beliefs as a result of MIRASOL'S acts, the class of passengers suffer from severe emotional distress, which manifests physically, causing them physical sickness, sweating, nausea, insomnia, dizziness, crying, and physical pain, thereby causing physical impact to the passengers. The class of passengers reasonably believe that these images may never be completely discovered by them, not for lack of searching, but as a

- 32 -

consequence of the vastness of the world wide web; it would be the digital equivalent of searching for specific shards of glass in the ocean.  And, if any members of the class found the images of themselves, they could neither permanently extract them from the world wide web, nor could they be sure that they found all of the images.  Accordingly, the members of the class live in constant fear, reasonably under the circumstances, that images of them undressed while engaging in private activities are regularly viewed by others and used for illicit purposes.

46. The exact number of members of the class is anticipated to be up to 960 passengers as described in paragraph 32. The class is so numerous that joinder at this anticipated amount of all members is impracticable. Thus, this action satisfies the requirements of Rule 23(a)(1).

47. There are common questions of law and fact that relate to and affect the rights of each member of the class and the relief sought is common to the entire class. The same misconduct on the part of Defendants, MIRASOL and RCCL, caused the same or similar injury to each class member.  All class members seek damages under Federal Law and U.S. General Maritime Law. Accordingly, this action satisfies the requirement of Rule 23(a)(2).

48. The claims of the Plaintiffs are typical of the claims of the class, in that the claims of all members of the class, including the named Plaintiffs, depend upon a virtually identical showing of the acts and omissions of Defendants, MIRASOL and RCCL, giving rise to the right of Plaintiffs to the relief sought herein. Defendants, MIRASOL and RCCL, were at all times material hereto engaged in the same conduct to the detriment of the entire class of Class Plaintiffs. Accordingly, this action satisfies the requirements of Rule 23(a)(3).

49. The Putative Class Representative is able to, and will, fairly and adequately protect the interests of the class. There is no conflict between the Putative Class Representative and other members of the class with respect to this action, or with respect to the claims for relief herein. The

attorneys for the Putative Class Representative and the Plaintiffs, Lipcon, Margulies & Winkleman, P.A. are among the most experienced and capable in the field of maritime claims for cruise ship passenger injuries, including class actions, and have successfully represented claimants in other litigation relating to sexual assault and sexual harassment of cruise passengers by crewmembers. Three of the attorneys designated as counsel for Plaintiffs, Jason R. Margulies (who is Board Certified by the Florida Bar in Admiralty and Maritime Law), Michael A. Winkleman, and Jacqueline Garcell, of Lipcon, Margulies & Winkleman, P.A., who have decades of experience handling maritime personal injury and sexual assault cases occurring aboard cruise ships, will actively conduct and be responsible for the proposed class action herein. Further, proposed class co-counsel, The Moskowitz Law Firm, has decades of experience handling class action litigation. Together, the proposed Class Co-Lead Counsel are among the most experienced and capable in the field of maritime claims for cruise ship passenger injuries and class actions, and have successfully represented claimants in other litigation relating to sexual assault and sexual harassment of cruise passengers by crewmembers, have demonstrated a sound knowledge of the legal issues pertaining to Putative Class Representative's and the Class's claims against RCCL, and certainly have the collective financial wherewithal to capably prosecute these claims on a class-wide basis Accordingly, this action satisfies the requirement of Rule 23(a)(4).

50. This action is properly maintained as a class action under Rule 23(b)(3) inasmuch as questions of law and fact common to the members of the class predominate over any questions affecting only individual members, and a class action is superior to the other available methods for the fair and efficient adjudication of this controversy. In support of the foregoing, Class Plaintiffs allege that common issues predominate and can be determined on a class-wide basis regarding Defendant, MIRASOL's intentional torts against the Class Plaintiffs and RCCL's vicarious liability for MIRASOL's intentional torts against the Class Plaintiffs, as well as RCCL's failure to

exercise reasonable care under the circumstances toward the Class Plaintiffs while aboard the vessel in connection with the threats of sexual assault and sexual harassment through video voyeurism of the Class Plaintiffs while in various states of undress and performing private intimate activities in the reasonably expected privacy of their cabin bathrooms aboard the vessel.

51. A class action is superior to other available methods for the fair and efficient adjudication of this controversy because RCCL has failed to notify the individual Class Plaintiffs of MIRASOL's acts subsequent to RCCL's direct knowledge of MIRASOL's acts, arrest, and admission of the fact that MIRASOL engaged in these acts since December 2023 aboard the vessel in passenger cabins that he was assigned as Stateroom Attendant by RCCL. Further, upon information and belief, RCCL is in sole and exclusive custody of the passenger manifests to show the identity and contact information of the passengers who were assigned to cabins serviced by MIRASOL aboard the vessel between December 2023 and February 26, 2024. Thus, it is unlikely that the vast majority of individual plaintiffs, having not been notified by RCCL, would discover the violations of their privacy, sexual harassment, and sexual assault; nor assume the burden and the cost of this complex litigation, and the Purported Class Representative and counsel is not aware of any significant numbers of class members who are interested in individually controlling the prosecution of a separate action. The interests of justice will be served by resolving the common disputes of the class members with Defendants, MIRASOL and RCCL, in a single forum, and individual actions by class members, many of whom are citizens and residents of different states would not be cost effective. The class consists of a finite and identifiable number of individuals which will make the matter manageable as a class action.

**COUNT I – INVASION OF PRIVACY BY VIDEO
VOYEURISM AND SEXUAL ASSAULT AGAINST MIRASOL**

The Plaintiffs reallege, incorporate by reference, and adopt the allegations set forth in paragraphs one (1) through fifty-one (51) as though alleged originally herein.

52. During the subject cruises, RCCL assigned Plaintiffs and all others similarly situated a passenger cabin during the subject cruise, which was a private quarter for the Plaintiffs' use.

53. During the subject cruise, MIRASOL intentionally and surreptitiously hid a camera in the cabin bathroom of the Plaintiffs and all others similarly situated assigned passenger cabin during the subject cruise, while working as a stateroom attendant, for the purpose of capturing images of the Plaintiffs and all others similarly situated undressed and engaging in private activities in the cabin bathroom, for his own use and/or to distribute and upload to the world wide web.

54. During the subject cruise, while Plaintiffs and all others similarly situated were taking a shower, MIRASOL entered the Plaintiffs' and all others similarly situated passenger cabin and hid under a bed and recorded Plaintiffs and all others similarly situated with his cellular device, for the purpose of capturing images of the Plaintiffs and all others similarly situated undressed and engaging in private activities in the cabin bathroom, for his own use and/or to distribute and upload to the world wide web.

55. At all times material hereto, MIRASOL'S intrusions into Plaintiffs' and all others similarly situated privacy were highly offensive to Plaintiffs and all others similarly situated and to reasonable persons.

56. As a direct and proximate result of the tortious actions of MIRASOL, the Plaintiffs and all others similarly situated were injured about Plaintiff's and all others similarly situated bodies, suffered physical pain, mental anguish, loss of enjoyment of life, post-traumatic stress disorder, and other mental and/or nervous disorders, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of Plaintiffs' and all others

similarly situated injuries, suffered handicap, lost earnings and lost earning capacity, both past and future. The injuries are permanent and continuing in nature and Plaintiffs and all others similarly situated will suffer the losses and impairments in the future.  In addition, the Plaintiffs and all others similarly situated lost related costs and damages incident to their cruise.

WHEREFORE, the Plaintiffs and all others similarly situated demand judgment for all damages recoverable under the law, including punitive damages, and demand trial by jury.

## COUNT II – VICARIOUS STRICT LIABILITY FOR INVASION OF PRIVACY BY VIDEO VOYEURISM AND SEXUAL ASSAULT AGAINST RCCL

The Plaintiffs reallege, incorporate by reference, and adopt the allegations set forth in paragraphs one (1) through fifty-one (51) as though alleged originally herein.

57. During the subject cruise, RCCL assigned Plaintiffs and all those similarly situated a passenger cabin during the subject cruise, which was a private quarter for the Plaintiffs and all others similarly situated use.

58. During the subject cruise, MIRASOL intentionally and surreptitiously hid a camera in the cabin bathroom of the Plaintiffs and all others similarly situated assigned passenger cabin during the subject cruise, while working as a stateroom attendant, for the purpose of capturing images of the Plaintiffs and all others similarly situated undressed and engaging in private activities in the cabin bathroom, for his own use and/or to distribute and upload to the world wide web.

59. During the subject cruise, while Plaintiffs and all others similarly situated were taking a shower, MIRASOL entered the Plaintiffs' passenger cabin and hid under a bed and recorded Plaintiffs and all others similarly situated with his cellular device, for the purpose of capturing images of the Plaintiffs and all others similarly situated undressed and engaging in private

activities in the cabin bathroom, for his own use and/or to distribute and upload to the world wide web.

60. At all times material hereto, MIRASOL'S intrusions into Plaintiffs' and all others similarly situated privacy were highly offensive to Plaintiff and all others similarly situated and to reasonable persons.

61. At all times material hereto, MIRASOL was hired, retained and/or employed by RCCL

62. At all times material hereto, MIRASOL was a member of the crew aboard the vessel owned and/or operated by RCCL.

63. At all times material hereto, RCCL was vicariously liable for the intentional tortious actions of its crewmembers/employees, including MIRASOL.

64. As a direct and proximate result of the tortious actions of MIRASOL, for which RCCL is vicariously liable, the Plaintiffs and all others similarly situated were injured about Plaintiffs' and all others similarly situated bodies, suffered physical pain, mental anguish, loss of enjoyment of life, post-traumatic stress disorder, and other mental and/or nervous disorders, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of Plaintiffs and all others similarly situated injuries, suffered handicap, lost earnings and lost earning capacity, both past and future. The injuries are permanent and continuing in nature and Plaintiffs and all others similarly situated will suffer the losses and impairments in the future.  In addition, the Plaintiffs and all others similarly situated lost related costs and damages incident to their cruise.

WHEREFORE, the Plaintiffs and all others similarly situated demand judgment for all damages recoverable under the law, including punitive damages, and demand trial by jury.

## COUNT III – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS BY VIDEO VOYEURISM AND SEXUAL ASSAULT AGAINST MIRASOL

The Plaintiffs reallege, incorporate by reference, and adopt the allegations set forth in paragraphs one (1) through fifty-one (51) as though alleged originally herein.

65. During the subject cruise, RCCL assigned Plaintiffs and all others similarly situated a passenger cabin during the subject cruise, which was a private quarter for the Plaintiffs' and all others similarly situated use.

66. During the subject cruise, MIRASOL intentionally and surreptitiously hid a camera in the cabin bathroom of the Plaintiffs and all others similarly situated assigned passenger cabin during the subject cruise, while working as a stateroom attendant, for the purpose of capturing images of the Plaintiffs and all others similarly situated undressed and engaging in private activities in the cabin bathroom, for his own use and/or to distribute and upload to the world wide web.

67. During the subject cruise, while Plaintiffs and all others similarly situated were taking a shower, MIRASOL entered the Plaintiffs' and all others similarly situated passenger cabin and hid under a bed and recorded Plaintiffs and all others similarly situated with his cellular device, for the purpose of capturing images of the Plaintiffs and all others similarly situated undressed and engaging in private activities in the cabin bathroom, for his own use and/or to distribute and upload to the world wide web.

68. At all times material hereto, MIRASOL'S intrusions into Plaintiffs' and all others similarly situated privacy were extreme and outrageous.

69. At all times material hereto, MIRASOL'S intrusions into Plaintiffs' and all others similarly situated privacy were committed intentionally and/or with a reckless disregard for the probability of causing Plaintiffs and all others similarly situated emotional distress.

70. MIRASOL'S intentional extreme and outrageous conduct toward Plaintiffs and all others similarly situated, once discovered by Plaintiffs and all others similarly situated, caused severe

emotional distress to the Plaintiffs and all others similarly situated, which manifested itself physically, causing the Plaintiffs and all others similarly situated physical sickness, sweating, nausea, insomnia, dizziness, crying, and physical pain, thereby causing physical impact to the Plaintiffs and all others similarly situated.

71. As a direct and proximate result of the intentional infliction of emotional distress by MIRASOL, the Plaintiffs and all others similarly situated were injured about Plaintiffs' and all others similarly situated bodies, suffered physical pain, mental anguish, loss of enjoyment of life, post-traumatic stress disorder, and other mental and/or nervous disorders, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of Plaintiffs and all others similarly situated injuries, suffered handicap, lost earnings and lost earning capacity, both past and future. The injuries are permanent and continuing in nature and Plaintiffs and all others similarly situated will suffer the losses and impairments in the future.  In addition, the Plaintiffs lost related costs and damages incident to their cruise.

WHEREFORE, the Plaintiffs and all others similarly situated demand judgment for all damages recoverable under the law, including punitive damages, and demand trial by jury.

## COUNT IV – VICARIOUS STRICT LIABILITY FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS BY VIDEO VOYEURISM AND SEXUAL ASSAULT AGAINST RCCL

The Plaintiffs reallege, incorporate by reference, and adopt the allegations set forth in paragraphs one (1) through fifty-one (51) as though alleged originally herein.

72. During the subject cruise, RCCL assigned Plaintiffs and all others similarly situated a passenger cabin during the subject cruise, which was a private quarter for the Plaintiffs and all others similarly situated use.

73. During the subject cruise, MIRASOL intentionally and surreptitiously hid a camera in the cabin bathroom of the Plaintiffs and all others similarly situated assigned passenger cabin during the subject cruise, while working as a stateroom attendant, for the purpose of capturing images of the Plaintiffs and all others similarly situated undressed and engaging in private activities in the cabin bathroom, for his own use and/or to distribute and upload to the world wide web.

74. During the subject cruise, while Plaintiffs and all others similarly situated were taking a shower, MIRASOL entered the Plaintiffs' and all others similarly situated passenger cabin and hid under a bed and recorded Plaintiffs and all others similarly situated with his cellular device, for the purpose of capturing images of the Plaintiffs and all others similarly situated undressed and engaging in private activities in the cabin bathroom, for his own use and/or to distribute and upload to the world wide web.

75. At all times material hereto, MIRASOL'S intrusions into Plaintiffs' and all others similarly situated privacy were extreme and outrageous.

76. At all times material hereto, MIRASOL'S intrusions into Plaintiffs' and all others similarly situated privacy were committed intentionally and/or with a reckless disregard for the probability of causing Plaintiffs and all others similarly situated emotional distress.

77. MIRASOL'S intentional extreme and outrageous conduct toward Plaintiffs and all others similarly situated, once discovered by Plaintiffs and all others similarly situated, caused severe emotional distress to the Plaintiffs and all others similarly situated, which manifested itself physically, causing the Plaintiffs and all others similarly situated physical sickness, sweating, nausea, insomnia, dizziness, crying, and physical pain, thereby causing physical impact to the Plaintiffs and all others similarly situated.

78. At all times material hereto, MIRASOL was hired, retained and/or employed by RCCL

- 41 -

79. At all times material hereto, MIRASOL was a member of the crew aboard the vessel owned and/or operated by RCCL.

80. At all times material hereto, RCCL was vicariously liable for the intentional tortious actions of its crewmembers/employees, including MIRASOL.

81. As a direct and proximate result of the intentional infliction of emotional distress by MIRASOL, for which RCCL is vicariously liable, the Plaintiffs and all others similarly situated were injured about Plaintiffs' and all others similarly situated bodies, suffered physical pain, mental anguish, loss of enjoyment of life, post-traumatic stress disorder, and other mental and/or nervous disorders, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of Plaintiffs' and all others similarly situated injuries, suffered handicap, lost earnings and lost earning capacity, both past and future. The injuries are permanent and continuing in nature and Plaintiffs and all others similarly situated will suffer the losses and impairments in the future.  In addition, the Plaintiffs and all others similarly situated lost related costs and damages incident to their cruise.

WHEREFORE, the Plaintiffs and all others similarly situated demand judgment for all damages recoverable under the law, including punitive damages, and demand trial by jury.

**COUNT V – NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS BY VIDEO VOYEURISM AND SEXUAL ASSAULT AGAINST MIRASOL**

The Plaintiffs reallege, incorporate by reference, and adopt the allegations set forth in paragraphs one (1) through fifty-one (51) as though alleged originally herein.

82. During the subject cruise, RCCL assigned Plaintiffs and all others similarly situated a passenger cabin during the subject cruise, which was a private quarter for the Plaintiffs and all others similarly situated use.

83. During the subject cruise, MIRASOL intentionally and surreptitiously hid a camera in the cabin bathroom of the Plaintiffs' assigned passenger cabin during the subject cruise, while working as a stateroom attendant, for the purpose of capturing images of the Plaintiffs and all others similarly situated undressed and engaging in private activities in the cabin bathroom, for his own use and/or to distribute and upload to the world wide web.

84. During the subject cruise, while Plaintiffs and all others similarly situated were taking a shower, MIRASOL entered the Plaintiffs' and all others similarly situated passenger cabin and hid under a bed and recorded Plaintiffs and all others similarly situated with his cellular device, for the purpose of capturing images of the Plaintiffs and all others similarly situated undressed and engaging in private activities in the cabin bathroom, for his own use and/or to distribute and upload to the world wide web.

85. At all times material hereto, MIRASOL'S intrusions into Plaintiffs and all others similarly situated privacy were committed negligently and/or with a failure to exercise reasonable care for the Plaintiffs and all others similarly situated.

86. MIRASOL'S aforementioned acts, once discovered by Plaintiffs and all others similarly situated, caused severe emotional distress to the Plaintiffs and all others similarly situated, which manifested itself physically, causing the Plaintiffs and all others similarly situated physical sickness, sweating, nausea, insomnia, dizziness, crying, and physical pain, thereby causing physical impact to the Plaintiffs and all others similarly situated.

87. As a direct and proximate result of the negligent infliction of emotional distress by MIRASOL, the Plaintiffs and all others similarly situated was injured about Plaintiffs' and all others similarly situated bodies, suffered physical pain, mental anguish, loss of enjoyment of life, post-traumatic stress disorder, and other mental and/or nervous disorders, aggravation of any

previously existing conditions therefrom, incurred medical expenses in the care and treatment of Plaintiffs and all others similarly situated injuries, suffered handicap, lost earnings and lost earning capacity, both past and future. The injuries are permanent and continuing in nature and Plaintiffs and all others similarly situated will suffer the losses and impairments in the future.  In addition, the Plaintiffs and all others similarly situated lost related costs and damages incident to their cruise.

WHEREFORE, the Plaintiffs and all others similarly situated demand judgment for all damages recoverable under the law, including punitive damages, and demand trial by jury.

**COUNT VI – NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS BY VIDEO VOYEURISM AND SEXUAL ASSAULT AGAINST RCCL**

The Plaintiffs reallege, incorporate by reference, and adopt the allegations set forth in paragraphs one (1) through fifty-one (51) as though alleged originally herein.

88. During the subject cruise, RCCL assigned Plaintiffs and all others similarly situated a passenger cabin during the subject cruise, which was a private quarter for the Plaintiffs and all others similarly situated use.

89. During the subject cruise, MIRASOL negligently intentionally and surreptitiously hid a camera in the cabin bathroom of the Plaintiffs' and all others similarly situated assigned passenger cabin during the subject cruise, while working as a stateroom attendant, for the purpose of capturing images of the Plaintiffs and all others similarly situated undressed and engaging in private activities in the cabin bathroom, for his own use and/or to distribute and upload to the world wide web.

90. During the subject cruise, while Plaintiffs and all others similarly situated were taking a shower, MIRASOL entered the Plaintiffs' passenger cabin and hid under a bed and recorded

Plaintiffs and all others similarly situated with his cellular device, for the purpose of capturing images of the Plaintiffs and all others similarly situated undressed and engaging in private activities in the cabin bathroom, for his own use and/or to distribute and upload to the world wide web.

91. At all times material hereto, MIRASOL'S intrusions into Plaintiffs' and all others similarly situated privacy were committed negligently and/or with a failure to exercise reasonable care for the Plaintiffs and all others similarly situated.

92. MIRASOL'S aforementioned acts, once discovered by Plaintiffs and all others similarly situated, caused severe emotional distress to the Plaintiffs and all others similarly situated, which manifested itself physically, causing the Plaintiffs and all others similarly situated physical sickness, sweating, nausea, insomnia, dizziness, crying, and physical pain, thereby causing physical impact to the Plaintiffs and all others similarly situated.

93. At all times material hereto, MIRASOL was hired, retained and/or employed by RCCL

94. At all times material hereto, MIRASOL was a member of the crew aboard the vessel owned and/or operated by RCCL.

95. At all times material hereto, RCCL acted negligently and its negligence permitted MIRASOL to perform the aforementioned acts, through RCCL's failure to:

    a.   Adequately vet and investigate MIRASOL before hiring MIRASOL;

    b.   Adequately train MIRASOL;

    c.   Adequately supervise MIRASOL;

    d.   Adequately inspect Plaintiffs' and all others similarly situated cabins;

e.   Adequately inspect and screen for cameras and other electronic devices which may be mounted to walls and/or fixtures and used to surreptitiously capture images of passengers without their prior knowledge and consent;

f.   Utilize a hidden camera detector[20] to search passenger cabins;

g.   Make hidden camera detectors available to passengers to search passenger cabins after warning passengers of RCCL's prior incident(s) involving sexual assaults, including hidden cameras;

h.   Provide adequate security aboard the vessel;

i.   Adequately train security aboard the vessel;

j.   Promulgate and enforce adequate policies and procedures to prevent video voyeurism aboard the vessel;

k.   Promulgate and enforce adequate policies and procedures to inspect passenger cabins for hidden cameras, as both a preventative measure to deter the placement of hidden cameras in passenger cabins; as well as a protective measure to discover hidden cameras placed in passenger cabins;

l.   Promulgate and enforce adequate policies and procedures to inspect crew cabins for contraband, including cameras which can be hidden in passenger cabins and illicit digital images on digital media and memory physically located in crew cabins;

m.   Promulgate and enforce adequate policies and procedures with regard to conducting adequate interviews, assessments, background checks, peer reviews, investigations,

---

[20] Hidden camera detectors are readily available commercially and can cost less than Fifty Dollars. See, e.g. https://www.amazon.com/RAVIAD-Detectors-Listening-Electronic-Sensitivity/dp/B0DHTRJFZ1?th=1

confirmation of recommendations, and other enhanced vetting of employee crewmembers with direct access to passenger cabins.

96. As a direct and proximate result of the negligent infliction of emotional distress by RCCL, the Plaintiffs and all others similarly situated was injured about Plaintiffs' and all others similarly situated bodies, suffered physical pain, mental anguish, loss of enjoyment of life, post-traumatic stress disorder, and other mental and/or nervous disorders, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of Plaintiff's and all others similarly situated injuries, suffered handicap, lost earnings and lost earning capacity, both past and future. The injuries are permanent and continuing in nature and Plaintiff and all others similarly situated will suffer the losses and impairments in the future.  In addition, the Plaintiffs and all others similarly situated lost related costs and damages incident to their cruise.

WHEREFORE, the Plaintiffs and all others similarly situated demand judgment for all damages recoverable under the law, including punitive damages, and demand trial by jury.

## COUNT VII – NEGLIGENT SECURITY AGAINST RCCL

The Plaintiffs reallege, incorporate by reference, and adopt the allegations set forth in paragraphs one (1) through fifty-one (51) as though alleged originally herein.

97. At all times material hereto, it was the duty of RCCL to provide the Plaintiffs and all others similarly situated with reasonable care under the circumstances while Plaintiffs and all others similarly situated were passengers aboard the vessel.

98. At all times material hereto, it was the duty of RCCL to provide reasonable security and/or implement reasonable security measures aboard the vessel.

99. At all times material hereto, RCCL voluntarily undertook and/or assumed the duty of security by retaining crewmembers to serve as security officers about the vessel and/or advertising its onboard security. For instance, as the Eleventh Circuit recognized in the case of *K.T.*, Defendant "assures all who are thinking of sailing with it that 'the safety and security of our guests and crew is our highest priority and fundamental to our operations.'[21] It boasts that it 'is committed to preventing illegal activity,' and '[d]uring each voyage, we remain dedicated to safeguarding our guests and crew.'[22] And it promises that the ship's Captain 'will take appropriate action to ensure the safety, security and wellbeing of our guests.'"[23] *K.T.*, 931 F.3d at 1047.

100. During the subject cruise, RCCL and/or its agents, servants and/or employees breached its duty to the Plaintiffs and all others similarly situated through its failure to:

a. Provide adequate supervision and/or security aboard the vessel, including, but not limited to, supervising stateroom attendants and/or inspecting passenger cabins for hidden cameras;

b. Provide adequate supervision and/or security to protect passengers aboard the vessel;

c. Provide adequate supervision and/or security presence aboard the vessel and/or perform random surprise inspections of passenger cabins following stateroom attendants' work in passenger cabins, so as to deter video voyeurism aboard the vessel;

d. Adequately supervise individuals working aboard the vessel to ensure they do not engage in video voyeurism aboard the vessel;

---

[21] *Safety & Security*, Royal Caribbean Cruises, https://www.royalcaribbean.com/resources/safety-and-security (last visited July 27, 2020).
[22] Id.
[23] *Royal Caribbean Guest Conduct Policy*, Royal Caribbean Cruises, https://www.royalcaribbean.com/content/dam/royal/resources/pdf/guest-conduct-policy.pdf (last updated Nov. 12, 2018).

e.   Adequately inspect crew cabins aboard the vessel for contraband, including cameras, which can be hidden in passenger cabins and illicit digital images on digital media and memory physically located in crew cabins;

f.   Utilize a hidden camera detector to search passenger cabins;

g.   Make hidden camera detectors available to passengers to search passenger cabins after warning passengers of RCCL's prior incident(s) involving sexual assaults, including hidden cameras;

h.   Maintain and/or monitor security cameras on the vessel in order to identify potentially dangerous situations, incidents, and/or contraband being brought into passenger cabins, such as a camera which can be mounted to a wall or fixture;

i.   Promulgate and enforce adequate policies and procedures to prevent video voyeurism aboard the vessel;

j.   Promulgate and enforce adequate policies and procedures to inspect passenger cabins for hidden cameras, as both a preventative measure to deter the placement of hidden cameras in passenger cabins; as well as a protective measure to discover hidden cameras placed in passenger cabins;

k.   Promulgate and enforce adequate policies and procedures to inspect crew cabins for contraband, including cameras which can be hidden in passenger cabins and illicit digital images on digital media and memory physically located in crew cabins;

l.   Promulgate and enforce adequate policies and procedures with regard to conducting adequate interviews, assessments, background checks, peer reviews, investigations, confirmation of recommendations, and other enhanced vetting of employee crewmembers with direct access to passenger cabins;

m.  Failure to have adequate security aboard the vessel in terms of numbers and/or training and/or experience;

n.  Failure to adequately train security;

o.  Failure to adequately supervise security.

101.    The above acts and/or omissions caused and/or contributed to the subject incident because, had RCCL provided reasonable security and/or implemented reasonable security measures consistent with the foregoing, MIRASOL would not have been able to engage in an ongoing scheme to hide cameras in the cabin bathrooms of the passenger cabins for which he served as a stateroom attendant for months, including the Plaintiffs and all others similarly situated cabins on the subject cruises.

102.    At all times material hereto, RCCL knew or should have known of the foregoing conditions and conduct resulting in the subject video voyeurism of the Plaintiffs and all others similarly situated and did not correct them, or the conditions and conduct existed for a sufficient length of time so that RCCL, in the exercise of reasonable care under the circumstances, should have learned of them and corrected them.  This knowledge was or should have been acquired through prior incidents of sexual assault and video voyeurism aboard RCCL's cruise ships, which did or should have revealed that further instances of sexual assault, including video voyeurism, was reasonably foreseeable, including, but not limited to, the allegations contained in paragraphs 19-23.  In addition, RCCL was on notice and/or created the dangerous conditions by the lack of warnings and/or supervision and/or security and/or training.

103.    As a direct and proximate result of RCCL's negligence, the Plaintiffs and all others similarly situated were injured about Plaintiffs' and all others similarly situated bodies, suffered physical pain, mental anguish, loss of enjoyment of life, post-traumatic stress disorder, and other

mental and/or nervous disorders, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of Plaintiffs' and all others similarly situated injuries, suffered handicap, lost earnings and lost earning capacity, both past and future. The injuries are permanent and continuing in nature and Plaintiffs and all others similarly situated will suffer the losses and impairments in the future.  In addition, the Plaintiffs and all others similarly situated lost related costs and damages incident to their cruise.

WHEREFORE, the Plaintiffs and all others similarly situated demand judgment for all damages recoverable under the law, including punitive damages, and demand trial by jury.

**COUNT VIII – GENERAL NEGLIGENCE AGAINST RCCL**

The Plaintiffs reallege, incorporate by reference, and adopt the allegations set forth in paragraphs one (1) through fifty-one (51) as though alleged originally herein.

104.    At all times material hereto, it was the duty of RCCL to provide the Plaintiffs and all others similarly situated with reasonable care under the circumstances while Plaintiffs and all others similarly situated were passengers aboard the vessel.

105.    During the subject cruise, Defendant, its agents and/or employees, breached its duty to exercise reasonable care, through its failure to:

    a. Provide reasonably safe conditions for the Plaintiffs and all others similarly situated during the voyage aboard the vessel (reasonably safe conditions include, but are not limited to, preventing an atmosphere wherein persons could target and/or sexually assault passengers, including but not limited to, hiding cameras in passenger staterooms);

b. Promulgate and/or enforce adequate policies and/or procedures designed to prevent individuals working aboard the vessel from being able to bring cameras into passenger staterooms so that they can be hidden;

c. Adequately train individuals working aboard the vessel;

d. Adequately supervise individuals working aboard the vessel;

e. Implement and/or enforce an adequate safety management system (SMS);

f. Advise and warn passengers of the need to inspect their passenger cabins for hidden cameras;

g. Utilize a hidden camera detector to search passenger cabins;

h. Make hidden camera detectors available to passengers to search passenger cabins after warning passengers of RCCL prior incident(s) involving sexual assault, including hidden camera;

i. Adequately interview, assess, conduct background checks, obtain peer reviews, investigate, confirm recommendations, and conduct other enhanced vetting of employee crewmembers with direct access to passenger cabins;

j. Promulgate and enforce adequate policies and procedures to interview, assess, conduct background checks, obtain peer reviews, investigate, confirm recommendations, and conduct other enhanced vetting of employee crewmembers with direct access to passenger cabins.

106. The above acts and/or omissions caused and/or contributed to the subject incident because, had RCCL not failed to provide the foregoing, MIRASOL would not have been able to engage in an ongoing scheme to hide cameras in the cabin bathrooms of the passenger cabins for

which he served as a stateroom attendant for months, including the Plaintiffs' and all others similarly situated cabins on the subject cruises.

107. At all times material hereto, RCCL knew or should have known of the foregoing conditions and conduct resulting in the subject video voyeurism of the Plaintiffs and all others similarly situated and did not correct them, or the conditions and conduct existed for a sufficient length of time so that RCCL, in the exercise of reasonable care under the circumstances, should have learned of them and corrected them. This knowledge was or should have been acquired through prior incidents of sexual assault and video voyeurism aboard RCCL's cruise ships, which did or should have revealed that further instances of sexual assault, including video voyeurism, was reasonably foreseeable, including, but not limited to, the allegations contained in paragraphs 19-23. In addition, RCCL was on notice and/or created the dangerous conditions by the lack of warnings and/or supervision and/or security and/or training.

108. As a direct and proximate result of RCCL's negligence, the Plaintiffs and the Class Plaintiffs were injured about Plaintiffs' and all others similarly situated bodies, suffered physical pain, mental anguish, loss of enjoyment of life, post-traumatic stress disorder, and other mental and/or nervous disorders, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of Plaintiffs' and all others similarly situated injuries, suffered handicap, lost earnings and lost earning capacity, both past and future. The injuries are permanent and continuing in nature and Plaintiffs and all others similarly situated will suffer the losses and impairments in the future. In addition, the Plaintiffs and all others similarly situated lost related costs and damages incident to their cruises.

WHEREFORE, the Plaintiffs and all others similarly situated demand judgment for all damages recoverable under the law, including punitive damages, and demand trial by jury.

## COUNT IX – BREACH OF IMPLIED COVENANT OF
## GOOD FAITH AND FAIR DEALING AGAINST RCCL

The Plaintiffs reallege, incorporate by reference, and adopt the allegations set forth in paragraphs one (1) through fifty-one (51) as though alleged originally herein.

109.    At all times material hereto, RCCL and the Plaintiffs and all others similarly situated were parties to a passenger ticket contract, written by RCCL.

110.    The passenger ticket contract between RCCL and the Plaintiffs and all others similarly situated, contains an implied covenant of good faith and fair dealing.

111.    The passenger ticket contract between RCCL and the Plaintiffs refers to and incorporates RCCL's Guest Health, Safety, and Conduct Policy, and Carrier's "policies against fraternization with crew."

112.    RCCL's Guest Health, Safety, and Conduct Policy provides "Our crew members are friendly, outgoing and helpful, and they will do their very best to make a guest's vacation as enjoyable as possible.  Please do not misinterpret their friendliness.  Crew members are prohibited from engaging in physical relationships with guests.  Crew members are not permitted to socialize with guests beyond their professional duties, and are not permitted to be in guest staterooms, except for the performance of their shipboard duties." (emphasis added).

113.    At all times material hereto, Plaintiffs and all others similarly situated had performed all necessary prerequisites under the passenger ticket contract between RCCL and the Plaintiffs and all others similarly situated.

114.    On or about February 26, 2024, RCCL learned that MIRASOL had been hiding cameras in the passenger cabin bathrooms of the passenger cabins he was assigned to serve as Stateroom Attendant and committed acts of sexual assault through video voyeurism and hiding

under beds in the passenger cabins he was assigned to serve as Stateroom Attendant to capture video and images of passengers showering.

115.    Shortly after February 26, 2024, RCCL knew or should have known that MIRASOL had been hiding cameras in the passenger cabin bathrooms of the passenger cabins he was assigned to serve as Stateroom Attendant and was committing acts of sexual assault through video voyeurism and hiding under beds in the passenger cabins he was assigned to serve as Stateroom Attendant to capture video and images of passengers showering, since he started working on the Vessel in December 2023.

116.    Upon learning of MIRASOL'S acts of sexual assault through video voyeurism on passengers in the staterooms he attended to as a stateroom attendant since December 1, 2023, RCCL had a duty, pursuant to the implied covenant of good faith and fair dealing within the passenger ticket contract between RCCL and Plaintiffs and all others similarly situated, to inform all passengers who stayed in passenger cabins attended to by MIRASOL between December 1, 2023 and February 26, 2024 that they were potential victims of MIRASOL's sexual assault through video voyeurism and MIRASOL hiding under beds in passenger cabins to capture video and images of passengers showering.

117.    RCCL breached the implied covenant of good faith and fair dealing in its passenger ticket contract between RCCL and Plaintiffs and all others similarly situated, by failing to notify all passengers in the staterooms MIRASOL attended to as a stateroom attendant from December 2023 through February 26, 2024.

118.    RCCL's motive for failing to notify its passengers affected by MIRASOL'S acts was financial in nature.  RCCL was concealing the information from its passengers in order to prevent them from filing a civil suit against RCCL for damages related to MIRASOL'S acts.

a. Notably, RCCL provides a contractually-shortened notice period of six months and statute of limitations of one year (as opposed to the Federal Statute of Limitations for Maritime Personal Injury of 3 years pursuant to 46 U.S.C. §30106).

119.    RCCL's conduct in failing to notify its passengers affected by MIRASOL's acts was not consistent with the Plaintiffs' and those similarly situated reasonable expectations under the passenger ticket contract and RCCL's Guest Health, Safety, and Conduct Policy, and Carrier's "policies against fraternization with crew."

120.    As a direct and proximate result of RCCL's breach of the implied covenant of good faith and fair dealing in the passenger ticket contract between RCCL and the Plaintiffs and those similarly situated, the Plaintiffs and all others similarly situated did not discover their injuries in time to provide notice to RCCL and file suit against RCCL and MIRASOL within the contractually-shortened time limits provided by RCCL; and they were injured about Plaintiffs' and all others similarly situated bodies, suffered physical pain, mental anguish, loss of enjoyment of life, post-traumatic stress disorder, and other mental and/or nervous disorders, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of Plaintiffs' and all others similarly situated injuries, suffered handicap, lost earnings and lost earning capacity, both past and future. The injuries are permanent and continuing in nature and Plaintiffs and all others similarly situated will suffer the losses and impairments in the future.  In addition, the Plaintiffs and all others similarly situated lost related costs and damages incident to their cruises.

WHEREFORE, the Plaintiffs and all others similarly situated demand judgment for all damages recoverable under the law, including punitive damages, and demand trial by jury.

## COUNT X – NEGLIGENT HIRING AND RETENTION AGAINST RCCL

The Plaintiffs reallege, incorporate by reference, and adopt the allegations set forth in paragraphs one (1) through fifty-one (51) as though alleged originally herein.

121.      At all times material hereto, it was the duty of RCCL to provide the Plaintiffs and all others similarly situated with reasonable care under the circumstances while Plaintiffs and all others similarly situated were passengers aboard the vessel; including exercising reasonable care in the hiring and retention of its crewmembers.

122.      During the subject cruise, Defendant, its agents and/or employees, breached its duty to exercise reasonable care in the hiring and retention of crewmember, Arvin Mirasol, through its failure to:

a. Adequately interview, assess, conduct background checks, obtain peer reviews, investigate, confirm recommendations, and conduct other enhanced vetting of Arvin Mirasol before providing him with direct access to passenger cabins;

b. Promulgate and enforce adequate policies and procedures to interview, assess, conduct background checks, obtain peer reviews, investigate, confirm recommendations, and conduct other enhanced vetting Arvin Mirasol before providing him with with direct access to passenger cabins;

c. Adequately supervise and regularly and frequently review the work of Arvin Mirasol during his employment with RCCL;

d. Adequately inspect passenger cabins within the group assigned to Arvin Mirasol after they had been entered by Arvin Mirasol so as to determine whether Arvin Mirasol was performing his work duties in a manner that was reasonably adequate and to ensure the

reasonable safety and privacy of RCCL's passengers assigned to those passenger cabins;

e. Failing to timely discover MIRASOL's activities of video voyeurism and child pornography, which are sexual assaults and sexual harassments of RCCL passengers, during MIRASOL's employment with RCCL;

f. Failing to timely terminate MIRASOL from employment of RCCL;

g. Failing to timely terminate MIRASOL's access to private passenger cabins aboard the vessel;

h. Retaining MIRASOL aboard the vessel after RCCL should have discovered MIRASOL's activities of video voyeurism and child pornography, which are sexual assaults and sexual harassments of RCCL passengers.

123.     The above acts and/or omissions caused and/or contributed to the subject incident because, had RCCL not failed to provide the foregoing, MIRASOL would not have been able to engage in an ongoing scheme to hide cameras in the cabin bathrooms of the passenger cabins for which he served as a stateroom attendant for months, including the Plaintiffs' and all others similarly situated cabins on the subject cruises.

124.     At all times material hereto, RCCL knew or should have known of the foregoing conditions and conduct resulting in the subject video voyeurism of the Plaintiffs and all others similarly situated and did not correct them, or the conditions and conduct existed for a sufficient length of time so that RCCL, in the exercise of reasonable care under the circumstances, should have learned of them and corrected them.  This knowledge was or should have been acquired through prior incidents of sexual assault and video voyeurism aboard RCCL's cruise ships, which did or should have revealed that further instances of sexual assault, including video voyeurism,

was reasonably foreseeable, including, but not limited to, the allegations contained in paragraphs 19-23.  In addition, RCCL was on notice and/or created the dangerous conditions by the lack of warnings and/or supervision and/or security and/or training.

125.     As a direct and proximate result of RCCL's negligence, the Plaintiffs and the Class Plaintiffs were injured about Plaintiffs' and all others similarly situated bodies, suffered physical pain, mental anguish, loss of enjoyment of life, post-traumatic stress disorder, and other mental and/or nervous disorders, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of Plaintiffs' and all others similarly situated injuries, suffered handicap, lost earnings and lost earning capacity, both past and future. The injuries are permanent and continuing in nature and Plaintiffs and all others similarly situated will suffer the losses and impairments in the future.  In addition, the Plaintiffs and all others similarly situated lost related costs and damages incident to their cruises.

WHEREFORE, the Plaintiffs and all others similarly situated demand judgment for all damages recoverable under the law, including punitive damages, and demand trial by jury.

Respectfully submitted,

LIPCON, MARGULIES,
& WINKLEMAN, P.A.
*Co-Lead Counsel for Consolidated Cases,*
*Attorneys for Individual Plaintiffs, and*
*Proposed Co-Lead Counsel for Class*
*Plaintiffs*
2800 Ponce de Leon Boulevard, Suite 1480
Coral Gables, Florida 33134
Telephone: (305) 373-3016
Facsimile: (305) 373-6204

And

THE MOSKOWITZ LAW FIRM, PLLC

*Co-Lead Counsel for Consolidated Cases and Proposed Co-Lead Counsel for Class Plaintiffs*
Continental Plaza
3250 Mary Street, Suite 202
Miami, FL 33133
Mailing Address:
P.O. Box 653409
Miami, FL 33175
Office: (305) 740-1423

By: */s/ Jason R. Marguies*
    **JASON R. MARGULIES** (FBN 57916)
    jmargulies@lipcon.com
    **MICHAEL A. WINKLEMAN** (FBN 36719)
    mwinkleman@lipcon.com
    **JACQUELINE GARCELL** (FBN 104358)
    jgarcell@lipcon.com
    **ADAM M. MOSKOWITZ** (FBN 984280)
    adam@moskowitz-law.com
    **JOSEPH M. KAYE** (FBN 117520)
    joseph@moskowitz-law.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 21, 2026, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to electronically receive Notices of Electronic Filing.

By: */s/ Jason R. Margulies*
    **JASON R. MARGULIES**

- 61 -

[ SERVICE LIST ON THE FOLLOWING PAGE ]

**SERVICE LIST**
*Jane Doe (S.F.), et al. v. Royal Caribbean Cruises Ltd., et al.*
**Case No. 24-CV-23953-DPG**

**Jason R. Margulies, Esq.**
jmargulies@lipcon.com
**Michael A. Winkleman, Esq.**
mwinkleman@lipcon.com
**Jacqueline Garcell, Esq.**
jgarcell@lipcon.com
LIPCON, MARGULIES,
& WINKLEMAN, P.A.
2800 Ponce de Leon Boulevard, Suite 1480
Coral Gables, Florida 33134
Telephone: (305) 373-3016
Facsimile: (305) 373-6204

**Adam M. Moskowitz, Esq.**
adam@moskowitz-law.com
**Joseph M. Kaye, Esq.**
joseph@moskowitz-law.com
THE MOSKOWITZ LAW FIRM, PLLC
3250 Mary Street, Suite 202
Coconut Grove, Florida 33133
Telephone: (305) 740-1423

*Co-Lead Attorneys for Consolidated Plaintiffs*

**Bernardo Pimentel II, Esq.**
pimentel@leesfield.com
gonzalez@leesfield.com
**Justin B. Shapiro, Esq.**
shapiro@leesfield.com
alpizar@leesfield.com
LEESFIELD & PARTNERS, P.A.
2350 South Dixie Highway
Miami, FL 33133
Telephone: (305) 854-4900
*Attorneys for Plaintiffs, Case No. 24-CV-24039*

**Sagi Shaked, Esq.**
**Brian Harvell, Esq.**
filingcourtdocuments@gmail.com
shakedeservice@gmail.com

**Jerry D. Hamilton, Esq.**
jhamilton@hamiltonmillerlaw.com
**Krista Fowler Acuna, Esq.**
kacuna@hamiltonmillerlaw.com
**Kassandra Doyle Taylor, Esq.**
ktaylor@hamiltonmillerlaw.com
HAMILTON MILLER & BIRTHISEL, LLP
150 Southeast Second Avenue, Suite 1200
Miami, Florida 33131
Telephone: (305) 379-3686
Facsimile: (305) 379-3690

**Kurt K. Lunkenheimer, Esq.**
kklunkenheimer@cozen.com
hryan@cozen.com
COZEN O'CONNOR
200 S. Biscayne Boulevard, Suite 3000
Miami, Florida 33132
Telephone: (305) 397-0801

**John J. Sullivan, Esq. (pro hac vice)**
jsullivan@cozen.com
COZEN O'CONNOR
3 WTC
175 Greenwich Street, 55th Floor
New York, NY 10007
Telephone: (212) 453-3729

*Attorneys for Defendant, Royal Caribbean*

**Arvin Joseph Mirasol**
Inmate Number: 02507-511
FDC Miami, Federal Detention Center
P.O. Box 019120
Miami, FL 33101
(Via U.S. Mail)
*Defendant*

SHAKED LAW FIRM, P.A.
20900 NE 30th Ave., Suite 715
Aventura, FL 33180
Telephone: (305) 937-0191
*Attorneys for Plaintiffs, Case No. 24-CV-24139*

**Nicholas I. Gerson, Esq.**
ngerson@gslawusa.com
filing@gslawusa.com
**Philip M. Gerson, Esq.**
pgerson@gslawusa.com
**Edward S. Schwartz, Esq.**
eschwartz@gslawusa.com
**David L. Markel, Esq.**
dmarkel@gslawusa.com
GERSON & SCHWARTZ, P.A.
1980 Coral Way
Miami, FL 33145
Telephone: (305) 371-6000
*Attorneys for Plaintiffs, Case No. 24-CV-24193 and 25-CV-20051*

**Prosper Shaked, Esq.**
prosper@prosperlaw.com
sercice@prosperlaw.com
PROSPER INJURY ATTORNEYS
15520 W Dixie Hwy
North Miami Beach, FL 33162
Telephone: (305) 690-0244
*Attorneys for Plaintiffs, Case No. 24-CV-24738*

**Jay Halpern, Esq.**
**Ian Pinkert, Esq.**
ian@hsptrial.com
HALPERN, SANTOS & PINKERT, P.A.
150 Alhambra Circle, Suite 1100
Coral Gables, FL 33134
Telephone: (305) 445-1111
*Attorneys for Plaintiffs, Case No. 24-CV-24988 and 24-CV-25009*

**Spencer M. Aronfeld, Esq.**
aronfeld@aronfeld.com
**Matthias M. Hayashi, Esq.**

mhayashi@aronfeld.com
ARONFELD TRIAL LAWYERS
One Alhambra Plaza, Penthouse
Coral Gables, FL 33134
Telephone: (305) 441-0440
*Attorneys for Plaintiffs, Case No. 24-CV-25089*

**John H. Hickey, Esq.**
hickey@hickeylawfirm.com
**Lisa C. Goodman, Esq.**
lgoodman@hickeylawfirm.com
**Sarah A. Lobel, Esq.**
slobel@hickeylawfirm.com
HICKEY LAW FIRM, P.A.
12150 SW 128th Court, Suite 225
Miami, FL 33186
Telephone: (305) 371-8000
*Attorneys for Plaintiffs, Case No. 25-CV-20138 and 25-CV-20435*